1

2                         UNITED STATES OF AMERICA
                     UNITED STATES DISTRICT COURT
3                       MIDDLE DISTRICT OF FLORIDA
                              -   -   -
4
                        HONORABLE THOMAS G. WILSON
5               UNITED STATES MAGISTRATE JUDGE PRESIDING

6    UNITED STATES OF AMERICA,            )
                                          )
7                    PLAINTIFF,           )
                                          )
8                    VS.                  )8:20-cr-77-T-CEH-TGW
                                          )
9    JOSE ISMAEL IRIZARRY,                )
     NATHALIA GOMEZ-IRIZARRY,             )
10                                        )
                     DEFENDANTS.          )
11   _____

12

13                  **CHANGES OF PLEA HEARING**
              REPORTER'S TRANSCRIPT OF DIGITAL PROCEEDINGS
14                      SEPTEMBER 14, 2020
                          TAMPA, FLORIDA

15

16

17

18

19

20   SHARON A. MILLER, CSR, RPR, CRR, FCRR
     IL CSR 084-2617
21   FEDERAL OFFICIAL COURT REPORTER
     801 N. FLORIDA AVENUE, SUITE 13A
22   TAMPA, FLORIDA 33602

23   Proceeding recorded by stenography,
     transcript produced by computer-aided transcription
24

25

     UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1   APPEARANCES OF COUNSEL:

2   ON BEHALF OF PLAINTIFF:

3           UNITED STATES DEPARTMENT OF JUSTICE
            BY:  MR. JOSEPH PALAZZO
4           1400 New York Avenue, Suite 10302
            Washington, DC  20001
5           (202)445-7910
            joseph. palazzo@usdoj.gov
6

7

8   ON BEHALF OF DEFENDANT JOSE ISMAEL IRIZARRY:

9
            MR. HUMBERTO R. DOMINGUEZ, ESQ.
10          150 W. Flagler St., Penthouse 2850
            Miami, Florida 33130
11          (305) 373-6400
            bert@hdominguezlaw.com
12

13  ON BEHALF OF DEFENDANT NATHALIA GOMEZ-IRIZARRY:

14          THE CASTANEDA LAW FIRM
            BY:  MS. REBECCA CASTANEDA, ESQ.
15          506 N. Armenia Avenue
            Tampa, FL  33609-1703
16          (813)694-1700
            rc@attorneyrebeccacastaneda.com
17

18

19

20

21

22

23

24

25

    UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1          THE COURT:  This is a proceeding in case number

2    8:20-cr-77-T-CEH-TGW, United States versus Jose Ismael

3    Irizarry and Nathalia Gomez-Irizarry.  In this case, plea

4    agreements have been submitted indicating that the

5    Defendants are prepared to enter pleas of guilty to

6    certain counts.  Mr. Irizarry is prepared to enter a plea

7    of guilty to all 19 counts in the indictment.

8    Mrs. Irizarry is prepared to enter a plea of guilty to

9    Count One of the indictment.

10         In connection with that matter, let me advise you

11   that I'm going to be asking a whole lot of questions and

12   you all may be -- you may take off your masks or you can

13   leave it on, suit yourself, but I'm going to be asking a

14   lot of questions.  That's the process.  And the purpose is

15   to make sure that you're pleading guilty freely and

16   voluntarily and with a full understanding of the

17   consequences of pleading guilty.

18         If as a result of any of the questions that I ask

19   or anything that comes to your mind you wish to talk with

20   your lawyer, feel free to do that.  I'll give you any

21   opportunity you need to talk to your lawyer as we proceed.

22         Also, in connection with my questions, the clerk

23   will swear you to tell the truth.  If you give a false

24   answer, you could be prosecuted for the crime of perjury

25   or making false statements.

 1            Mr. Irizarry, do you understand that?

 2            DEFENDANT JOSE IRIZARRY:  Yes, sir.

 3            THE COURT:  And, Ms. Irizarry, do you?

 4            DEFENDANT NATHALIA GOMEZ-IRIZARRY:  Yes, sir.

 5            THE COURT:  Madam Clerk.

 6            COURTROOM DEPUTY CLERK:  Please stand.  Raise your

 7    right hand.

 8  (Both Defendants sworn.)

 9            THE COURT:  The first thing that I need to discuss

10    with you is the right you have to have your guilty plea

11    heard by a United States District Judge.  I'm a United

12    States Magistrate Judge and I want to explain the

13    difference in the two positions so that you'll understand

14    the right you have to have your guilty plea heard by a

15    District Judge.

16            A United States District Judge is appointed by the

17    President with the advice and consent of the Senate, and

18    under the Constitution they have certain protections

19    designed to guarantee their independence.  Specifically

20    under the Constitution, they're appointed for life and can

21    only be removed from office by Congress through the

22    impeachment process.

23            Also, under the Constitution their pay cannot be

24    reduced while they're in office.  The United States

25    Magistrate Judge such as I am does not have those same

1    constitutional protections.

2            Mr. Irizarry, do you understand the right you have

3    to have your guilty plea heard by a District Judge?

4            DEFENDANT JOSE IRIZARRY:  I do, sir.

5            THE COURT:  Do you have any question about it?

6            DEFENDANT JOSE IRIZARRY:  No, sir.

7            THE COURT:  And you as well as your lawyer signed

8    a form indicating that you wish to proceed today before

9    me.  Is that still what you wish to do?

10           DEFENDANT JOSE IRIZARRY:  Yes, sir.

11           THE COURT:  And, Ms. Irizarry, do you understand

12   your right to have your guilty plea heard by a District

13   Judge?

14           DEFENDANT NATHALIA GOMEZ-IRIZARRY:  Yes, sir.

15           THE COURT:  Do you have any question about it?

16           DEFENDANT NATHALIA GOMEZ-IRIZARRY:  No.

17           THE COURT:  And you as well as your lawyer signed

18   a form indicating you wish to proceed today before me.  Is

19   that still what you wish to do?

20           DEFENDANT NATHALIA GOMEZ-IRIZARRY:  Yes.

21           THE COURT:  Okay.  Now, I'm going to read -- well,

22   I will read each of the charges in the indictment that

23   pertain to you and then after I read that charge ask you

24   whether you plead guilty or not guilty to that charge.

25   And so, Mr. Irizarry, all 19 counts will be read with

1   respect to you.  Ms. Irizarry, only Count One will be read

2   and asked of you.  So -- and is there any objection to me

3   not reading the first introduction that covers the first

4   five pages?  Anybody have any objection?

5         MS. CASTANEDA:  No objection, Your Honor.

6         THE COURT:  So I'll start with Paragraph 10, the

7   money laundering conspiracy.  Anybody have any problem

8   with me starting there?

9         MR. PALAZZO:  No, Your Honor.

10         MR. DOMINGUEZ:  No objection from Mr. Irizarry,

11   Judge.

12         MR. PALAZZO:  No, Your Honor.

13         MS. CASTANEDA:  No objection, Your Honor.

14         THE COURT:  So since I may be reading forever it

15   seems, if I misspeak, somebody correct me as I go along.

16         Paragraph 10 beginning on a date unknown to the

17   grand jury but no later than in or about February of 2011

18   and continuing through a date unknown to the grand jury

19   but no earlier than in or about December of 2018 in the

20   Middle District of Florida, the Southern District of

21   Florida, Republic of Columbia and elsewhere, the

22   Defendants Jose Ismael Irizarry and Nathalia

23   Gomez-Irizarry did conspire with each other as well as

24   other persons both known and unknown to the grand jury to

25   commit offenses in violation of 18 U. S. C. Section

1956(a)(1), that is, knowing that the property involved in
a financial transaction represented the proceeds of some
form of unlawful activity conducted and attempted to
conduct such a financial transaction which, in fact,
involved the proceeds of specified unlawful activities,
(A)(i) with the intent to promote the carrying on of
specified unlawful activity, and, (B) knowing that the
transaction is designed in whole and in part, (i) to
conceal and disguise the nature of the location, the
source, the ownership and the control of the proceeds of
specified unlawful activity; and (ii) to avoid a
transaction reporting requirement under State and Federal
law; and to commit offenses in violation of 18 U.S.C.
Section 1957, that is, knowingly engaged and attempted to
engage in a monetary transaction in criminally derived
property of a value greater than $10,000 and is derived
from specified unlawful activity; all in violation of 18
U.S.C. Sections 1956(h).

    11.  It is further alleged that the specified
unlawful activity in the foregoing paragraph included the
unlawful distribution of controlled substances, in
violation of 21 U.S.C. Section 841(a)(1), as well as an
offense against a foreign nation involving the
manufacturer, importation, sale, and distribution of a
controlled substance; the perpetration of various frauds,

1    in violation of 18 U.S.C. Section 1343, 1344 and 1349; the

2    commission of identity theft in violation of 18 U. S. C.

3    Section 1028; and the theft and embezzlement of government

4    property in violation of 18 U.S.C. Section 641.

5         Objects of the Conspiracy.

6         12.   The objects of the conspiracy were to conduct

7    prohibited monetary and financial transactions; to enrich

8    the conspirators and their family and friends; to support

9    the Co-conspirator 1 criminal organization; and to hide

10   assets, income, and financial activity from government

11   authorities in the United States and Columbia.

12        Manner and means of the conspiracy.  The manner

13   and means by which the conspirator sought to accomplish

14   the objects of the conspiracy included, among others, the

15   following:

16        13.   It was a part of the conspiracy that on a

17   date uncertain to the Grand Jury, but no later than

18   November 30, 2011, investigators based in the DEA Miami

19   Field Division, including Irizarry, began investigation

20   into the drug trafficking and money laundering activities

21   of Co-conspirator 1 using various law enforcement

22   techniques, including posing undercover as money

23   launderers and utilizing confidential informants.

24        14.   It was further part of the conspiracy that

25   Irizarry, Gomez, Co-conspirator 1, Co-conspirator 2, and

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1    others known and unknown to the grand jury used the cover

2    of the Co-conspirator 1 investigation, as well as the

3    cover of other DEA investigations, to secretly divert drug

4    proceeds from Government control to their own personal

5    control without Government authorization.  Central to the

6    scheme was Irizarry omitting, falsely reporting, and

7    mischaracterizing key information to other DEA agents and

8    supervisors regarding the movement of drug proceeds being

9    investigated.  Irizarry's actions enabled Irizarry, Gomez,

10   Co-conspirator 1 and Co-conspirator 2 to use the diverted

11   drug proceeds to purchase jewelry, luxury vehicles, a

12   home, and to make cash gifts to friends and family.

13        15.  It was further part of the conspiracy that

14   Irizarry, Gomez, Co-conspirator 1, Co-Conspirator 2, and

15   others known and unknown to the Grand Jury, took steps to

16   hide the true nature, and to conceal their participation

17   in, certain financial transactions in the United States

18   and Columbia that otherwise could be traced to their

19   unlawful activity including drug distribution.  For

20   example, the defendants at times utilized Criminal

21   Account-1 to receive diverted drug proceeds and to

22   subsequently spend them or transfer them to friends,

23   family and business associates.

24        Actions to facilitate the money laundering

25   conspiracy.  It is further part of the conspiracy that the

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1    following facilitating actions were taken by the

2    conspirators:

3        *Witness 1 pays Irizarry and Gomez to divert DEA*

4    *funds.*

5        16.  On or about the following dates, an

6    individual known to the Grand Jury and identified herein

7    as Witness 1, assisted Irizarry and the DEA to pick up the

8    following sums of drug proceeds in an undercover capacity:

9        A.  Approximate date of February 10th, 2011, the

10   approximate amount of $19,000, and the location was New

11   York City.

12       B.  Approximate date of February 15th, 2011,

13   approximate amount of $30,860, and the location New York

14   City.

15       C.  Approximate date of February 18th, 2011, the

16   approximate amount of $5,000, and the location was New

17   York City.

18       D.  Approximate date of June 20, 2011, the

19   approximate amount of $76,820, and the location was New

20   York City.

21       E.  August 1, 2011, the approximate amount was

22   932,400, and the location was Mexico City.

23       And F, the approximate date of October 24, 2011,

24   the approximate amount was $400,000, and the location was

25   Houston.

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

17.  Following each transaction above, Irizarry caused DEA personnel to unwittingly wire transfer a portion of the drug proceeds to certain bank accounts that were known only to Irizarry and his co-conspirators as controlled by Witness 1.  At the same time, Witness 1 gave Irizarry and Gomez favors, luxury gifts, and personal cash payments.  Irizarry failed to report to the receipt of these items to the DEA, to the Bankruptcy Court, and to the IRS.

For example, A, on or about October 27, 2011, Irizarry directed DEA personnel to wire transfer an approximate $55,500 portion of the $400,000 picked up in Houston to a bank account controlled by Witness 1;

B.  On or about October 27th, 2011, Witness 1 gave at least $6,000 to Gomez by a personal check that was deposited in a bank account controlled by Irizarry and Gomez; and

C.  On or about October 30, 2011, Gomez paid $1,500 cash to a car dealership in Miami as a deposit for the purchase of a BMW X5 sport utility vehicle for $66,925.

