# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

**UNITED STATES OF AMERICA**

    **v.**                              **CASE NO. 8:20-CR-77-CEH**

**JOSE ISMAEL IRIZARRY**

## Government's Sentencing Memorandum

The United States of America, by and through undersigned counsel from the Money Laundering and Asset Recovery Section of the United States Department of Justice Criminal Division, ("the Government") hereby submits this memorandum regarding the sentencing of defendant Jose I. Irizarry ("the Defendant"), currently scheduled for June 3, 2021. The Government's filing includes its responses to the findings of the presentence investigation report (the "PSR") filed on May 27, 2021 (Doc. 94) and to the Defendant's objections, filed on February 1, 2021. Doc. 82.

As further detailed below, and in accordance with the terms of paragraphs five and six of the plea agreement, the Government recommends a final total offense level of 37. Doc. 59 at 6-7. The Government further recommends the Defendant's sentence reflect the low end of the guideline range, include an order for the Defendant to pay restitution to the identity fraud victim, and include an order of forfeiture for the Defendant's interest in the

Tiffany diamond ring and the Lamborghini Huracan Spyder listed in the Indictment. Finally, the Government recommends that the Defendant be remanded into custody immediately following sentencing proceedings.

**A.   Background**

On February 19, 2020, the grand jury returned an Indictment that charged the Defendant and his wife, co-defendant Nathalia Gomez-Irizarry, in count 1 with conspiracy to launder monetary instruments, in violation of 18 U.S.C. § 1956(h). Doc. 1. The Defendant alone was also charged with eighteen additional counts related to the scheme; counts 2 through 5, honest services wire fraud, in violation of 18 U.S.C. §§ 1343 and 1346; count 6, conspiracy to commit bank fraud, in violation of 18 U.S.C. § 1349; counts 7 through 12, bank fraud, in violation of 18 U.S.C. § 1344; count 13, conspiracy, in violation of 18 U.S.C. § 371, counts 14 through 19, aggravated identity theft, in violation of 18 U.S.C. § 1028A. *Id*.

The central allegation of the Indictment was that the Defendant, while employed as special agent with the Drug Enforcement Administration (the "DEA") for a period spanning at least six years, "engaged in a corrupt scheme in which he worked with confidential informants to investigate the money laundering activity of drug trafficking organizations, while at the same time enriching himself by secretly using his position and his special access to

information to divert drug proceeds from DEA control to the control of himself and his co-conspirators." *Id.* at 3.

On September 14, 2020, the Defendant plead guilty before Magistrate Judge Thomas G. Wilson to all counts in the Indictment. Doc. 47. This Court accepted the Defendant's guilty plea on October 2, 2020. Doc. 54. Due to travel restrictions and health concerns related to the Covid-19 pandemic, the Court granted the Defendant's motion to continue sentencing on two occasions. Doc. 70 and 87. The Defendant is now scheduled to be sentenced on June 3, 2021. Doc. 57.

As part of his guilty plea, the Defendant admitted, *inter alia*, that beginning,

> no later than February of 2011, and continuing through at least in or around October of 2017, the Defendant and his co-conspirators engaged in an illegal scheme to misappropriate, launder, and spend at least $9,000,000 in drug proceeds while the Defendant was a special agent with the United States Drug Enforcement Administration (the "DEA"). To carry out the illegal scheme, the Defendant conspired to commit and committed bank fraud, arranged to steal a civilian's identity in relation to the bank fraud charges to open a bank account under false pretenses, and defrauded the DEA and the American public of the Defendant's honest services. As part of the scheme the Defendant received… bribes and kickbacks… including some collected and spent by his wife…

3

Doc. 59 at 25-26.

**B.     Presentence Investigation Report**

The Government has no objections to the findings of the PSR, but for its total offense level calculation of 38. As noted in the PSR, the Government recommends a final total offense level of 37. The difference between offense level calculations is based on different assessments of the Defendant's role in the offense as it relates to USSG § 3B1.1. The United States Probation Office has applied § 3B1.1(b) and recommends that the Defendant's offense level be increased by three levels. Doc. 94 at 19.

The Government's position is outlined in the plea agreement.  Doc. 59. As stated in the plea agreement's factual basis, if this case had gone to trial the Government would have proven beyond a reasonable doubt that the Defendant directed and managed co-defendant Gomez' actions on his behalf to further the money laundering conspiracy. *Id*. at 25-29. While the conspiracy had more members than merely Gomez, the Government was not prepared to prove at trial that the Defendant was the ultimate leader, organizer, manager, or supervisor of the entire conspiracy. Accordingly, the plea agreement reflects the application of USSG § 3B1.1(c) and increases the Defendant's recommended offense level calculation by two levels instead of by three levels as recommended by the PSR. *Id*. at 6.