*Witness 2 pays Irizarry and Gomez to divert DEA funds.*

18.  Between on or about October 17th, 2013 and December 4th, 2013, an individual known to the Grand Jury

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1    and identified herein as Witness 2 arranged for an

2    approximate total of $1,075,000 in drug proceeds to be

3    picked up from drug traffickers in an undercover capacity

4    by Irizarry and the DEA.  Irizarry then caused over half

5    of the funds to be wire transferred from DEA accounts to

6    accounts known only to Irizarry as being controlled by

7    Witness 2 or Witness 2's business vendors.  Similarly

8    unknown to DEA except through Irizarry, Witness 2 wire

9    transferred approximately $43,000 to Gomez and Irizarry

10   during the same period.

11          *Proceeds used by Irizarry and Gomez to buy luxury*

12   *goods.*

13          19.  Beginning in or about October of 2013,

14   Irizarry and Gomez used the $43,000 from Witness 2, as

15   well as payments from Witness 1 and others, to purchase

16   luxury goods and to pay co-conspirators, including.

17          A.  On or about December 6, 2013 Irizarry

18   purchased a Tiffany diamond ring for approximately $30,000

19   in cash at a jewelry store in Bal Harbor, Florida.  During

20   the transaction Irizarry falsely submitted the Social

21   Security number of another person to the jewelry store

22   when he was asked to give his own Social Security number

23   for a Government form that the jewelry store was required

24   to file with the IRS and the Financial Crimes Enforcement

25   Network.

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1          B.   On or about December 26th, 2013, Irizarry wire

2     transferred $11,000 to Co-conspirator 2 disguised as a

3     commercial transaction by Company 1 --

4          MR. PALAZZO:  Pardon me, Your Honor.  Just want it

5     take you up at your urging to correct you on this.

6          THE COURT:  Yeah, right, sure.  Guess what?  My

7     mind sort of wanders as I'm babbling out this stuff, so.

8          MR. PALAZZO:  I understand, Your Honor.  In that

9     last Paragraph B on Page 11 of the indictment.

10          THE COURT:  Okay.  I'll read it again.  On or

11     about December 26th, 2013, Gomez wired transferred $11,000

12     to Co-conspirator 2 disguised as a commercial transaction

13     by Company 1; and

14          C.   On or about March 19th, 2014 Irizarry and

15     Gomez bought a 2014 Land Rover sport utility vehicle in

16     part with cash delivered by Gomez, in part with cash

17     delivered by Witness 1, and in part through a line of

18     credit in Gomez's name.

19          *More payments to Irizarry and Gomez to divert*

20     *funds.*

21          20.  On or about October 10th, 2014, Witness 1

22     helped DEA pick up approximately $120,000 of bulk cash in

23     an undercover capacity from suspected drug traffickers in

24     Atlantic City, New Jersey.  Irizarry then directed DEA

25     personnel to wire transfer an approximate $116,000 portion

1   of the proceeds to a bank account known only to Irizarry

2   as being controlled by an individual known to the Grand

3   Jury and identified herein as Witness 3.  Unreported to

4   the DEA, the Bankruptcy Court, and the IRS, Witness 3

5   subsequently paid Irizarry the diverted funds by

6   delivering cash to Irizarry in Columbia.

7         21.  On or about January 12th and January 26th,

8   2015, an individual known to the Grand Jury and identified

9   herein as Witness 4, helped DEA and others to pick up bulk

10  cash totaling approximately 1,000,000 euros from suspected

11  drug traffickers in the Netherlands, that were then

12  transferred to an undercover DEA bank account in the

13  Middle District of Florida.  From the Middle District of

14  Florida the majority of the funds were disbursed according

15  to directions from Irizarry, including the following:

16        A.  On or about January 21, 2015, Irizarry caused

17  DEA personnel in Tampa, Florida, to wire transfer a

18  $141,641.05 portion of the currency picked up in the

19  Netherlands to an individual known to the Grand Jury and

20  identified herein as Witness 5;

21        B.  On or about January 21, 2015, Witness 5,

22  Irizarry and Co-Conspirator 1 used the 141,641.05 in a

23  Florida car dealership to purchase a 2015 Land Rover for

24  Irizarry and Co-conspirator 1;

25        C.  On or about February 18th, 2015, without

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1    disclosing Co-conspirator 1's involvement, Irizarry caused

2    DEA personnel in Tampa, Florida, to wire transfer a

3    $30,000 portion of the currency picked up in the

4    Netherlands to a bank account in Spain on behalf of

5    Co-conspirator 1;

6         D.   On or about February 19th, 2015, Irizarry

7    caused DEA personnel in Tampa, Florida, to wire transfer a

8    $50,000 portion of the funds to a bank account controlled

9    by an individual known to the Grand Jury and identified

10   herein as Witness 6; and

11        E.   On or about February 24th, 2015, Witness 6

12   made a $9,861 payment to a line of credit held by Gomez

13   for the afore-mentioned purchase of a 2014 Land Rover by

14   Gomez and Irizarry.

15        22.  On or about February 26 and March 5, 2015,

16   Irizarry caused DEA colleagues in Tampa, Florida, to

17   unwittingly file official investigative reports that

18   contained material falsehoods and omissions, and concealed

19   the true nature, location, source, ownership, and control

20   of the drug proceeds picked up in the Netherlands.

21        *Identity fraud in the furtherance of the scheme.*

22        23.  On or about March 19th, 2015, Irizarry and

23   Witness 1 used the named, passport, Social Security

24   number, and forged signature of an individual known to the

25   Grand Jury and identified herein as Victim 1, to open

1    Criminal Account-1 in the name of Victim 1 without victim

2    1's knowledge or consent.  As part of the transaction,

3    Irizarry's email address was falsely provided to the bank

4    as Victim 1's purported contact information.

5         24.  Beginning on or about March 27th, 2015,

6    Criminal Account-1 was used by the defendants and their

7    co-conspirators to steal money from Victim 1, as well as

8    to conceal the secret diversion of drug proceeds away from

9    DEA undercover money laundering investigations on at least

10   five occasions set forth in transactions 1, 5, 11, 16, and

11   23 in Exhibit A of this Indictment.  The diverted DEA

12   funds were used for personal expenses and business

13   pursuits by Irizarry, Gomez, Co-conspirator 1, and their

14   co-conspirators.

15        For example, A, as set forth in transactions 2, 3,

16   and 6 through 9 in Exhibit A, Irizarry and his

17   co-conspirators used forged checks to transfer an

18   approximate $126,000 portion of diverted funds from

19   Criminal Account-1 to an individual located in the Middle

20   District of Florida known to the Grand Jury and identified

21   herein as Witness 7.  Witness 7 then paid these funds to

22   Irizarry by delivering cash to an individual in Columbia

23   designated by Irizarry; and

24        B.  As set forth in transactions 34, 37, 39

25   through 41, 45, 47, and 49 in Exhibit A, Irizarry and his

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1   co-conspirators used forged checks to transfer

2   approximately $179,000 of Criminal Account-1 to Witness 3.

3   Witness 3 then paid these funds to Irizarry at least in

4   part by depositing cash into a bank account belonging to

5   Gomez's mother.

6        Unlawful proceeds used by Irizarry and Gomez to

7   purchase a home.

8        25.  Beginning in or about January of 2015,

9   Irizarry utilized drug proceeds diverted from active DEA

10   investigations, including through Criminal Account-1, to

11   buy himself and Gomez a home in Cartagena, Columbia, for

12   approximately $767,000.  Witness 1, Witness 3, Witness 7,

13   and others, delivered cash to Columbia on Irizarry and

14   Gomez's behalf after receiving funds diverted from DEA

15   investigations in the United States.

16        *Unlawful proceeds used by Co-conspirator 2 to*

17   *purchase a Lamborghini.*

18        26.  On or about March 25, 2016, Co-conspirator 2

19   asked Co-conspirator 1 to deliver at least $13,000 to a

20   family member of Co-conspirator 2 in Miami.

21   Co-conspirator 1 then caused Witness 1 to transfer

22   approximately $13,000 in drug proceeds, including a forged

23   check for $6,800 written from Criminal Account-1, to a

24   criminal associate of Co-conspirator 1 known to the Grand

25   Jury and identified herein as Witness 8.  Witness 8

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1   subsequently transferred the $13,000 to Co-conspirator 2's
2   family member in Miami.
3          27.  On or about April 1, 2016, knowing that the
4   funds were derived from illegal activity, Co-conspirator 2
5   spent the funds as part of a $329,323.84 purchase of a
6   2017 Lamgorghini Huracan Spyder, Vehicle Identification
7   Number ZHWUR1ZF7HLA05916, from a Miami car dealership.
8          *Unlawful proceeds used by Co-conspirator 1 to*
9   *conduct financial transactions.*
10         28.  Beginning on a date unknown, but no later
11  than on or about October 31, 2016, Co-conspirator 1 caused
12  other forged checks to be written from Criminal Account-1
13  and delivered to Co-conspirator 1's family members or
14  associates, including:
15         A.  Approximate date, October 31st, 2016.
16  Approximate amount $5,000.  Description, to family in New
17  York City.
18         B.  Approximate date, November 1, 2016.
19  Approximate amount $4,000.  Description, to family in New
20  York City.
21         C.  Approximate date, December 12th, 2016.
22  Approximate amount, $5500.  Description, to family in New
23  York City.
24         D.  Approximate date, April 6th, 2017.
25  Approximate amount $3,000.  Description, to family in New

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1    York City.

2          E.  Approximate date, July 21, 2016.  Approximate

3    amount, $5,250.  Description, to a vendor in Doral,

4    Florida.

5          F.  Approximate date of August 7th, 2016.

6    Approximate amount of $13,800.  Description, to a vendor

7    in Doral, Florida.

8          *Unlawful proceeds used by Irizarry and Gomez to*

9    *purchase vehicle and real property.*

10          29.  On or about June of 2017, Irizarry and Gomez

11   purchased a 2017 Land Rover sport utility vehicle for

12   $134,583.48.  As part of the transaction, Irizarry

13   instructed Witness 4 to deliver $7,000 to the Land Rover

14   dealer.

15          30.  On June 16th, 2017, Witness 4 withdrew $6,000

16   from a bank account traceable to drug transactions and

17   delivered $7,000 cash to the Land Rover dealership on

18   behalf of Irizarry and Gomez.

19          31.  In or about December of 2017, Irizarry and

20   Gomez signed a contract to sell their home in Cartagena,

21   Columbia, and began making payments towards the purchase

22   of a home in Parkland, Florida with the Cartagena

23   proceeds.  As part of the transaction, on or about

24   January 30, 2018, Irizarry and Gomez caused a wire

25   transfer of $71,000 from an account in Columbia to a bank

1    account in the United States, knowing that the funds were

2    traceable to some unlawful source.  Irizarry and Gomez

3    subsequently caused at least three more wire transfers

4    from Columbia to the United States in support of the

5    Parkland home purchase, including a total of $400,925

6    traceable to some unlawful source.

7          32.  On or about August 12th, 2019, Irizarry and

8    Gomez sold their home in Parkland and transferred at least

9    $366,000 of the proceeds to a corporate entity registered

10   in the name of an Irizarry family member.

11         33.  On or about December 18th, 2019, Irizarry and

12   Gomez transferred approximately $286,000 from the

13   corporate bank account of Irizarry's family member to a

14   mortgage company in Puerto Rico as payment towards the

15   purchase of real property by Irizarry and Gomez at 611

16   Camino Carraizo Street, Sabanera Dev., I assume, Dorado,

17   Puerto Rico.  All in violation of Title 18, United States

18   Code, Section 1956(h).

19         Mr. Irizarry, how do you plead to that charge,

20   guilty or not guilty?

21         DEFENDANT JOSE IRIZARRY:  Guilty.

22         THE COURT:  And, Mrs. Irizarry, how do you plead

23   to that charge, guilty or not guilty?

24         DEFENDANT NATHALIA GOMEZ-IRIZARRY:  Guilty.

25         THE COURT:  Okay.  Now, the rest of the charges

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1   all relate to Mr. Irizarry.

2        Counts Two through Five.

3        34.  All foregoing paragraphs and Exhibit A of

4   this Indictment are hereby re-alleged and incorporated by

5   reference for all purposes.