### C. Defendant's Objection to PSR's Six Level Upwards Adjustment Pursuant to § 2S1.1

In pertinent part, USSG § 2S1.1 currently calls for an increase of six offense levels, "if… the defendant knew or believed that any of the laundered funds were the proceeds of, or were intended to promote (i) an offense involving the manufacture, importation, or distribution of a controlled substance…". USSG § 2S1.1(b)(1). A plain language reading of this provision means there are two ways that a Defendant's conduct can meet § 2S1.1(b)(1)'s application threshold: (1) the Defendant knew or believed that any of the laundered funds were the proceeds of a controlled substance offense; or (2) the Defendant knew or believed that any of the laundered funds were intended to promote a controlled substance offense. The undisputed facts to which the Defendant admitted as part of his guilty plea make clear that both prongs of § 2S1.1(b)(1) are met by the Defendant's criminal conduct, although only one is necessary to apply the six level increase.

Under the first prong of § 2S1.1(b)(1), regarding the Defendant's knowledge or belief that he laundered drug proceeds, the facts are overwhelming. The Defendant was employed as a professional investigator and received specific training on how to identify and interdict drug proceeds. He admitted that to carry out his illegal money laundering scheme, he acted on behalf of, "a co-conspirator known to the DEA as a drug trafficker and money

5

launderer in Colombia" that the Defendant's own DEA group in Miami was investigating. Doc. 59 at 27. The Defendant further admitted to, "[d]irecting drug proceeds picked up during undercover money laundering investigations to be delivered to the Defendant's co-conspirators rather than directly to associates of targeted drug trafficking organizations." *Id*.

As outline in the Indictment, the plea agreement, and discovery provided to the Defendant, when the co-conspirators then showered Irizarry and his co-defendant wife with bribes and kickbacks in the form of cash, expensive gifts, rent-free accommodations, and other free services, there were few people in government better positioned to know that the Defendant was being paid with drug proceeds and that the underlying money he was diverting consisted of drug proceeds.

The Defendant, as is his right under the terms of the plea agreement (Doc. 59 at 7-8), objects to the application of § 2S1.1(b)(1). Doc. 82. He argues it is a legal impossibility that he knew or believed the funds to be drug proceeds because "[t]he nature of the funds had in fact changed when they were deposited in a DEA controlled account. The funds sent were furthermore comingled with other seized or intercepted funds." *Id*. at 4. Extrapolating further, the Defendant argues he was laundering funds that he was "stealing or misappropriating" from government accounts, rather than laundering drug proceeds. *Id*. at 5.

This argument by the Defendant belies the undisputed facts in the plea agreement and is unsupported by law. Furthermore it addresses only one type of laundering activity by the Defendant and ignores the receipt of drug proceeds by the Defendant in the form of bribes and kickbacks that are not traced to a specific undercover money laundering transaction – such as the "$500,000 loan," the "[u]se of a new sport utility vehicle," the "[r]enovations to the Defendant's and Gomez's family home," and "[r]ent-free living accommodations for a friend of the Defendant." Doc. 59 at 26.

There is no caselaw supporting the Defendant's premise that drug proceeds cease to be proceeds once intercepted by law enforcement. The Eleventh Circuit stopped short of finding that it could never be possible, but has found tainted funds to remain tainted in several analogous circumstances. In *United States v. Magluta*, the Court upheld a defendant's money laundering conviction under 18 U.S.C. § 1956(a)(1) and rejected the argument that drug proceeds delivered by a government informant at the direction of the defendant could no longer be drug proceeds based on their being handled by an agent of the government. 418 F.3d 1166, 1175 (11th Cir. 2005) ("It seems to us that laundered money does not become less laundered because the government helped the process along or chose not to stop it.")

In the case at bar, the Government urges the Court to follow the reasoning set out in *United States v. Perez*, 992 F.2d 295 (11th Cir. 1993). In resolving similar litigation of § 2S1.1, the Eleventh Circuit stated,

> In our view, empirical knowledge of a fact based on objective truth does not set the limits for sentence enhancement when the defendant engages in the offense of laundering funds provided through a government 'sting' operation. When a defendant's criminal intent is to launder drug proceeds, the defendant's knowledge is not dependent on establishing the actual source of the funds to overcome what was known by the defendant as a fact when he committed the offense.

*Perez*, 992 F.2d at 297. Here the Defendant is a DEA agent working on undercover money laundering investigations. He admits that funds he illegally diverted to himself and co-conspirators were part of a DEA operation, and that "the goal of the operation was to target, infiltrate, and dismantle drug trafficking and money laundering organizations." Doc. 82 at 3. He further admits that funds he diverted had been "deposited in a DEA controlled account. The funds sent were furthermore comingled with other seized or intercepted funds." *Id*. at 4. This sheds significant light on the Defendant's intent. It proves he had knowledge that the funds in undercover DEA accounts consisted of drug proceeds and that he specifically intended to divert actual intercepted drug proceeds from a place he knew they were kept. This intent to launder drug

proceeds provides an even stronger fact pattern than that of *Perez* and is also consistent with *Magluta*.