6        35.  Beginning in or about February of 2011, and

7   continuing through a date unknown to the Grand Jury, but

8   no earlier than in or about January of 2018, in the Middle

9   District of Florida, the Southern District of Florida,

10  Columbia, and elsewhere, the Defendant Jose Ismael

11  Irizarry, knowingly devised, intended to devise, and

12  participated in a scheme and artifice to defraud, and to

13  obtain money and property by means of false and fraudulent

14  pretenses, representations, and promises, and to deprive

15  the Drug Enforcement Administration and the citizens of

16  the United States of America of their intangible right to

17  the honest services of Irizarry through bribery and

18  kickbacks.  For the purpose of executing and attempting to

19  execute the scheme and artifice to defraud, and to obtain

20  money and property by means of false and fraudulent

21  pretenses, representations, and promises, Irizarry

22  knowingly transmitted and caused to be transmitted by

23  means of wire, radio, and television communication in

24  interstate and foreign commerce the following writings,

25  signs, signals, pictures, and sounds, each constituting a

1   separate count:

2          Count Two.  Approximate date of February 19th,

3   2015.  The description, a domestic wire transfer of

4   $17,800 from a Bank of America account in Tampa, Florida

5   to a Wells Fargo Bank account in San Francisco,

6   California.

7          Mr. Irizarry, how do you plead to that charge,

8   guilty or not guilty?

9          DEFENDANT JOSE IRIZARRY:  Guilty.

10          THE COURT:  Count Three is approximate date of

11   February 19th, 2015.  Description is a domestic wire

12   transfer of $50,000 from a Bank of America account in

13   Tampa, Florida, to a Chase Bank account in Doral, Florida.

14          How do you plead to that charge, guilty or not

15   guilty?

16          DEFENDANT JOSE IRIZARRY:  Guilty, sir.

17          THE COURT:  Count Four has an approximate date of

18   February 27th, 2015.  Description is a domestic wire

19   transfer of $39,607 from a Bank of America account in

20   Tampa, Florida to Citibank account in New York, New York.

21          How do you plead to that charge, guilty or not

22   guilty?

23          DEFENDANT JOSE IRIZARRY:  Guilty, sir.

24          THE COURT:  And Count Five, approximate date of

25   February 27th, 2015.  The description of a domestic wire

transfer of $30,000 from a Bank of America account in Tampa, Florida, to a Citibank account in New York, New York.

How do you plead to that charge, guilty or not guilty?

DEFENDANT JOSE IRIZARRY:  Guilty, sir.

THE COURT:  Manner and Means of the Scheme.

The manner and means by which Irizarry sought to accomplish the scheme included,

36.  It was a part of the scheme that Irizarry benefited himself corruptly by using his official position as a special agent with the DEA to obtain cash, services, and other things of value, for himself and for Gomez and others, from Witnesses 1 through 7, in exchange for agreeing to take official action, and to do and omit to do, acts in violation of his lawful duty including, among others,

A.  Filing false reports of investigation with the DEA;

B.  Falsely documenting and causing DEA agents to falsely document the nature and source of wire transfer instructions involved in certain undercover DEA money laundering investigations;

C.  Directing drug proceeds picked up during undercover money laundering investigations to be delivered

to Irizarry's co-conspirators in Count One rather than directly to associates of targeted drug trafficking organizations;

D.   Concealing his control of Criminal Account-1, a bank account to which he caused DEA colleagues to wire transfer over $200,000 under false and fraudulent pretenses;

E.   Discouraging DEA agents and other law enforcement officers from investigating his co-conspirators in Count One, as well as Witnesses 1 through 7, and other criminal associates;

F.   Concealing communications between himself and his co-conspirators in Count One, as well as Witnesses 1 through 7, and other criminal associates, from his DEA colleagues;

G.   Concealing payments to and from his co-conspirators in Count One, as well as Witnesses 1 through 7, and other criminal associates from his DEA colleagues; and

H.   Providing sensitive law enforcement information, without authorization, to criminal associates.

37.   It was further a part of the scheme that Irizarry and Gomez received the following bribes and kickbacks on the following dates:

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1    Approximate date of October 27th, 2011.  The

2 approximate value and description is a $6,000 check to

3 Gomez, and that was given by Witness 1.

4    B.  Approximate date of October to November 2013.

5 The approximate value and description was a $43,000 total

6 wire transfers to Gomez.  And that was given by Witness 2.

7    C.  March 2014.  The approximate value and

8 description was a $2500 cash payment to a car dealer in

9 Florida.  And that was given by Witness 1.

10    D.  The approximate date was January 13th, 2015.

11 The description is $42,0000 cash payments to holder of

12 Irizarry real estate debt.  That was given by Witness 7.

13    E.  January 14th, 2015.  The description is a

14 $41,0000 cash payments to holder of Irizarry real estate

15 debt.  And that was given by Witness 7.

16    F.  January 21, 2015.  Description is use of a

17 $141,641 vehicle.  And that was given by Witness 5 and

18 Co-Conspirator 1.

19    G.  February 24th, 2015.  Description is a $9,861

20 payment to a line of credit held by Gomez.  And that was

21 given by Witness 6.

22    H.  Approximate date of February 27th to

23 March 2nd, 2015.  The description is $64,000 cash payments

24 to holder of Irizarry real estate debt.  That was given by

25 Witness 3.

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1          I.  Approximate date of March 9th, 2015.  The

2     description is a $20,000 cash payments to Gomez's mother.

3     And that was given by Witness 1.

4          J.  Approximate date of March 24th, the 25th,

5     2015.  That description was a $22,000 cash payments to

6     Gomez's mother.  That was given by Witness 3.

7          K.  June 4th to the 10th approximate date of 2015.

8     The description is $47,000 cash payments to holder of

9     Irizarry's real estate debt.  And that was given by

10    Witness 3.

11         L.  The approximate date of August 14th, 2015.

12    And the description is a $1,000 cash payment to Gomez.

13    And that was given by Witness 3.

14         M.  The approximate date of sometime in 2015.

15    Television valued at $2700 gifted to Irizarry.  And that

16    was given by Witness 2.

17         N.  Approximate date throughout 2015.  The

18    description is renovations to Irizarry and Gomez family

19    home, including labor and materials.  And that was given

20    by Witness 1.

21         O.  Throughout 2015 the approximate date.

22    Rent-free living accommodations for a friend of Irizarry.

23    And that was given by Witness 7.

24         P.  An approximate date of June 16th, 2017.

25    Description of a $7,000 payment to car dealer in Florida.

1    And that was given by Witness 4.

2           All in violation of Title 18, United States Code,

3    Sections 1343, 1346 and 2.

4           Now, having read all of the allegations with

5    respect to Counts Two through Five, do you stand by your

6    pleas of guilty to Counts Two through Five?  I'm sorry.  I

7    didn't hear it.

8           DEFENDANT JOSE IRIZARRY:  Guilty.

9           THE COURT:  Count Six.  (Conspiracy to Commit Bank

10   Fraud - 18 U.S.C. Section 1349)

11          All foregoing paragraphs in Exhibit A of this

12   Indictment are hereby re-alleged and incorporated by

13   reference for all purposes.

14          39.  Beginning on a date unknown to the Grand

15   Jury, but no later than in or about March of 2015, and

16   continuing until a date unknown to the Grand Jury, but no

17   earlier than in or about June of 2017, in the Middle

18   District of Florida, the Southern District of Florida, the

19   Republic of Columbia, and Kingdom of Spain, and elsewhere,

20   the Defendant, Jose Ismael Irizarry, did attempt and

21   conspire with persons known and unknown to the Grand Jury,

22   to commit bank fraud; that is, to knowingly execute, and

23   attempt to execute, a scheme and artifice to defraud a

24   financial institution; and to obtain any of the moneys,

25   funds, credits, assets, securities, and other property

owned by, and under the custody and control of, a

financial institution, by means of false and fraudulent

pretenses, representations and promises, in violation of

18 U.S.C. Section 1344.

   Manner and Means.

   The manner and means by which the conspirators

sought to accomplish the objects of the conspiracy

included, among others,

   40. It was a part of the conspiracy that Irizarry

and the conspirators stole the identity of Victim 1 and

opened account Account-1 in Victim 1's name on or about

March 19th, 2015.

   41. It was further part of the conspiracy that

Irizarry and the conspirators used an email account

controlled by Irizarry to monitor and utilize Criminal

Account-1.

   42. It was further a part of the conspiracy that

on or about the dates set forth in transactions 1 through

63 in Exhibit A, without Victim 1's knowledge or consent,

Irizarry and the conspirators deposited and withdrew the

amounts set forth in transactions 1 through 63 in Exhibit

A, by the methods set forth therein, including funds known

to the conspirators to be proceeds of illegal drug

trafficking.

   43. It was further a part of the conspiracy that

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1    on or about March 23rd, 2015 without Victim 1's knowledge

2    or consent, Irizarry and the conspirators deposited a

3    check for $11,235.43 payable to Victim 1.  The check

4    included Victim 1's forged signature.

5         44.  It was further a part of the conspiracy that

6    on or about the date set forth in transactions 33, 35, 43,

7    and 61 in Exhibit A, the funds were delivered to members

8    of Co-Conspirator 1's family in the United States via

9    checks written from Criminal Account-1 without Victim 1's

10   knowledge or consent.  The checks all included Victim 1's

11   forged signature.

12        45.  It was further a part of the conspiracy that

13   on or about the dates set forth in Transactions 2, 3, and

14   6 through 9 in Exhibit A, the funds set forth were

15   delivered to the Middle District of Florida and deposited

16   into bank accounts located in the Middle District of

17   Florida.  All in violation of Title 18, United States

18   Code, Section 1349.

19        How do you plead to charge -- to the count in

20   Count Six, guilty or not guilty?

21        DEFENDANT JOSE IRIZARRY:  Guilty, sir.

22        THE COURT:  Count Seven through Twelve, bank

23   fraud.

24        All the foregoing paragraphs in Exhibit A of this

25   Indictment are hereby re-alleged and incorporated by

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1    reference.

2            On the approximate date set forth in transactions

3    2, 3, and 6 through 9 in Exhibit A, each transaction

4    constituting a separate and individual count charged

5    herein by the Grand Jury, in the Middle District of

6    Florida and elsewhere, the Defendant, Jose Ismael

7    Irizarry, did obtain moneys, funds, credits, assets,

8    securities, and other property owned by, and under the

9    custody and control of, a financial institution, by means

10   of false and fraudulent pretenses, representations and

11   promises, when he caused the funds set forth in

12   transactions 2, 3, and 6 through 9 in Exhibit A to be

13   delivered to the Middle District of Florida via forged

14   checks written from Criminal Account-1, without the

15   knowledge or consent of Victim 1, and deposited into bank

16   accounts located in the Middle District of Florida without

17   the knowledge and consent of Victim 1.  All in violation

18   of Title 18, United States Code, Sections 1344 and 2.

19           How do you plead to those charges, guilty or not

20   guilty?

21           DEFENDANT JOSE IRIZARRY:  Guilty, sir.

22           THE COURT:  Count Thirteen.  (Conspiracy to Commit

23   Aggregated Identity Theft.)

24           48.  All foregoing paragraphs in Exhibit A of this

25   Indictment are hereby re-alleged and incorporated by

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

reference.

49.   Beginning on a date unknown, but no later than in or about March of 2015, and continuing through and including at least in or around June of 2017, in the Middle District of Florida, the Southern District of Florida, Columbia, and elsewhere, the Defendant, Jose Ismael Irizarry, and others known and unknown to the Grand Jury, did knowingly and willfully combine, conspire, confederate, and agree with each other, to commit an offense within the United States, that is, aggravated identity theft in violation of Title 18, United States Code, Section 1028A; all in violation of Title 18, United States Code, Section 371.

Manner and Means.

The manner and means by which the conspirators sought to accomplish the objects of the conspiracy included, among others, the following:

50.   It was part of the conspiracy that Irizarry, Gomez and co-conspirators would and did possess, without lawful authority, means of identification, specifically images of a passport and Social Security card of a person known to the Grand Jury and identified herein as Victim 1.

51.   It was further part of the conspiracy that Irizarry would and did transfer images of Victim 1's passport and Social Security number to Witness 1 for the

1    purpose of fraudulently opening a bank account known

2    herein as Criminal Account-1.

3         52.   It was further part of the conspiracy that a

4    bribe was paid to an employee of a U. S. financial

5    institution to open Criminal Account-1 without ever

6    meeting Victim 1 in person.

7         53.   It was further a part of the conspiracy that

8    throughout 2015 and 2016, Irizarry and the conspirators

9    arranged for over $200,000 in drug proceeds to be wire

10   transferred into Criminal Account-1.

11        54.   It was further part of the conspiracy that

12   throughout 2015 and 2016, Irizarry, Co-Conspirator 1 and

13   Co-Conspirator 2 caused forged checks to be written from

14   Criminal Account-1 in Victim 1's name without Victim 1's

15   knowledge or consent.

16        Overt Acts.

17        55.   In or about early 2015, Witness 5 would and

18   did transfer images of Victim 1's passport and Social

19   Security to Irizarry to unlawfully cash a check in the

20   amount of $11,235.43 made out to Victim 1.

21        56.   On or about May 19th, 2015, Witness 1 used

22   Victim 1's passport and Social Security number to

23   fraudulently open Criminal Account-1 in the United States

24   in the name of Victim 1, without Victim 1's knowledge or

25   consent.  As part of the account opening process,

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1    Irizarry's email account was falsely provided to the bank

2    as Victim 1's contact information.