Even if the Court credits the Defendant's argument regarding legal impossibility, it only applies to the first prong of § 2S1.1(b)(1). Nothing put forth by the Defendant can disprove that he knew his corrupt laundering activity was aiding drug trafficking organizations and therefor promoted controlled substance offenses. The Defendant admits that a Colombian drug trafficker was a co-conspirator in the illegal scheme. *Id*. The Defendant further admits to, "filing false reports" and to, "omitting, falsely reporting, and mischaracterizing key information to other DEA special agents and supervisors regarding the movement of drug proceeds being investigated." *Id*. at 27 and 28. The Defendant even admits to specific examples of undercover DEA money laundering transactions that took place overseas and in Tampa that he manipulated to, "conceal[] the true nature, location, source, ownership and control of the drug proceeds…". *Id*. at 33. It is difficult to imagine any circumstance where a factfinder in said examples would not also accept that the Defendant knew or believed that his laundering was intended to promote drug trafficking activity.

Accordingly, and despite the Defendant's reference to "[t]he rule of lenity," the Court should apply § 2S1.1(b)(1) to the Defendant's offense level calculation and increase it six levels. Doc. 82 at 6.

### D. Section 3553(a) Factors Warrant a Sentence of at Least 210 Months Plus 24 Months On and After

The undisputed facts to which the Defendant admitted as part of his guilty plea describe serious and calculated crimes. Doc. 59 at 25-29. None of those crimes could have taken place as easily without the Defendant utilizing the special trust bestowed upon him as a DEA special agent to investigate the money laundering activity of drug organizations. As an agent assigned to DEA offices in Miami and Cartagena, Colombia, the Defendant had unique access to drug dollars and was afforded special privileges that he corrupted in order to hide his criminal activity. Notwithstanding his breach of public trust to enrich himself and his friends, the Defendant also harmed an unwitting victim by stealing his/her identity to open a bank account for use in the Defendant's criminal scheme.

The Government does not dispute what is noted in letters to the Court from friends and family (Doc. 92-1), that the Defendant may be a loving father and attentive caretaker to his children. But no personal characteristics of the Defendant or circumstances of his crimes outweigh the need for his sentence to reflect the seriousness of his offenses, to promote respect for the law, and to

provide just punishment and adequate deterrence. *See* 18 U.S.C. § 3553(a)(2). The Eleventh Circuit has stated that "the guidelines [themselves] 'are an indispensable tool in helping courts achieve Congress's mandate to consider the need to avoid unwarranted sentence disparities among similarly situated defendants.'" *United States v. Irey*, 612 F.3d 1160, 1217 (11th Cir. 2010) (quoting *United States v. Hunt*, 459 F.3d 1180, 1185 (11th Cir. 2006)).

Accordingly, no variance or downward departure of any kind is warranted at this time. Instead, the Court should sentence the Defendant with a term of imprisonment no lower than the minimum guideline range, or 210 months, and then add at least 24 months to run consecutively under 18 U.S.C. § 1028A(b)(2)[1] for the aggravated identity theft convictions in Counts 14 through 19.

E. **The Defendant Should Begin His Term of Imprisonment Immediately**

On the morning of May 28, 2021, the Government notified Defendant's counsel that the Government would be seeking immediate remand of the Defendant upon conclusion of sentencing. Defense counsel objected and notified the Government that the Defendant would seek permission from the Court to surrender to the Bureau of Prisons at a later date. In support of the

---

[1] "…no term of imprisonment imposed on a person under this section shall run concurrently with any other term of imprisonment imposed on the person under any other provision of law, including any term of imprisonment imposed for the felony during which the means of identification was transferred, possessed, or used."

11

Defendant's request, counsel forwarded medical records of wife and co-defendant Nathalia Gomez-Irizarry, and represented that she was due for a medical procedure on June 10, 2021.

The Defendant was arrested by federal law enforcement on February 21, 2020, and plead guilty to all charges on September 14, 2020. He has remained out of custody for the entire period. Accordingly, he has had approximately fifteen months to arrange his affairs and make any necessary preparations to be away from his family and his employer. In light of that time, and due to the gravity of his offenses, the Defendant should begin his term of imprisonment at the immediate conclusion of the sentencing hearing.

        Respectfully submitted,

        DEBORAH L. CONNOR
        Chief
        Money Laundering and Asset Recovery Section

By:   /s/ Joseph Palazzo
       Joseph Palazzo, Trial Attorney
       MDFL No. 0669666
       Mark A. Irish, Trial Attorney
       Puerto Rico Bar No. 209107
       U.S. Department of Justice
       1400 New York Avenue, N.W.
       10th Floor
       Washington, D.C. 20005
       (202) 514-1263
       joseph.palazzo@usdoj.gov
       mark.a.irish@usdoj.gov

DATED this 1st day of June, 2021.

## Certificate of Service

      I hereby certify that on the above date, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF filing system, knowing that a copy will be automatically generated and delivered electronically to all counsel of record.

                By: /s/ Joseph Palazzo
                    Joseph Palazzo
                    MDFL Bar No. 0669666