3          57.  Beginning on or about March 19th, 2015,

4    Irizarry and the co-conspirators accessed and monitored

5    Criminal Account-1, without Victim 1's knowledge or

6    consent, by logging in to a bank website posing as Victim

7    1.

8          58.  On or about March 23rd, 2015, Witness 1

9    deposited Victim 1's check for $11,235.43 into Criminal

10   Account-1 and withdrew $10,000 without Victim 1's

11   knowledge or consent.

12         59.  On a date unknown, but no earlier than

13   March 23rd, 2015, Witness 1 provided $10,000 to Witness 5.

14         60.  In or about early 2015, Irizarry and his

15   co-conspirators caused approximately $126,000 in drug

16   proceeds to be withdrawn from Criminal Account-1 and

17   delivered to Witness 7 in the Middle District of Florida.

18         61.  On or about the dates set forth in

19   transactions 1 through 63 in Exhibit A, each transaction

20   being a separate overt act, the defendants and their

21   co-conspirators deposited and withdrew the amounts set

22   forth in transactions 1 through 63 in Exhibit A, by the

23   methods set forth therein, all without Victim 1's

24   knowledge or consent.  All in violation of Title 18,

25   United States Code, Sections 371 and 1028A.

1          How do you plead to that charge, guilty or not

2     guilty?

3          DEFENDANT JOSE IRIZARRY:  Guilty, sir.

4          THE COURT:  Counts 14 through 19.

5          62.  All the foregoing paragraphs and Exhibit A of

6     this Indictment are hereby re-alleged and incorporated by

7     reference.

8          63.  On the approximate dates set forth in

9     transactions 2, 3, and 6 through 9, and Exhibit A, each

10    transaction constituting a separate and individual count

11    charged herein by the Grand Jury, in the Middle District

12    of Florida, the Southern District of Florida, Columbia,

13    and elsewhere, the Defendant, Jose Ismael Irizarry, did

14    knowingly possess and use, without lawful authority, a

15    means of identification of another person, that is, the

16    name, Social Security number, passport, and forged

17    signature, during and in relation to a felony enumerated

18    in Title 18, United States Code, Section 1028A, that is,

19    theft or embezzlement of public money, in violation of

20    Title 18, United States Code, Section 641, as well as

21    bank, wire fraud, and conspiracy, in violation of Title

22    18, United States Code, Sections 1343, 1344, and 1349 as

23    charged in Counts 3 through 12.  All in violation of Title

24    18, United States Code, Sections 1028A and 2.

25         How do you plead to Counts 14 through 19?

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1        DEFENDANT JOSE IRIZARRY:  Guilty, sir.

2        THE COURT:  The elements of those offenses are set

3   out in the plea agreement.  Before we discuss the

4   elements, let me ask you to look at the end of the plea

5   agreement.  There is on your copy I believe a signature.

6   Did you, in fact, sign the plea agreement at the end?

7        DEFENDANT JOSE IRIZARRY:  Yes, sir.

8        THE COURT:  At the bottom of each page before that

9   there I expect are your initials.  Did you, in fact, place

10  your initials at the bottom of each page?

11       DEFENDANT JOSE IRIZARRY:  Yes, sir.

12       THE COURT:  Does that indicate that you and your

13  lawyer have gone over each page of the plea agreement?

14       DEFENDANT JOSE IRIZARRY:  It does, sir.

15       THE COURT:  And after you and your lawyer went

16  over each page of the plea agreement, did you understand

17  each page of the plea agreement?

18       DEFENDANT JOSE IRIZARRY:  I did, sir.

19       THE COURT:  Ms. Irizarry, with respect to your

20  plea agreement, do you have a signed copy there?

21       DEFENDANT NATHALIA GOMEZ-IRIZARRY:  Yes, sir.

22       THE COURT:  And did you, in fact, sign the plea

23  agreement.

24       DEFENDANT NATHALIA GOMEZ-IRIZARRY:  Yes, sir.

25       THE COURT:  Did you place your initials at the

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1    bottom of each page before that?

2            DEFENDANT NATHALIA GOMEZ-IRIZARRY:  Yes, sir.

3            THE COURT:  Does that indicate that you and your

4    lawyer have gone over each page of the plea agreement?

5            DEFENDANT NATHALIA GOMEZ-IRIZARRY:  Yes, sir.

6            THE COURT:  After you and your lawyer went over

7    each page of the plea agreement, did you understand each

8    page of the plea agreement?

9            DEFENDANT NATHALIA GOMEZ-IRIZARRY:  Yes, I did.

10           THE COURT:  The elements of Count One are set out

11   in both plea agreements and that indicates that that's a

12   conspiracy charge to commit money laundering, and in order

13   to prove that, the Government has to show by beyond a

14   reasonable doubt that two or more people had a plan or an

15   agreement or understanding to do something that was

16   against the law.  And in this case with respect to Count

17   One, what they'd have to show is that there was a plan or

18   an agreement or understanding to engage in money

19   laundering and they'd have to show with respect to each of

20   you that you knew about the plan and that you willfully

21   and voluntarily joined in it.

22           Mr. Irizarry, do you understand that charge?

23           DEFENDANT JOSE IRIZARRY:  Yes, I do, sir.

24           THE COURT:  Do you have any question about it?

25           DEFENDANT JOSE IRIZARRY:  No, sir.

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1          THE COURT:  And, Ms. Irizarry, do you understand

2     that charge?

3          DEFENDANT NATHALIA GOMEZ-IRIZARRY:  Yes, sir.

4          THE COURT:  Do you have any question about it?

5          DEFENDANT NATHALIA GOMEZ-IRIZARRY:  No.

6          THE COURT:  With respect, Mr. Irizarry, to the

7     other charges, Counts Two through Five, charge wire fraud,

8     and more specifically what they allege is that you

9     knowingly devised and participated in a scheme to

10    fraudulently deprive the public of the right to your

11    honest services through bribery or kickbacks, that you did

12    that with intent to defraud the public and that in

13    connection with that matter there was transmitted or

14    caused to be transmitted certain wire communications in

15    interstate commerce.

16         Do you understand that charge?

17         DEFENDANT JOSE IRIZARRY:  Yes, I do, sir.

18         THE COURT:  Do you have any question about it?

19         DEFENDANT JOSE IRIZARRY:  No, sir.

20         THE COURT:  With respect to Count Six, that's a

21    conspiracy to commit bank fraud, and there, again, two or

22    more people had to have a plan or agreement or

23    understanding to do something that was against the law.

24    And here what the Government would have to prove beyond a

25    reasonable doubt is that the plan or agreement was to

1    commit bank fraud, and that they'd have to show that you

2    knew about that plan and that you willfully and

3    voluntarily joined in it.

4              Do you understand that charge?

5              DEFENDANT JOSE IRIZARRY:  Yes, sir.

6              THE COURT:  Do you have any question about it?

7              DEFENDANT JOSE IRIZARRY:  No, sir.

8              THE COURT:  Counts Seven through Twelve charge

9    bank fraud, and there the Government would have to prove

10   beyond a reasonable doubt that you knowingly carried out

11   or attempted to carry out a scheme to defraud a financial

12   institution or to get money, assets or other property from

13   the financial institution by means of false and fraudulent

14   pretenses, representations and promises about a material

15   fact.  Further, they'd have to show that the false or

16   fraudulent pretenses, representations or promises were

17   material; that is, they had some significance or

18   importance and they'd have to show that you intended to

19   defraud the financial institution and that the financial

20   institution was Federally insured.

21             Do you understand that charge?

22             DEFENDANT JOSE IRIZARRY:  Yes, I do, sir.

23             THE COURT:  Do you have any question about it?

24             DEFENDANT JOSE IRIZARRY:  No, sir.

25             THE COURT:  Paragraph -- or Count Thirteen charges

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1    conspiracy to defraud the United States.  And there,

2    again, the Government would have to show beyond a

3    reasonable doubt that two or more people had a plan or an

4    agreement to do something that was against the law, and in

5    particular it was to defraud the United States of your

6    honest services.  And they'd have to show that you knew

7    about that plan and that you willfully and voluntarily

8    joined in it, but with respect to that conspiracy charge,

9    what the Government would also have to show is that one of

10   the conspirators committed an overt act and that that

11   overt act was committed for the purpose of carrying out

12   the object of the conspiracy.  Do you understand that

13   charge?

14           DEFENDANT JOSE IRIZARRY:  Yes, I do, sir.

15           THE COURT:  Do you have any question about it?

16           DEFENDANT JOSE IRIZARRY:  No, sir.

17           THE COURT:  And Counts Fourteen through Nineteen

18   allege aggravated identity theft.  And there the

19   Government would have to prove beyond a reasonable doubt

20   that you knowingly transferred, possessed or used another

21   person's means, name or means of identification.  You did

22   that without lawful authority and you did that during and

23   in relation to bank fraud.

24           Do you understand that charge?

25           DEFENDANT JOSE IRIZARRY:  Yes, I do, sir.

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1              THE COURT:  Do you have any question about it?

2         DEFENDANT JOSE IRIZARRY:  No, sir.

3              THE COURT:  The essence or, rather, there's a

4    statement of facts in this case that begin on Page 25 and

5    go over to the end of Page 37.  And with respect to that

6    statement, is there anything in that statement of facts

7    that you dispute or disagree with?

8         DEFENDANT JOSE IRIZARRY:  No, sir.

9              THE COURT:  And, Ms. Irizarry, with respect to

10   yours, there's a statement of facts, and yours is well

11   from Page 20 to 22.  Is there anything in that statement

12   of facts that you dispute or disagree with?

13        DEFENDANT NATHALIA GOMEZ-IRIZARRY:  No.

14             THE COURT:  Let me ask, let's start with the easy

15   ones.

16             With respect to the aggravated identity theft, did

17   you all use somebody's means of identification to open

18   that bank account?

19        DEFENDANT JOSE IRIZARRY:  Yes, sir.

20             THE COURT:  Did you have any authority to do that?

21        DEFENDANT JOSE IRIZARRY:  No, sir.

22             THE COURT:  Let me hear from the Government what

23   the essence is of the money laundering.  You explained it

24   to me before, but put it on the record, so it's clearer.

25             MR. PALAZZO:  The essence of the money laundering

1    conspiracy is that Mr. Irizarry and a group of friends

2    essentially converted proceeds from drug transactions that

3    he had access to as a special agent and diverted them to

4    the control or dominion of himself or to his

5    co-conspirators.  That in a nutshell is why --

6          THE COURT:  As I asked you before, it could be

7    viewed as involving different things.  It could be viewed

8    as -- guess what?  I've seen a whole lot of these cases,

9    but DEA agents can raid someplace and get a whole lot of

10   cash, and so is that it?  Or is it they had funds that

11   they were going to use to identify money launderers

12   through the use of those proceeds?

13         MR. PALAZZO:  That's right, Your Honor.  It's B.

14   Mr. Irizarry was part of a group at the DEA that had the

15   authority at times to follow money from drug retailers

16   back to drug trafficking organizations outside of the

17   country, and rather than do that at times, as described in

18   the facts alleged and admitted to here today, Mr. Irizarry

19   with the help of co-conspirators, instead of letting the

20   money go back, would first divert it to himself and other

21   members of the conspiracy.

22         THE COURT:  Mr. Irizarry, do you disagree with

23   that statement?

24         DEFENDANT JOSE IRIZARRY:  No, sir.

25         THE COURT:  Okay.  And let me ask about the bank

1    fraud.  Okay.  That isn't entirely clear to me either.

2          MR. PALAZZO:  Yes, Your Honor.  The theory of the

3    bank fraud is under 1344(a)(2) whereby the facts as

4    alleged and admitted to here today, Mr. Irizarry and

5    co-conspirators opened a fraudulent bank account.  They

6    used the identity of a totally unwitting victim to open

7    and fund an account and then operate the account, access

8    the account, write checks, and wire money in and out

9    thereby violating the prohibition against executing a

10   scheme or artifice to obtain money or funds controlled or

11   under the custody of the financial institution by false or

12   fraudulent pretenses.

13         THE COURT:  And there are other people involved

14   besides him, Mr. Irizarry?

15         MR. PALAZZO:  Yes, Your Honor.

16         THE COURT:  Okay.  Mr. Irizarry, do you dispute

17   any of the facts that the Government said about that

18   charge?

19         DEFENDANT JOSE IRIZARRY:  No, sir.

20         THE COURT:  Okay.  And, Mr. Dominguez, I'm

21   assuming you're satisfied that there's a legal basis for

22   that charge and those charges?

23         MR. DOMINGUEZ:  Yes, Your Honor.

24         THE COURT:  Okay.  Anything further we need to

25   discuss concerning the facts in order to establish that

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1     there's a factual basis for all these pleas of guilty?

2          MR. PALAZZO:  No, Your Honor.

3          THE COURT:  Okay.

4          MR. DOMINGUEZ:  No, Your Honor.  I believe that

5     you have covered everything.

6          MS. CASTANEDA:  Nothing to add, Your Honor.

7          THE COURT:  Okay.  I guess we can return to the

8     basics of this.

9          Mr. Irizarry, how old are you?

10          DEFENDANT JOSE IRIZARRY:  Forty-five, sir.

11          THE COURT:  How far did you go in school?

12          DEFENDANT JOSE IRIZARRY:  College.

13          THE COURT:  And you read and write and speak the

14     English language?

15          DEFENDANT JOSE IRIZARRY:  Yes, sir.

16          THE COURT:  You are a citizen of the United

17     States?

18          DEFENDANT JOSE IRIZARRY:  Yes, sir.

19          THE COURT:  To your knowledge, do you suffer from

20     any mental illness or emotional disability?

21          DEFENDANT JOSE IRIZARRY:  No, not to my knowledge.

22          THE COURT:  Pardon?

23          DEFENDANT JOSE IRIZARRY:  No, sir.  No, sir.

24          THE COURT:  Have you ever been treated for any

25     mental illness?

1        DEFENDANT JOSE IRIZARRY:  No, sir.

2        THE COURT:  Have you ever been seen by a

3  psychiatrist or psychologist?

4        DEFENDANT JOSE IRIZARRY:  Have I been seen?  Yes.

5        THE COURT:  Yes?

6        DEFENDANT JOSE IRIZARRY:  Yes, sir.

7        THE COURT:  What were the circumstances of that?

8        DEFENDANT JOSE IRIZARRY:  The death of two people.

9        THE COURT:  What?

10        DEFENDANT JOSE IRIZARRY:  I was involved in a

11  shooting and then I witnessed my friend die, so.

12        THE COURT:  Some kind of a counseling thing?

13        DEFENDANT JOSE IRIZARRY:  Yes, sir.

14        THE COURT:  Were you ever diagnosed with some kind

15  of mental disorder?

16        DEFENDANT JOSE IRIZARRY:  No, sir.

17        THE COURT:  Like depression or PTSD or anything?

18        DEFENDANT JOSE IRIZARRY:  I've had PTSD.  I

19  haven't been officially diagnosed with it, but.

20        THE COURT:  You think you had it?

21        DEFENDANT JOSE IRIZARRY:  Yes, sir.

22        THE COURT:  Mr. Dominguez, any reason to think the

23  Defendant is not competent to proceed?

24        MR. DOMINGUEZ:  No.  No.  As far as competency, no

25  question at all, Judge.

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

```
 1              THE COURT:  That's where I was headed.
 2    Mr. Irizarry, have you had any medication or drugs in the
 3    last 48 hours?
 4              DEFENDANT JOSE IRIZARRY:  No, sir.
 5              THE COURT:  Have you had any alcoholic beverage in
 6    the last 24 hours?
 7              DEFENDANT JOSE IRIZARRY:  No, sir.
 8              THE COURT:  Are there any circumstances that are
 9    effecting your ability to understand what we're discussing
10    this afternoon?
11              DEFENDANT JOSE IRIZARRY:  No, sir.
12              THE COURT:  Mrs. Irizarry, how old are you?
13              DEFENDANT NATHALIA GOMEZ-IRIZARRY:  I'm 36.
14              THE COURT:  Pardon me?
15              DEFENDANT NATHALIA GOMEZ-IRIZARRY:  Thirty-six.
16              THE COURT:  And how far did you go in school?
17              DEFENDANT NATHALIA GOMEZ-IRIZARRY:  College.
18              THE COURT:  And are you a citizen of the United
19    States?
20              DEFENDANT NATHALIA GOMEZ-IRIZARRY:  Yes, sir.
21              THE COURT:  Do you speak English?
22              DEFENDANT NATHALIA GOMEZ-IRIZARRY:  Yes, sir.
23              THE COURT:  Is it your primary language?
24              DEFENDANT NATHALIA GOMEZ-IRIZARRY:  No.  No, it's
25    Spanish.
```

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1          THE COURT:  But you understand --

2          DEFENDANT NATHALIA GOMEZ-IRIZARRY:  Yes.  Yes.

3          THE COURT:  -- english fluently, is that it?

4          DEFENDANT NATHALIA GOMEZ-IRIZARRY:  Yes.

5          THE COURT:  To your knowledge, have you ever

6   suffered from any mental illness or emotional disability?

7          DEFENDANT NATHALIA GOMEZ-IRIZARRY:  No, sir.

8          THE COURT:  Have you ever been treated for any

9   mental illness?

10         DEFENDANT NATHALIA GOMEZ-IRIZARRY:  No, sir.

11         THE COURT:  Have you ever been seen by a

12  psychiatrist or psychologist?

13         DEFENDANT NATHALIA GOMEZ-IRIZARRY:  No, sir.

14         THE COURT:  Have you had any medication or drugs

15  in the last 48 hours?

16         DEFENDANT NATHALIA GOMEZ-IRIZARRY:  No, sir.

17         THE COURT:  Have you had any alcoholic beverage in

18  the last 24 hours?

19         DEFENDANT NATHALIA GOMEZ-IRIZARRY:  No, sir.

20         THE COURT:  Are there any circumstances that are

21  effecting your ability to understand what we're discussing

22  this afternoon?

23         DEFENDANT NATHALIA GOMEZ-IRIZARRY:  No, sir.

24         THE COURT:  Let me advise each of you that you

25  have a right to be -- to persist in your pleas of not

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1    guilty and to have this case go to trial.  And if at any

2    point during this proceeding you want to change your mind,

3    just tell me that, we'll re-enter the pleas of not guilty

4    and the case can go to trial.

5         On the other hand, after your pleas of guilty have

6    been accepted, you will not have the same right to freely

7    change your mind and withdraw your plea of guilty.

8         Mr. Irizarry, do you understand that?

9         DEFENDANT JOSE IRIZARRY:  Yes, I do sir.

10        THE COURT:  And, Ms. Irizarry, do you?

11        DEFENDANT NATHALIA GOMEZ-IRIZARRY:  Yes, sir.

12        THE COURT:  Let me therefore explain to you the

13   right you would have if this case went to trial.  You

14   would, of course, be entitled to be represented at trial

15   by your lawyers.  And if there should come a point when

16   you cannot afford to hire your lawyer, one can be

17   appointed for you at no expense to you.

18        Under the law, you'd be presumed to be innocent of

19   these charges, and before you could be convicted, the

20   Government would have to prove that you're guilty of the

21   offenses beyond a reasonable doubt.

22        You'd have a right to have a jury of 12 people

23   hear your case, and all 12 jurors would have to agree

24   unanimously that you're guilty beyond a reasonable doubt

25   before you could be convicted.

1              At the trial the Government would call witnesses

2    and your lawyer would have a right to cross-examine any

3    witnesses called by the Government.  You could call

4    witnesses in your own defense and you could use the

5    Court's subpoena power to make witnesses come to court

6    even if they did not want to.  You could testify in your

7    own defense if you wished to do that.  On the other hand,

8    the Government couldn't force you or compel you to testify

9    if you did not wish to do so.

10             Mr. Irizarry, do you understand if this case went

11   to trial you'd have those rights and others?

12             DEFENDANT JOSE IRIZARRY:  Yes, sir.

13             THE COURT:  Do you understand that by pleading

14   guilty you give up all those rights and that there will be

15   no trial?

16             DEFENDANT JOSE IRIZARRY:  I do, sir.

17             THE COURT:  And if you have any defense to any of

18   these charges, any defense that you have is lost by a plea

19   of guilty.  Do you understand that?

20             DEFENDANT JOSE IRIZARRY:  Yes, sir.

21             THE COURT:  And if there's any claim of an

22   unlawful search and seizure, or unlawful statements

23   obtained, any claim like that is lost by a plea of guilty.

24   Do you understand that?

25             DEFENDANT JOSE IRIZARRY:  Yes, sir.

1          THE COURT:  Do you understand that the only thing

2    remains to be done for the Court to impose sentence upon

3    you?

4          DEFENDANT JOSE IRIZARRY:  Yes, sir.

5          THE COURT:  And, Ms. Irizarry, do you understand

6    you'd have the rights that I've just identified if this

7    case went to trial?

8          DEFENDANT NATHALIA GOMEZ-IRIZARRY:  Yes, sir.

9          THE COURT:  And do you understand that by pleading

10   guilty you give up all those rights and there will be no

11   trial?

12         DEFENDANT NATHALIA GOMEZ-IRIZARRY:  Yes, sir.

13         THE COURT:  And if you have defenses to the charge

14   against you, any defense that you have is lost by a plea

15   of guilty.  Do you understand that?

16         DEFENDANT NATHALIA GOMEZ-IRIZARRY:  Yes, sir.

17         THE COURT:  Do you understand further that if

18   there's any claim of an unlawful search and seizure,

19   unlawful statements obtained, any claim like that is lost

20   by a plea of guilty.  Do you understand that?

21         DEFENDANT NATHALIA GOMEZ-IRIZARRY:  Yes, sir.

22         THE COURT:  And do you understand that the only

23   thing that remains to be done for the Court to impose

24   sentence upon you.  Do you understand that?

25         DEFENDANT NATHALIA GOMEZ-IRIZARRY:  Yes, sir.

1            THE COURT:  Mr. Irizarry, you're represented by

2      Mr. Dominguez.  Have you had a full opportunity to discuss

3      this case with him?

4            DEFENDANT JOSE IRIZARRY:  Yes, sir.

5            THE COURT:  With respect to your decision to plead

6      guilty, do you think you need any more time to discuss

7      that matter with him?

8            DEFENDANT JOSE IRIZARRY:  No, sir.

9            THE COURT:  Are you satisfied with the way he has

10     represented you in this case?

11           DEFENDANT NATHALIA GOMEZ-IRIZARRY:  Yes, sir.

12           THE COURT:  Is there anything you think you should

13     have done that he did not do in this case?

14           DEFENDANT JOSE IRIZARRY:  No, sir.

15           THE COURT:  In particular, did he explain each of

16     the 19 charges against you to you?

17           DEFENDANT JOSE IRIZARRY:  He did, sir.

18           THE COURT:  And do you understand those charges?

19           DEFENDANT JOSE IRIZARRY:  Yes, sir.

20           THE COURT:  Do you have any question about them?

21           DEFENDANT JOSE IRIZARRY:  No, sir.

22           THE COURT:  And, Mrs. Irizarry, you're represented

23     by Ms. Casteneda.  Have you had a full opportunity to

24     discuss this case with her?

25           DEFENDANT NATHALIA GOMEZ-IRIZARRY:  Yes, sir.

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1          THE COURT:  With respect to your decision to plead

2    guilty, do you think you need any more time to discuss

3    that matter with her?

4          DEFENDANT NATHALIA GOMEZ-IRIZARRY:  No, sir.

5          THE COURT:  Are you satisfied with the way she has

6    represented you in this case?

7          DEFENDANT NATHALIA GOMEZ-IRIZARRY:  Yes, sir.

8          THE COURT:  Is there anything you think she should

9    have done that she did not do in this case?

10          DEFENDANT NATHALIA GOMEZ-IRIZARRY:  No, sir.

11          THE COURT:  And in particular did she explain the

12    charge in Count One to you?

13          DEFENDANT NATHALIA GOMEZ-IRIZARRY:  Yes, sir.

14          THE COURT:  Do you understand the charge?

15          DEFENDANT NATHALIA GOMEZ-IRIZARRY:  Yes, sir.

16          THE COURT:  Do you have any question about it?

17          DEFENDANT NATHALIA GOMEZ-IRIZARRY:  No.  Thank

18    you.

19          THE COURT:  The penalties for the offense in

20    Count -- the penalties are set out in the Government's or

21    in the plea agreements, but with respect to Count One

22    which applies to both of you, that has a maximum sentence

23    of 20 years in prison.

24          Mr. Irizarry, do you understand that?

25          DEFENDANT JOSE IRIZARRY:  Yes, sir.

1          THE COURT:  And, Ms. Irizarry, do you?

2          DEFENDANT NATHALIA GOMEZ-IRIZARRY:  Yes, sir.

3          THE COURT:  Furthermore, there could be a fine of

4     the greater of $500,000 or twice the value of the monetary

5     instrument involved in the matter.

6          Mr. Irizarry, do you understand that?

7          DEFENDANT JOSE IRIZARRY:  Yes, sir.

8          THE COURT:  And, Ms. Irizarry, do you?

9          DEFENDANT NATHALIA GOMEZ-IRIZARRY:  Yes, sir.

10          THE COURT:  Also, and this isn't even mentioned in

11    here, but separate and apart from the fine, there's to be

12    a special assessment of $100.  It's due at the time of

13    sentencing.

14          Mr. Irizarry, do you understand that?

15          DEFENDANT JOSE IRIZARRY:  Yes, sir.

16          THE COURT:  And I'll add and so with -- and that

17    same thing is true with all the other counts, so that

18    there's a total special assessment of $1900.  Do you

19    understand that?

20          DEFENDANT JOSE IRIZARRY:  I do, sir.

21          THE COURT:  And there could be a term of

22    supervised release of up to three years.  I'll tell you

23    each that the term of supervised release is like a period

24    of probation that begins when someone is released from

25    prison and there are conditions of supervised release, and

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1    if a person violates a condition of supervised release,

2    then they could be returned to prison.

3            And, Ms. Irizarry, I didn't go over each one of

4    those penalties with you, but do you understand that's a

5    maximum of 20 years in prison, a fine of the greater of

6    $500,000 or twice the value of the monetary instruments,

7    the $100 special assessment and a term of supervised

8    release up to three years.

9            Do you understand those penalties?

10           DEFENDANT NATHALIA GOMEZ-IRIZARRY:  Yes, sir.

11           THE COURT:  Do you have any question about them?

12           DEFENDANT NATHALIA GOMEZ-IRIZARRY:  No.

13           THE COURT:  Mr. Irizarry, do you have any question

14   about those penalties?

15           DEFENDANT JOSE IRIZARRY:  No, sir.

16           THE COURT:  Mr. Irizarry, with respect to you,

17   Counts Two through Twelve have a maximum sentence of 30

18   years in prison.  Do you understand that?

19           DEFENDANT JOSE IRIZARRY:  I do, sir.

20           THE COURT:  And there could be a fine of up to

21   $1,000,000.  Do you understand that?

22           DEFENDANT JOSE IRIZARRY:  Yes, sir.

23           THE COURT:  And there could be a term of

24   supervised release of up to five years.  Do you understand

25   that?

1          DEFENDANT JOSE IRIZARRY:  Yes, sir.

2          THE COURT:  As well as the hundred dollar special

3    assessment.  Do you have any question concerning the

4    penalties in Counts Two through Twelve?

5          DEFENDANT JOSE IRIZARRY:  No, sir.

6          THE COURT:  Count Thirteen has a maximum sentence

7    of five years in prison, a fine of not more than $500,000

8    and a term of supervised release of not more than three

9    years as well as a $100 special assessment.  Do you

10   understand the penalties for Count Thirteen?

11         DEFENDANT JOSE IRIZARRY:  Yes, sir.

12         THE COURT:  Counts Fourteen through Nineteen which

13   is the aggravated identity theft, that has a mandatory

14   sentence of two years in prison which is consecutive to

15   any other term of imprisonment.

16         Now, I asked the Government earlier because it

17   could be read that each one of those has an additional two

18   year consecutive sentence.  The Government is not making

19   that contention; is that right?

20         MR. PALAZZO:  That's correct, Your Honor.

21         THE COURT:  So you're saying with respect to the

22   aggravated identity theft in Counts Fourteen through

23   Nineteen, what we're talking about is simply a consecutive

24   two year mandatory sentence?

25         MR. PALAZZO:  Yes, Your Honor.

1    THE COURT:  All right.  And, Mr. Irizarry, do you

2    understand that?

3        DEFENDANT JOSE IRIZARRY:  Yes, sir.

4        THE COURT:  Pardon?

5        DEFENDANT JOSE IRIZARRY:  Yes, sir.

6        THE COURT:  I will tell you that with respect to

7    these offenses, the Court can order the Defendant to make

8    restitution to a victim and that may come into play.

9        Does the Government have anything particular in

10   mind there?

11       MR. PALAZZO:  Yes.  The 11,235.43 from Paragraph

12   43 in the indictment.

13       THE COURT:  Okay.  Is that it?

14       MR. PALAZZO:  Yes, Your Honor.

15       THE COURT:  Okay.  So the Government is saying

16   that you are going to be required to pay approximately

17   $11,000 in restitution to -- who is that, to the victim?

18       MR. PALAZZO:  To the victim.

19       THE COURT:  Is that Victim 1?

20       MR. PALAZZO:  Yes.

21       THE COURT:  Also in connection with this case, the

22   Court can order Defendant to forfeit certain property and,

23   in fact, there's a forfeiture provision in the plea

24   agreement in Paragraph 11 that begins on Page 14.  And

25   there they specify that what's subject to forfeiture is

1    the Lamborghini and the Tiffany diamond ring.  There could

2    be other matters subject to forfeiture as indicated there.

3    Does the Government have anything specific in mind at this

4    point?

5            MR. PALAZZO:  No, Your Honor, not outside of those

6    two items.  And it would be his interest in the

7    Lamborghini and the ring as well as wife's interest.

8            THE COURT:  But actually that's specified, so I'm

9    just curious whether there's something beyond that to be

10   subject to forfeiture.

11           MR. PALAZZO:  Well, that is up to the Court, but

12   the Government won't be seeking further forfeiture.

13           THE COURT:  Seeking what?

14           MR. PALAZZO:  Will not be seeking further

15   forfeiture.

16           THE COURT:  Okay.  All right.  So go ahead.

17           MS. CASTANEDA:  We just for the record note

18   that -- can we just for the record note that that vehicle

19   has already actually been seized so that's already gone?

20           THE COURT:  That's not unusual.  I mean I've

21   had -- yeah, but whatever claim your client might have in

22   the Lamborghini and the diamond ring has been seized too.

23           MS. CASTANEDA:  It's already been.  That's what

24   we're doing right now.

25           THE COURT:  What?

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1        MS. CASTANEDA:  We're -- that's what we're doing

2    right now.  We obviously acknowledge the interest in the

3    item.

4        THE COURT:  Yeah, but has somebody seized the

5    diamond ring?

6        MS. CASTANEDA:  Not the ring, but the vehicle.

7        THE COURT:  Okay.  So Ms. Irizarry -- I'm getting

8    tired, I guess you all are too probably hearing me talk.

9        Mr. Irizarry, did you understand you'd forfeit any

10    interest you have in those two things?

11        DEFENDANT JOSE IRIZARRY:  Yes, sir.

12        THE COURT:  I guess I slurred.  Yeah, I was

13    talking to Misses.

14        DEFENDANT JOSE IRIZARRY:  I'm sorry.

15        THE COURT:  Do you understand any interest you

16    have in those two things is being subject to forfeiture?

17        DEFENDANT NATHALIA GOMEZ-IRIZARRY:  Yes.

18        THE COURT:  I'll tell you each as a result of a

19    conviction for these offenses that results in loss of

20    valuable civil rights including the right to possess

21    firearms.

22        Mr. Irizarry, do you understand that?

23        DEFENDANT JOSE IRIZARRY:  I do, sir.

24        THE COURT:  Mrs. Irizarry, do you?

25        DEFENDANT NATHALIA GOMEZ-IRIZARRY:  Yes.

1           THE COURT:  These offenses fall under the Federal

2    Sentencing Guidelines.  I'll tell you at this point the

3    guidelines are no longer mandatory and binding, rather

4    they are advisory, but the point of them is to come up

5    with a guideline range which is the range of months, but

6    the Court must correctly calculate the guideline range and

7    take that into account in determining the sentence, but

8    the Court also can consider possible departures under the

9    sentencing guidelines and must consider other sentencing

10   factors that are set out in the law specifically in

11   Section 3553(a).  So it isn't just the guidelines that

12   determine the sentence but other factors have to be

13   considered as well.

14           Mr. Irizarry, do you understand that?

15           DEFENDANT JOSE IRIZARRY:  I do, sir.

16           THE COURT:  And, Misses, do you?

17           MR. DIAZ:  Yes, sir.

18           THE COURT:  I will tell you that in the Federal

19   system parole has been abolished, so you cannot be

20   released early from prison on parole.

21           Mr. Irizarry, do you understand that?

22           DEFENDANT JOSE IRIZARRY:  Yes, sir.

23           THE COURT:  And, Mrs. Irizarry, do you?

24           MR. DIAZ:  Yes, sir.

25           THE COURT:  All right.  Let me now go over the

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1   plea agreements with you so there will be no

2   misunderstanding about them.

3          Starting with Mr. Irizarry's, we've already

4   covered Paragraphs 1, 2, 3, and 3.

5          In Paragraph 4, the Government agrees not to

6   charge you with any other known Federal offenses.  In

7   Paragraph 5, there is a joint recommendation to a

8   sentencing guidelines calculation.  I won't go -- I don't

9   think it's necessary to go down each one, but the point is

10  that with respect to that, the Government agrees with the

11  Defendants to make the recommendations of those

12  calculations but I'll point out that the probation office

13  gets involved in the calculation and then the District

14  Judge does too, so that what you all have agreed to isn't

15  necessarily the final calculation.

16         Mr. Irizarry, do you understand that?

17         DEFENDANT JOSE IRIZARRY:  Yes, sir.

18         THE COURT:  Mrs. Irizarry, do you?

19         MR. DIAZ:  Yes.

20         THE COURT:  And if it comes out to be higher than

21  what's there, you would not have a right to withdraw your

22  plea of guilty.

23         Mr. Irizarry, do you understand that?

24         DEFENDANT JOSE IRIZARRY:  I do, sir.

25         THE COURT:  And, Mrs. Irizarry, do you?

1          DEFENDANT NATHALIA GOMEZ-IRIZARRY:  Yes, sir.

2          THE COURT:  Now, with respect to a specific

3     calculation, there's a dispute whether there should be an

4     additional six level increase because the Defendant knew

5     or believed that the laundered funds were proceeds of

6     controlled substance activity and the parties dispute

7     that.  And, in fact, when we get to the appeal things, the

8     parties, the Defendants can appeal that if the ruling

9     comes against them, so with respect to the guideline

10    calculations, do you understand that, Mrs. Irizarry, you

11    have one in there too but it's a whole lot less, but if

12    it's not the same and it's higher, you would not have a

13    right to withdraw your plea of guilty.

14          Do you understand that?

15          DEFENDANT NATHALIA GOMEZ-IRIZARRY:  Yes, sir.

16          THE COURT:  But there's this one specific

17    guideline calculation that's at issue, and the parties

18    take different positions and the Government agrees that if

19    it comes out unfavorably to the Defendant, then the

20    Defendant can appeal that.  Does the Government agree with

21    that?

22          MR. PALAZZO:  Yes, Your Honor.

23          THE COURT:  So that's Paragraph 6 thereon.  I

24    won't bother much -- well, I will.

25          On Page 8 it talks about that the pretrial

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1    services may agree with the Government, it wouldn't be

2    pretrial services, it would be the probation office.

3             Paragraph 7 of Mr. Irizarry's relates to a

4    downward adjustment for acceptance of responsibility and

5    you can get as much as a three level downward adjustment

6    for acceptance of responsibility, but ordinarily in order

7    to get the third level, the Government has to file a

8    motion concerning that matter, and I am gathering since

9    you put it in your calculation, the Government is going to

10   make such a motion?

11            MR. PALAZZO:  Yes, Your Honor.

12            THE COURT:  Okay.  Mr. Irizarry, do you have any

13   question about the acceptance of responsibility matter?

14            DEFENDANT JOSE IRIZARRY:  No, sir.

15            THE COURT:  Paragraph 8 concerns a substantial

16   assistance motion which is a standard matter in these plea

17   agreements, and so this one has such a thing.  That

18   indicates that the Government is prepared to consider

19   filing a motion saying that the Defendant has provided

20   substantial assistance, and if the Government does file a

21   motion saying you have provided substantial assistance

22   that could benefit you in various ways depending on what

23   the Government puts in its motion.  The Government could

24   ask the Court to depart down below whatever the guideline

25   range is or the Government could ask the Court to in your

1    case to disregard the two year mandatory sentence for the

2    aggravated identity theft or the Government could ask the

3    Court to do both of those things.

4           Do you understand how you could benefit if the

5    Government files the substantial assistance motion?

6           DEFENDANT JOSE IRIZARRY:  Absolutely, sir.

7           THE COURT:  And do you understand that with

8    respect to that matter, what it provides is the Government

9    is only agreeing to consider filing the motion.  They're

10   not promising they will file the motion.  Do you

11   understand that?

12          DEFENDANT JOSE IRIZARRY:  Yes, I do, sir.

13          THE COURT:  And if the Government does not file a

14   motion, you would not have a right to challenge their

15   failure to do so.  Do you understand that?

16          DEFENDANT JOSE IRIZARRY:  I do, sir.

17          THE COURT:  Furthermore, if the Government does

18   file the motion, the Court could either deny the motion or

19   give you less benefit than the Government has recommended,

20   and if that should happen, you would not have a right to

21   withdraw your plea of guilty.  Do you understand that?

22          DEFENDANT JOSE IRIZARRY:  Yes, sir.

23          THE COURT:  Do you have any question about that

24   provision?

25          DEFENDANT JOSE IRIZARRY:  No, sir.

1          THE COURT:  Paragraph 9 indicates that the

2     Government agrees not to use any information you do

3     provide during your cooperation determining the guideline

4     range.

5          Paragraph 10 it also discusses cooperation.  There

6     the Government agrees in 10A to tell the Court and the

7     probation office about the nature and extent of your

8     cooperation and if any other circumstances showing

9     rehabilitation.  The provision goes on further to say that

10    if you provide false or incomplete information during your

11    cooperation, you could be prosecuted for the crime of

12    perjury or making false statements or for obstruction of

13    justice.  Further, the Government could prosecute you on

14    any other known Federal offenses that they've agreed not

15    to prosecute and you would not have a right to withdraw

16    your plea of guilty.

17         Do you have any question about that provision?

18         DEFENDANT JOSE IRIZARRY:  No, sir.

19         THE COURT:  We've already discussed Paragraph 11

20    concerning forfeiture.

21         Here comes Part B, which sets out certain terms

22    and conditions.  We've already discussed restitution,

23    special assessment and fine in Paragraph 1 and supervised

24    release in Paragraph 2.  Paragraph 3 is irrelevant since

25    you are a citizen of the United States.  And Paragraph 4,

1    the Government keeps a right to tell the Court and the

2    probation office about you and this offense.  And in

3    Paragraph 5, you agree to provide a financial affidavit as

4    well as any related financial information requested by the

5    Government.

6         I want to emphasize Paragraph 6.  Paragraph 6

7    points out that the Court is not a party to this plea

8    agreement, therefore, isn't bound by the plea agreement.

9    This is an agreement between you on the one hand and the

10   Government on the other hand, so if there are certain

11   items in here that the Court disagrees with, the Court can

12   reject those items.  Do you understand that?

13        DEFENDANT JOSE IRIZARRY:  Yes, sir.

14        THE COURT:  And if that should happen, you would

15   not have a right to withdraw your plea of guilty.  Do you

16   understand that?

17        DEFENDANT JOSE IRIZARRY:  I do, sir.

18        THE COURT:  Do you have any question about that

19   provision?

20        DEFENDANT JOSE IRIZARRY:  No, sir.

21        THE COURT:  Also I want to emphasize Paragraph 7.

22   First, I'll tell you that even though you're pleading

23   guilty, you have a right to appeal your sentence, but

24   under Paragraph 7 you limit the extent to which you can

25   appeal your sentence.  Under Paragraph 7 you can only

1    appeal if the sentence exceeds the guideline range as

2    determined by the Court under the guideline, or if the

3    sentence exceeds the statutory maximum penalty if both the

4    sentence violates the Eighth Amendment to the United

5    States Constitution which prohibits excessive fines and

6    cruel and unusual punishment, and you can also appeal if

7    the particular item in the guideline calculation comes out

8    unfavorably to you, you can also appeal that.

9         MR. PALAZZO:  Pardon, Your Honor.  Just to make

10   clear on the record that Mr. Irizarry's Counsel and I have

11   an agreement regard that appeal to a very narrow legal --

12        THE COURT:  You want to state whatever your

13   agreement is?

14        MR. DOMINGUEZ:  Yes.  Mr. Irizarry reserves the

15   right to argue about the legal impossibility of the

16   application of the six points for drug proceeds, the

17   enhancement.

18        THE COURT:  And so your understanding is all he

19   can raise on appeal is the legal argument?

20        MR. DOMINGUEZ:  Yes.

21        THE COURT:  Not that it's --

22        MR. DOMINGUEZ:  Correct.  It's not the overall.

23        THE COURT:  -- bad discretion or something like

24   that?

25        MR. DOMINGUEZ:  Correct.  Correct.

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

 1              THE COURT:  Okay.  Mr. Irizarry, do you understand
 2       that aspect of that particular point?  You can appeal that
 3       if this legal argument of whether or not it's a legal
 4       impossibility is unfavorable to you, you can appeal that
 5       argument.  What you can't appeal if you -- you can't
 6       appeal if you think the Court exercised its discretion
 7       improperly in awarding it.  Do you understand that?
 8              DEFENDANT JOSE IRIZARRY:  Yes, sir.
 9              THE COURT:  You could also appeal if the
10       Government appeals itself with respect to anything.  Do
11       you understand that your right to appeal is limited in
12       that way?
13              DEFENDANT JOSE IRIZARRY:  I do, sir.
14              THE COURT:  And that in particular what you can
15       not appeal is the way the Court calculates the sentencing
16       guidelines.  Do you understand that?
17              DEFENDANT JOSE IRIZARRY:  Yes, sir.
18              THE COURT:  Do you have any question about that
19       provision?
20              DEFENDANT JOSE IRIZARRY:  No, sir.
21              THE COURT:  And are you agreeing to it freely and
22       voluntarily as part of this plea agreement?
23              DEFENDANT JOSE IRIZARRY:  Yes, sir.
24              THE COURT:  Paragraph 8 points out that this plea
25       agreement only applies to the United States and does not

1    apply -- well, that's not accurate.  It applies to -- what

2    does it apply to?  The U. S. Attorney's Office from the

3    Northern District of Georgia is somehow involved.  And

4    ordinarily I would say it applies to the United States

5    Attorney's office for the Middle District of Florida, but

6    you're from the Department of Justice, so I'm having

7    trouble thinking that -- thinking that when you say can't

8    bind other Federal prosecutors, I'm not sure what that

9    means.  This plea agreement doesn't bind any state or

10   local prosecutors, that's for sure.

11        MR. PALAZZO:  That's right, Your Honor.  So the

12   Government is defined as the Northern District of Georgia

13   and the money laundering and asset forfeiture in the asset

14   recovery section of the Department of Justice beginning of

15   the agreement, and then this other standard language in

16   the agreement refers to new facts in other jurisdictions.

17   They are free to --

18        THE COURT:  Okay.  So then if some U. S.

19   Attorney's office in New Mexico decides to charge, that's

20   okay?

21        MR. PALAZZO:  With facts that are not part of what

22   we have discussed here today.

23        THE COURT:  Well, okay.  I wouldn't worry about

24   it.  The other -- no other Federal, state or local

25   prosecutors are bound by this agreement other than the

 1    Justice Department and the Northern District of Georgia.

 2    Do you understand that?

 3              DEFENDANT JOSE IRIZARRY:  I do, sir.

 4              THE COURT:  Do you have any question about that?

 5              DEFENDANT JOSE IRIZARRY:  No.

 6              THE COURT:  I did.

 7              MR. PALAZZO:  Your Honor, the Money Laundering and

 8    Asset Recovery Section in the Northern District of Georgia

 9    are here because of a recusal in the local office.

10              THE COURT:  That what?  Take your mask off.  I

11    can't hear you.

12              MR. PALAZZO:  Thank you, Your Honor.  I'm here

13    today appearing on behalf of the Department of Justice,

14    Washington, D.C. because of recusal in the investigation

15    by the local U. S. Attorney's office, so they won't be

16    prosecuting Mr. Irizarry as well.

17              THE COURT:  Oh, okay.  All right.  Anything

18    further we need to discuss about Paragraph 8?

19              MR. DOMINGUEZ:  No, Your Honor.

20              THE COURT:  Paragraph 9 simply indicates that this

21    plea agreement can be filed in open court or in a closed

22    session and, in fact, we're discussing it in open court.

23              And with respect to -- let me jump to Paragraph

24    12.  That indicates, Mr. Irizarry, that this is the entire

25    agreement between you and the Government and that there

1    are no other promises, agreements or representations

2    except for what's written down here, so if you think

3    someone has promised you something in order to get you to

4    plead guilty, if it isn't written down here, it doesn't

5    count and you can't rely on it.  Do you understand that?

6              DEFENDANT JOSE IRIZARRY:  I do, sir.

7              THE COURT:  Do you have any question about that?

8              DEFENDANT JOSE IRIZARRY:  No, sir.

9              THE COURT:  Ms. Irizarry, let me go through yours.

10   We've already discussed Paragraphs 1, 2 and 3.  Again, the

11   Government in Paragraph 4 agrees not to charge you with

12   any other known criminal offenses.  Then comes a guideline

13   sentence calculation which is significantly lower, but as

14   I told Mr. Irizarry, if the probation office and then

15   ultimately the District Court disagrees with that

16   calculation and thinks it should be higher, then you would

17   not have a right to withdraw your plea of guilty.  Do you

18   understand that?

19             DEFENDANT NATHALIA GOMEZ-IRIZARRY:  Yes, sir.

20             THE COURT:  Paragraph 6 talks about acceptance of

21   responsibility of three levels, but I don't see three

22   levels being involved here because it requires Level 16,

23   so it's only two; right?

24             MS. CASTANEDA:  Yes, Your Honor, I explained that

25   to her, yes.

1          THE COURT:  Pardon?

2          MS. CASTANEDA:  Yes.  And it's written in there.

3     We discussed it and that third level on the side because

4     the offense level is not high enough.

5          THE COURT:  It has to be Level 16 or higher.  This

6     proposal is you're down at 11, so that you wouldn't even

7     be eligible for any third level downward adjustment.  Do

8     you understand that?

9          DEFENDANT NATHALIA GOMEZ-IRIZARRY:  Yes.

10          THE COURT:  So in a sense, don't be misled by this

11     thinking you could get a third level because you can't.

12          MS. NATHALIA GOMEZ-IRIZARRY:  Okay.  Yes.

13          THE COURT:  Do you understand that?

14          MS. NATHALIA GOMEZ-IRIZARRY:  Yes, sir.

15          THE COURT:  Do you have any question about that?

16          MS. NATHALIA GOMEZ-IRIZARRY:  No.

17          THE COURT:  And then the next paragraph concerns

18     cooperation which as I said is a standard thing.  With

19     respect to your circumstance, the most you could get out

20     of the Government filing a substantial assistance motion

21     is a downward departure from the guideline range.  There

22     isn't any minimum mandatory with respect to you so that

23     doesn't apply, and, again, I want to point out that it's

24     up to the Government to decide whether or not to file a

25     motion for substantial assistance.  All they've agreed to

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

71

1    do is consider filing a motion, in other words, to think

2    about it.  They're not promising that they're going to

3    file such a motion.  Do you understand that?

4              MS. NATHALIA GOMEZ-IRIZARRY:  Yes, sir.

5              THE COURT:  If the Government does not file a

6    motion, you do not have a right to challenge the failure

7    to do so.  Do you understand that?

8              MS. NATHALIA GOMEZ-IRIZARRY:  Yes, sir.

9              THE COURT:  Furthermore, if the Government does

10   not file a motion, you would not have a right to not only

11   challenge their failure to do so but you wouldn't have a

12   right to withdraw your plea of guilty.  Do you understand

13   that?

14             MS. NATHALIA GOMEZ-IRIZARRY:  Yes, sir.

15             THE COURT:  Do you have any question about that

16   provision?

17             MS. NATHALIA GOMEZ-IRIZARRY:  No, sir.

18             THE COURT:  With respect to Paragraph 11, the

19   Government agrees that any information you do provide

20   during your cooperation will not be used against you in

21   determining the guideline range.  Also, with respect to

22   cooperation, I hate to belabor this because you're sitting

23   listening to me go through this before, but the Government

24   agrees to tell the Court and the probation office about

25   the nature and extent of your cooperation and of any other

1     circumstances showing rehabilitation.

2          If you do provide false or incomplete information

3     during your cooperation, you could be prosecuted for the

4     crime of perjury or making false statement or for

5     obstruction of justice.

6          Further, the Government could prosecute you on any

7     other known offenses that they've agreed not to prosecute

8     and you would not have a right to withdraw your plea of

9     guilty.  Do you understand that?

10         MS. NATHALIA GOMEZ-IRIZARRY:  Yes, sir.

11         THE COURT:  Paragraph 10 concerns forfeiture and

12    we've discussed that.  Then comes Part B, and that sets

13    out certain standard terms and conditions.  We've already

14    discussed restitution, special assessment and fine

15    Paragraph 1, supervised release in Paragraph 2 and you've

16    indicated you're a citizen of the United States; right?

17         MS. NATHALIA GOMEZ-IRIZARRY:  Yes, sir.

18         THE COURT:  I asked you that; right?

19         MS. NATHALIA GOMEZ-IRIZARRY:  Yes, sir, you did.

20         THE COURT:  And I know it's been a long time ago,

21    but, so Paragraph 3 doesn't have any relevance to you.

22    Paragraph 4, the Government reserves the right to tell the

23    Court and the probation office about you and this offense

24    and you agree to provide a financial affidavit as well as

25    any related financial information requested by the

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1   Government.

2          I will go over Paragraph 6 with you because it's

3   important.  It points out that the Court is not a party to

4   this plea agreement and therefore isn't bound by the plea

5   agreement.  This is an agreement between you on the one

6   hand and the Government on the other hand, so if there's

7   certain items in here the Court disagrees with, the Court

8   can reject those items.  Do you understand that?

9          MS. NATHALIA GOMEZ-IRIZARRY:  Yes, sir.

10          THE COURT:  If that should happen, you would not

11   have the right to withdraw your plea of guilty.  Do you

12   understand that?

13          DEFENDANT NATHALIA GOMEZ-IRIZARRY:  Yes, sir.

14          THE COURT:  Do you have any question about that

15   provision?

16          MS. NATHALIA GOMEZ-IRIZARRY:  No, sir.

17          THE COURT:  Also I'm going to emphasize Paragraph

18   7 which I went over with Mr. Irizarry, but in Paragraph 7,

19   you limit the extent to which you can appeal your

20   sentence.  Under Paragraph 7, you can only appeal if the

21   sentence exceeds the guideline range as determined by the

22   Court under the guidelines, both the sentence exceeds the

23   statutory maximum penalty, or if the sentence violates the

24   Eighth Amendment to the Constitution which prohibits

25   excessive fines and cruel and unusual punishment.  You can

 1   also appeal if the Government appeals.  It doesn't say

 2   anything more about the special appeal right.

 3        MR. PALAZZO:  That's right, Your Honor, just

 4   Mr. Irizarry.

 5        MS. CASTANEDA:  I don't believe the Government was

 6   seeking that enhancement, Your Honor, so it wasn't --

 7        THE COURT:  Pardon?

 8        MS. CASTANEDA:  The Government was not seeking

 9   that particular enhancement under this sentencing

10   guidelines so it wasn't even an issue for us.

11        THE COURT:  Okay.  All right.  What you cannot

12   appeal is the way the Court calculates the sentencing

13   guidelines.  Do you understand that?

14        MS. NATHALIA GOMEZ-IRIZARRY:  Yes, sir.

15        THE COURT:  But, again, if the Government appeals

16   something, then you can appeal yourself.

17        MS. NATHALIA GOMEZ-IRIZARRY:  Yes.

18        THE COURT:  Do you understand that your appeal

19   rights are limited in that respect?

20        MS. NATHALIA GOMEZ-IRIZARRY:  Yes, sir.

21        THE COURT:  Do you have any question about that?

22        MS. NATHALIA GOMEZ-IRIZARRY:  No, sir.

23        THE COURT:  And are you agreeing to that

24   limitation freely and voluntarily as part of this plea

25   agreement?

1              MS. NATHALIA GOMEZ-IRIZARRY:  Yes, sir.

2              THE COURT:  Paragraph 8 indicates that this plea

3       agreement applies only to the Government, and you heard

4       the discussion about who that is, so do you understand

5       that?

6              MS. NATHALIA GOMEZ-IRIZARRY:  Yes, sir.

7              THE COURT:  Paragraph 9 indicates that this plea

8       agreement could be filed in open court or in a closed

9       session and, in fact, we're discussing it in open court.

10             And let me jump to Paragraph 12 which is on Page

11      22.  That indicates that this plea agreement is the entire

12      agreement between you and the Government and that there

13      are no other promises, agreements or representation except

14      for what's written down here, so if you think someone has

15      promised you anything in order to get you to plead guilty

16      and it isn't written down here, then it doesn't count and

17      you can't rely on it.  Do you understand that?

18             DEFENDANT NATHALIA GOMEZ-IRIZARRY:  Yes, sir.

19             THE COURT:  Do you have any question about that?

20             MS. NATHALIA GOMEZ-IRIZARRY:  No, sir.

21             THE COURT:  Mr. Irizarry, are you pleading guilty

22      freely and voluntarily?

23             DEFENDANT JOSE IRIZARRY:  Yes, sir.

24             THE COURT:  Has anyone forced or coerced you in

25      order to get you to plead guilty?

1          DEFENDANT JOSE IRIZARRY:  No, sir.

2          THE COURT:  Except for what's set out in the plea

3   agreement, has anyone promised you anything in order to

4   get you to plead guilty?

5          DEFENDANT JOSE IRIZARRY:  No, sir.

6          THE COURT:  Mr. Dominguez, as far as you know,

7   have any promises been made to obtain a plea of guilty

8   except for those set out in the plea agreement?

9          MR. DOMINGUEZ:  There are none, Judge.

10          THE COURT:  Is the Government aware of any

11   promises to obtain a plea of guilty except for those set

12   out in the plea agreement?

13          MR. PALAZZO:  No, Your Honor.

14          THE COURT:  And, Ms. Casteneda, have any promises

15   been made -- as far as you know, have any promises been

16   made to obtain a plea of guilty except for those set out

17   in the plea agreement?

18          MS. CASTANEDA:  None that I know of, Your Honor.

19          THE COURT:  And is the Government aware with

20   respect to Mrs. Irizarry of any promises?

21          MR. PALAZZO:  No, Your Honor.

22          THE COURT:  Mr. Irizarry, has anyone approached

23   you or told you to testify other than the truth in

24   answering my questions today?

25          DEFENDANT JOSE IRIZARRY:  No.

1              THE COURT:  Have your answers been the truth?

2              DEFENDANT JOSE IRIZARRY:  Yes.

3              THE COURT:  And, Ms. Irizarry, has anyone coached

4     you or told you to testify other than the truth?

5              MS. NATHALIA GOMEZ-IRIZARRY:  No.

6              THE COURT:  Have your answers been the truth?

7              MS. NATHALIA GOMEZ-IRIZARRY:  Yes.

8              THE COURT:  Mr. Dominguez, have you explained each

9     of these 19 charges to the Defendant?

10             MR. DOMINGUEZ:  Yes, Judge, we have talked about

11    them.

12             THE COURT:  Are you satisfied that he understands

13    them?

14             MR. DOMINGUEZ:  Yes, Your Honor.

15             THE COURT:  Have you had a full opportunity to

16    investigate the law and the facts in this case?

17             MR. DOMINGUEZ:  Yes, we have, Judge.

18             THE COURT:  Do you think you need any more time to

19    do that?

20             MR. DOMINGUEZ:  No, I do not, Judge.

21             THE COURT:  Are you satisfied that the Defendant

22    is pleading guilty freely and voluntarily?

23             MR. DOMINGUEZ:  Yes, I am.

24             THE COURT:  Are you satisfied that he fully

25    understands the consequences of pleading guilty?

1          MR. DOMINGUEZ:  Yes, Your Honor.

2          THE COURT:  Does the Government have anything

3     further you wish me to inquire about concerning

4     Mr. Irizarry?

5          MR. PALAZZO:  No, Your Honor.

6          THE COURT:  Mr. Dominguez, anything you wish to

7     have placed on the record in connection with this matter?

8          MR. DOMINGUEZ:  No, Your Honor.  It's been

9     covered.  Thank you.

10          THE COURT:  And, Ms. Castenada, have you explained

11     the charge in Count One to the Defendant?

12          MS. CASTANEDA:  I have, Your Honor.

13          THE COURT:  Are you satisfied that she understands

14     it?

15          MS. CASTANEDA:  I am.

16          THE COURT:  Have you had a full opportunity to

17     investigate the law and the facts in this case?

18          MS. CASTANEDA:  I have.

19          THE COURT:  Do you think you need any more time to

20     do that?

21          MS. CASTANEDA:  I don't need any additional time.

22          THE COURT:  Are you satisfied that the Defendant

23     is pleading guilty freely and voluntarily?

24          MS. CASTANEDA:  I'm satisfied.

25          THE COURT:  Are you satisfied that she fully

1    understands the consequences of pleading guilty?

2         MS. CASTANEDA:  I am satisfied she understands the

3    consequences of pleading guilty.

4         THE COURT:  Does the Government have anything you

5    wish me to inquire about concerning Mrs. Nathalia

6    Gomez-Irizarry?

7         MR. PALAZZO:  No, Your Honor.

8         THE COURT:  Ms. Casteneda, anything you wish to

9    have placed on the record in connection with this matter?

10        MS. CASTANEDA:  Nothing further, Your Honor.

11   Thank you.

12        THE COURT:  Mr. Irizarry, do you have any

13   questions concerning any of these matters that we have

14   discussed?

15        DEFENDANT JOSE IRIZARRY:  No, sir.

16        THE COURT:  Do you have any questions relating to

17   this case about anything that we have not discussed?

18        DEFENDANT JOSE IRIZARRY:  No, sir.

19        THE COURT:  With the warnings and explanations in

20   mind that I have given, do you still wish to plead guilty

21   to these charges?

22        DEFENDANT JOSE IRIZARRY:  Yes, sir.

23        THE COURT:  I find, Mr. Irizarry, that you are

24   alert and understanding, that you do understand the

25   possible penalties and that you understand the

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1    consequences of pleading guilty.  I find that there's a

2    factual basis for each of the charges and I find that

3    you're pleading guilty freely and voluntarily and

4    knowingly with the advice of a lawyer with whom you say

5    you are satisfied.  Accordingly, I will recommend that the

6    pleas of guilty be accepted.  You have 14 days to object

7    to that recommendation.

8              And, Ms. Irizarry, do you have any questions

9    concerning any of these matters that we have discussed?

10             MS. NATHALIA GOMEZ-IRIZARRY:  No, sir.

11             THE COURT:  Do you have any questions in this case

12    about anything that we have not discussed?

13             MS. NATHALIA GOMEZ-IRIZARRY:  No, sir.

14             THE COURT:  With the warnings and explanations in

15    mind that I have given, do you still wish to plead guilty

16    to the charge in Count One?

17             MS. NATHALIA GOMEZ-IRIZARRY:  Yes, sir.

18             THE COURT:  I find that, Mrs. Irizarry, that you

19    are alert and understanding, that you do understand the

20    nature of the charge, that you understand the possible

21    penalties and that you understand the consequences of

22    pleading guilty.  I find that there's a factual basis for

23    the plea of guilty and I find that you're pleading guilty

24    freely, voluntarily and knowingly with the advice of a

25    lawyer with whom you say you are satisfied.

1          Accordingly, I will recommend that the plea of
2    guilty be accepted, and you have 14 days to object to that
3    recommendation.
4          I do not have a specific sentencing date with
5    respect to these matters.  Ordinarily it takes now about
6    90 days for the probation process to take place and
7    sentencing would normally occur about that time.  Is there
8    any reason to think sentencing might be delayed by other
9    matters?
10         MR. PALAZZO:  No, Your Honor.
11         THE COURT:  Okay.
12         MS. CASTANEDA:  No, Your Honor.
13         MR. DOMINGUEZ:  No, Your Honor.
14         THE COURT:  And what's the status with respect to
15   probation?
16         PROBATION OFFICER:  We are in the process --
17         THE COURT:  What's the status with respect to
18   probation?
19         MS. CASTANEDA:  We are in the process of finishing
20   the financial forms and scheduling our interview which
21   should be done in the next two weeks.
22         THE COURT:  Did they get in touch with you?
23         MS. CASTANEDA:  They did.
24         THE COURT:  And they said it will be a couple
25   weeks?

1           MS. CASTANEDA:  We already figured out a few dates

2      so we won't have the interview for a few weeks but we

3      already have the process started.

4           THE COURT:  Okay.  Mr. Dominguez, what's the

5      status with respect to your client?

6           MR. DOMINGUEZ:  Same thing, Judge.  We're

7      coordinating getting everything done ahead of time and it

8      will probably be a Zoom follow-up meeting interview.

9           THE COURT:  That's too bad.

10          MR. DOMINGUEZ:  But we know the questions.

11          THE COURT:  This was bad enough.  This was really

12     hard duty, but at least it wasn't by Zoom.

13          MR. DOMINGUEZ:  Right.

14          THE COURT:  That would have been terrible.

15          MR. DOMINGUEZ:  Well, yes.

16          THE COURT:  All right.  I had one last week, it

17     was an alien without a plea agreement scheduled to start

18     at 11:00 o'clock.  We finished at 12:30.

19          All right.  Anything further we need to address in

20     this matter?

21          MR. PALAZZO:  Not from the Government.

22          MS. CASTANEDA:  Nothing from us, Your Honor.

23     Thank you.

24          MR. DOMINGUEZ:  Nothing further, Judge.  Thank

25     you.

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1              THE COURT:  All right.  Court will be in recess.

2              MR. PALAZZO:  Thank you.

3     (Proceedings adjourned at 5:05 p.m.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

            UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

```
 1  UNITED STATES DISTRICT COURT  )

 2                                 )

 3  MIDDLE DISTRICT OF FLORIDA     )

 4

 5          I, SHARON A. MILLER, Official Court Reporter for

 6      the United States District Court, Middle District of

 7      Florida, do hereby certify that pursuant to Section 753,

 8      Title 28, United States Code that the foregoing is a true

 9      and correct transcript of the stenographic notes taken by

10      computer-aided transcription taken in the above-entitled

11      cause by the undersigned and that the transcript format is

12      in conformance with the regulations of the Judicial

13      conference of the United States.

14  /S/Sharon A. Miller, CSR, RPR, CRR, FCRR

15  Official Court Reporter

16

17

18

19

20

21

22

23

24

25

    UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION
```