UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                    CASE NO. 8:20-CR-77-CEH

JOSE ISMAEL IRIZARRY

**AMENDED PLEA AGREEMENT**

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by

and through the Money Laundering and Asset Recovery Section of the United

States Department of Justice Criminal Division ("the Government"), and the

defendant, JOSE ISMAEL IRIZARRY, aka Jose Ismael Irizarry Soto (the

"Defendant"), and the attorneys for the Defendant, Maria A. Dominguez-

Victoriano and Carlos A. Perez-Irizarry, mutually agree as follows:

**A.    Particularized Terms**

1.    Counts Pleading To

The Defendant shall enter a plea of guilty to Counts One through

Nineteen of the Indictment.  Count One charges the Defendant with

conspiring to commit money laundering, in violation of 18 U.S.C. § 1956(h).

Counts Two through Five charge the Defendant with honest services wire

fraud, in violation of 18 U.S.C. §§ 1343 and 1346. Count Six charges the

Defendant with conspiring to commit bank fraud, in violation of 18 U.S.C.

Deft.'s initials _I. I_

§ 1349. Counts Seven through Twelve charge the Defendant with bank fraud, in violation of 18 U.S.C. § 1344. Count Thirteen charges the Defendant with conspiring to commit aggravated identity theft, in violation of 18 U.S.C. § 371. Counts Fourteen through Nineteen charge the Defendant with aggravated identity theft, in violation of 18 U.S.C. § 1028A.

2.   Maximum Penalties

Count One carries a maximum sentence of twenty years imprisonment, a fine of not more than $500,000 or twice the value of the monetary instrument or funds involved in the transportation, transmission, or transfer, whichever is greater, and a term of supervised release of not more than three years.

Counts Two through Twelve carry a maximum sentence of thirty years imprisonment, a fine of not more than $1,000,000 and a term of supervised release of not more than five years.

Count Thirteen carries a maximum sentence of five years imprisonment, a fine of not more than $500,000 and a term of supervised release of not more than three years.

Counts Fourteen through Nineteen carry a mandatory sentence of two years imprisonment, which must be imposed to run consecutive to any

Deft.'s initials _J. I_

2

sentence of imprisonment imposed on Counts Six through Twelve, and a term of supervised release of not more than three years.

With respect to certain offenses, the Court shall order the Defendant to make restitution to any victim of the offense, and with respect to other offenses, the Court may order the Defendant to make restitution to any victim of the offense, or to the community, as set forth below.

3.    Elements of the Offense

The Defendant acknowledges understanding the nature and elements of the offense with which the Defendant has been charged and to which Defendant is pleading guilty.

The elements of Count One, charging conspiracy to commit money laundering, are:

One:    two or more people agreed to try to accomplish a common and unlawful plan to violate 18 U.S.C. § 1956; and

Two:    the Defendant knew about the plan's unlawful purpose and voluntarily joined in it.

The elements of Counts Two through Five, charging honest services wire fraud, are:

One:    the Defendant knowingly devised or participated in a scheme to fraudulently deprive the public of the right to honest services of the Defendant through bribery or kickbacks;

Two:    the Defendant did so with an intent to defraud the public

Deft.'s initials _I. T._

of the right to the Defendant's honest services; and,

Three:    the Defendant transmitted or caused to be transmitted by wire, radio, or television some communication in interstate commerce to help carry out the scheme to defraud.

The elements of Count Six, charging conspiracy to commit bank fraud, are:

First:    two or more people agreed to try to accomplish a common and unlawful plan to violate 18 U.S.C. § 1344; and

Two:    the Defendant knew about the plan's unlawful purpose and voluntarily joined in it.

The elements of Counts Seven through Twelve, charging bank fraud, are:

One:    the Defendant knowingly carried out or attempted to carry out a scheme to defraud a financial institution or to get money, assets, or other property from a financial institution by using false or fraudulent pretenses, representations, or promises about a material fact;

Two:    the false or fraudulent pretenses, representations, or promises were material;

Three:    the Defendant intended to defraud the financial institution; and,

Four:    the financial institution was federally insured.

The elements of Count Thirteen, charging conspiracy to defraud the United States, are:

Deft.'s initials _J.J_

4

| One: | two or more persons in some way agreed to try to accomplish a shared and unlawful plan; |
|---|---|

| Two: | the Defendant knew the unlawful purpose of the plan and willfully joined in it; |
|---|---|

| Three: | during the conspiracy, one of the conspirators knowingly engaged in at least one overt act as described in the indictment; and, |
|---|---|

| Four: | the overt act was committed at or about the time alleged and with the purpose of carrying out or accomplishing some object of the conspiracy. |
|---|---|

The elements of Count Fourteen through Nineteen, charging aggravated identity theft, are:

| One: | the Defendant knowingly transferred, possessed, or used another person's name or means of identification; |
|---|---|

| Two: | without lawful authority; and, |
|---|---|

| Three: | during and in relation to bank fraud. |
|---|---|

4.   No Further Charges

If the Court accepts this Plea Agreement, the Government agrees not to charge the Defendant with committing any other federal criminal offenses known to the Government at the time of the execution of this agreement.

5.   Guidelines Sentence

Although the United States Sentencing Guidelines (the "Guidelines") are only advisory and just one factor that the Court will

Deft.'s initials __J. J.__

consider under 18 U.S.C. § 3553(a) in imposing a sentence, the Government

and the Defendant will jointly recommend the following minimum Base

Offense Level, Specific Offense Characteristics, Adjustments and Departures:

    a.  Base Offense Level ("BOL") pursuant to USSG § 2S1.1(a)(2):

        8

    b.  BOL increased under § 2B1.1(J) – amount of laundered funds was over $3.5 million and less than $9.5 million:

        + 18

    c.  Increase under § 2S1.1(b)(2)(C) - the defendant was in the business of laundering funds:

        + 4

    d.  Increase due to role as Organizer under § 3B1.1(c) - the defendant was an organizer, leader, manager or supervisor of criminal activity involving co-Defendant Nathalia Gomez-Irizarry:

        + 2

    e.  Increase due to abuse of public trust under § 3B1.3 - the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense:

        +2

    f.  Decrease for Acceptance of Responsibility under § 3E1.1 – see proceeding Paragraph 7 of this Plea Agreement for further explanation:

        - 3

Deft.'s initials _J. I._

g.  Total adjusted Guidelines offense level:

= 31

The parties understand that such a recommendation is not binding on the Court and that, if it is not accepted by this Court, neither the United States nor the Defendant will be allowed to withdraw from the Plea Agreement, and the Defendant will not be allowed to withdraw his plea of guilty.

6.    <u>Additional Specific Offense Characteristic</u>

In addition to the Base Offense Level, Specific Offense Characteristics, Adjustments, and Departures agreed to by both parties in the previous paragraph, the Defendant understands and expects that the Government will argue at sentencing for an additional 6-level increase under USSG § 2S1.1(b)(1)(i) because the Government's position is that the Defendant knew or believed that any of the laundered funds were the proceeds of, or were intended to promote an offense involving the manufacture, importation, or distribution of a controlled substance or a listed chemical.  The Defendant understands that if the Government's position on USSG § 2S1.1(b)(1)(i) is accepted by the Court, the Defendant's total adjusted Guidelines offense level shall be 37.

7

Deft.'s initials  J. I

The Defendant does not and will not dispute any facts in the Factual Basis section of this Plea Agreement, but reserves the right to argue at sentencing, without introducing new facts, that USSG § 2S1.1(b)(1)(i) does not apply to the calculation of his Guidelines offense level because the Defendant believes it requires a legal impossibility in this case.  Specifically, the Defendant reserves the right to argue at sentencing that drug proceeds interdicted by the DEA during an undercover operation cannot continue to be proceeds, for the purpose of USSG § 2S1.1(b)(1)(i), once they are interdicted. The Defendant believes that his position is supported by United States v. Breque, 964 F.2d 381 (5th Cir. 1992).  The Defendant understands that the Government's position at sentencing will be that Breque does not control the issue and that USSG § 2S1.1(b)(1)(i) indeed applies to the Defendant as a matter of law.

The Defendant understands that Pretrial Services, and/or ultimately the Court, may agree with the Government that USSG § 2S1.1(b)(1)(i) applies and, therefore, may be included in the Defendant's Guidelines calculation by the Court.  The Defendant further understands that the Court may take into account the application of this Guidelines enhancement when determining the Defendant's sentence pursuant to 18 U.S.C. § 3553(a).  In such an event, the parties agree that the Defendant

Deft.'s initials _____

retains his right to appeal the Court's application of USSG § 2S1.1(b)(1)(i) based on the singular issue of legal impossibility regarding the laundering of drug proceeds interdicted by law enforcement.  The Defendant understands and expects that the Government would oppose any such appeal.

Should USSG § 2S1.1(b)(1)(i) ultimately apply to his sentence, including after an unsuccessful appellate challenge, the Defendant understands and agrees that the Defendant will not be allowed to withdraw from the Plea Agreement, nor will the Defendant be allowed to withdraw his plea of guilty.

7.   Acceptance of Responsibility - Three Levels

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the Government will recommend to the Court that the Defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG § 3E1.1(a). The Defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the Defendant will not be allowed to withdraw from the Plea Agreement.

Further, at the time of sentencing, if the Defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the Defendant complies with the provisions of USSG § 3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial

Deft.'s initials _____

9

affidavit referenced in Paragraph B.5, the United States agrees to file a motion pursuant to USSG § 3E1.1(b) for a downward adjustment of one additional level. The Defendant understands that the determination as to whether the Defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the Government, and the Defendant agrees that the Defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

     8.   <u>Cooperation - Substantial Assistance to be Considered</u>

        The Defendant agrees to cooperate fully with the United States in the investigation and prosecution of other persons, and to testify, subject to a prosecution for perjury or making a false statement, fully and truthfully before any federal court proceeding or federal grand jury in connection with the charges in this case and other matters, such cooperation to further include a full and complete disclosure of all relevant information, including production of any and all books, papers, documents, and other objects in Defendant's possession or control, and to be reasonably available for interviews which the United States may require. If the cooperation is completed prior to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policies of the Government, warranting the filing of a motion at the time of sentencing

10

Deft.'s initials _J. J_

recommending (1) a downward departure from the applicable guideline range pursuant to USSG § 5K1.1, or (2) the imposition of a sentence below a statutory minimum, if any, pursuant to 18 U.S.C. § 3553(e), or (3) both.  If the cooperation is completed subsequent to sentencing, the Government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policies of the Government, warranting the filing of a motion for a reduction of sentence within one year of the imposition of sentence pursuant to Fed. R. Crim. P. 35(b).  In any case, the Defendant understands that the determination as to whether "substantial assistance" has been provided or what type of motion related thereto will be filed, if any, rests solely with the Government, and the Defendant agrees that Defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

9.    Use of Information - Section 1B1.8

Pursuant to USSG §1B1.8(a), the United States agrees that no self-incriminating information which the Defendant may provide during the course of Defendant's cooperation and pursuant to this agreement shall be used in determining the applicable sentencing guideline range, subject to the restrictions and limitations set forth in USSG § 1B1.8(b).

Deft.'s initials _____

10.    Cooperation - Responsibilities of Parties

    a.    The Government will make known to the Court and other relevant authorities the nature and extent of the Defendant's cooperation and any other mitigating circumstances indicative of the Defendant's rehabilitative intent by assuming the fundamental civic duty of reporting crime.  However, the Defendant understands that the Government can make no representation that the Court will impose a lesser sentence solely on account of, or in consideration of, such cooperation.

    b.    It is understood that should the Defendant knowingly provide incomplete or untruthful testimony, statements, or information pursuant to this agreement, or should the Defendant falsely implicate or incriminate any person, or should the Defendant fail to voluntarily and unreservedly disclose and provide full, complete, truthful, and honest knowledge, information, and cooperation regarding any of the matters noted herein, the following conditions shall apply:

    (1)    The Defendant may be prosecuted for any perjury or false declarations, if any, committed while testifying pursuant to this agreement, or for obstruction of justice.

    (2)    The United States may prosecute the Defendant for the charges which are to be dismissed pursuant to this agreement, if any, and

12

Deft.'s initials _J. I_

may either seek reinstatement of or refile such charges and prosecute the

Defendant thereon in the event such charges have been dismissed pursuant to

this agreement.  With regard to such charges, if any, which have been

dismissed, the Defendant, being fully aware of the nature of all such charges

now pending in the instant case, and being further aware of Defendant's rights,

as to all felony charges pending in such cases (those offenses punishable by

imprisonment for a term of over one year), to not be held to answer to said

felony charges unless on a presentment or indictment of a grand jury, and

further being aware that all such felony charges in the instant case have

heretofore properly been returned by the indictment of a grand jury, does

hereby agree to reinstatement of such charges by rescission of any order

dismissing them or, alternatively, does hereby waive, in open court,

prosecution by indictment and consents that the United States may proceed by

information instead of by indictment with regard to any felony charges which

may be dismissed in the instant case, pursuant to this plea agreement, and the

Defendant further agrees to waive the statute of limitations and any speedy

trial claims on such charges.

    (3) The United States may prosecute the Defendant for

any offenses set forth herein, if any, the prosecution of which in accordance

with this agreement, the United States agrees to forego, and the Defendant

Deft.'s initials _J. I_

13

agrees to waive the statute of limitations and any speedy trial claims as to any such offenses.

(4)     The Government may use against the Defendant the Defendant's own admissions and statements and the information and books, papers, documents, and objects that the Defendant has furnished in the course of the Defendant's cooperation with the Government.

(5)     The Defendant will not be permitted to withdraw the guilty pleas to those counts to which the Defendant hereby agrees to plead in the instant case but, in that event, the Defendant will be entitled to the sentencing limitations, if any, set forth in this Plea Agreement, with regard to those counts to which the Defendant has pled; or in the alternative, at the option of the United States, the United States may move the Court to declare this entire Plea Agreement null and void.

11.     <u>Forfeiture of Assets</u>

The Defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. § 982(a)(1), whether in the possession or control of the United States, the Defendant or the Defendant's nominees. The assets to be forfeited specifically include, but are not limited to, a judgment in

14

Deft.'s initials  _I I_

the amount that was involved in the offense to which the Defendant is

pleading guilty, as well as:

(a)     One 2017 Lamborghini Huracan Spyder, Vehicle
        Identification Number ZHWUR1ZF7HLA05916; and

(b)     One Tiffany diamond ring purchased on about
        December 6, 2013, and referenced in paragraph 20 of the
        Indictment.

The Defendant acknowledges and agrees that, as a result of the

acts and omissions of the Defendant, other property involved in the offense to

which the Defendant is pleading guilty has been transferred to third parties

and cannot be located by the United States upon the exercise of due diligence.

Therefore, the Defendant agrees that, pursuant to 21 U.S.C. § 853(p), the

United States is entitled to forfeit any other property of the Defendant

(substitute assets), up to the value of the property involved in the offense.  The

Defendant further consents to, and agrees not to oppose, any motion for

substitute assets filed by the United States up to the amount of proceeds

obtained from commission of the offense(s).  The Defendant agrees that

forfeiture of substitute assets as authorized herein shall not be deemed an

alteration of the Defendant's sentence.

The Defendant agrees and consents to the forfeiture of these

assets pursuant to any federal criminal, civil judicial or administrative

forfeiture action.  The Defendant also agrees to waive all constitutional,

Deft.'s initials _____

statutory and procedural challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

If the United States seeks the forfeiture of specific assets pursuant to Rule 32.2(b)(4), the Defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the Defendant at the time it is entered. In the event the forfeiture is omitted from the judgment, the Defendant agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

The Defendant agrees to take all steps necessary to identify and locate all property subject to forfeiture and to transfer custody of such property to the United States before the Defendant's sentencing. To that end, the Defendant agrees to make a full and complete disclosure of all assets over which Defendant exercises control directly or indirectly, including all assets held by nominees, to execute any documents requested by the United States to obtain from any other parties by lawful means any records of assets owned by the Defendant, and to consent to the release of the Defendant's tax returns for

Deft.'s initials  J. I.

the previous ten years. The Defendant further agrees to be interviewed by the Government, prior to and after sentencing, regarding such assets and their connection to criminal conduct. The Defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the Government. The Defendant agrees that Federal Rule of Criminal Procedure 11 and USSG § 1B1.8 will not protect from forfeiture assets disclosed by the Defendant as part of the Defendant's cooperation.

The Defendant agrees to take all steps necessary to assist the Government in obtaining clear title to the forfeitable assets before the Defendant's sentencing. In addition to providing full and complete information about forfeitable assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

Forfeiture of the Defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the Defendant in addition to forfeiture.

The Defendant agrees that, in the event the Court determines that the Defendant has breached this section of the Plea Agreement, the Defendant may be found ineligible for a reduction in the Guidelines

Deft.'s initials _____

calculation for acceptance of responsibility and substantial assistance, and may be eligible for an obstruction of justice enhancement.

The Defendant agrees that the forfeiture provisions of this Plea Agreement are intended to, and will, survive the Defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this agreement shall be determined as if the Defendant had survived, and that determination shall be binding upon Defendant's heirs, successors and assigns until the agreed forfeiture, including any agreed forfeiture amount, is collected in full.

**B.   Standard Terms and Conditions**

   1.   Restitution, Special Assessment and Fine

The Defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, shall order the Defendant to make restitution to any victim of the offenses, pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the Defendant to make restitution to any victim of the offenses, pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged and to which the Defendant is pleading guilty. The Defendant further understands that compliance with any restitution payment plan imposed by the Court in no

Deft.'s initials _ _ _

18

way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (28 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the Defendant's restitution obligation is satisfied.

On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013. The special assessment is due on the date of sentencing.

The Defendant understands that this Plea Agreement imposes no limitation as to fine.

2.    Supervised Release

The Defendant understands that the offense to which the Defendant is pleading provides for imposition of a term of supervised release upon release from imprisonment, and that, if the Defendant should violate the conditions of release, the Defendant would be subject to a further term of imprisonment.

3.    Immigration Consequences of Pleading Guilty

The Defendant has been advised and understands that, upon conviction, a Defendant who is not a United States citizen may be removed

Deft.'s initials _____

from the United States, denied citizenship, and denied admission to the United States in the future.

4.   Sentencing Information

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the Defendant, to provide relevant factual information, including the totality of the Defendant's criminal activities, if any, not limited to the counts to which Defendant pleads, to respond to comments made by the Defendant or Defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

5.   Financial Disclosures

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the Defendant agrees to complete and submit to the Government within 30 days of execution of this agreement an affidavit reflecting the Defendant's financial condition. The Defendant promises that his financial statement and disclosures will be complete, accurate and truthful and will include all assets in which he has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a

Deft.'s initials _____

20

spouse, dependent, nominee or other third party. The Defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the Defendant, directly or through a nominee, and, by the execution of this plea agreement, consents to the release of the Defendant's tax returns for the previous ten years. The Defendant similarly agrees and authorizes the Government to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the Defendant's federal, state, and local tax returns, bank records and any other financial information concerning the Defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court. The Defendant expressly authorizes the Government to obtain current credit reports in order to evaluate the Defendant's ability to satisfy any financial obligation imposed by the Court.

6.    <u>Sentencing Recommendations</u>

It is understood by the parties that the Court is neither a party to, nor bound by, this Plea Agreement. The Court may accept or reject this plea agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office. The Defendant understands and acknowledges that, although the parties are

Deft.'s initials _J.J_

21

permitted to make recommendations and present arguments to the Court, the

sentence will be determined solely by the Court, with the assistance of the

United States Probation Office. The Defendant further understands and

acknowledges that any discussions between Defendant or Defendant's

attorney and the attorney or other agents for the Government regarding any

recommendations by the Government are not binding on the Court and that,

should any recommendations be rejected, the Defendant will not be permitted

to withdraw the Defendant's plea pursuant to this plea agreement. The

Government expressly reserves the right to support and defend any decision

that the Court may make with regard to the Defendant's sentence, whether or

not such decision is consistent with the Government's recommendations

contained herein.

    7.   <u>Defendant's Waiver of Right to Appeal the Sentence</u>

        The Defendant agrees that this Court has jurisdiction and

authority to impose any sentence up to the statutory maximum and expressly

waives the right to appeal Defendant's sentence on any ground, including the

ground that the Court erred in determining the applicable guidelines range

pursuant to the United States Sentencing Guidelines, except (a) the ground

that the sentence exceeds the Defendant's applicable guidelines range <u>as

determined by the Court</u> pursuant to the United States Sentencing Guidelines;

22

Deft.'s initials _____

(b) the ground that the sentence exceeds the statutory maximum penalty; (c) the ground that the sentence violates the Eighth Amendment to the Constitution; or (d) the ground described in Section I, paragraph 6 of the Plea Agreement that USSG § 2S1.1(b)(1)(i) should not apply as a legal impossibility; provided, however, that if the Government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the Defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

8.   Parties to this Agreement

It is further understood that this agreement is limited to the Government and cannot bind other federal, state, or local prosecuting authorities, although the Government will bring the Defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

9.   Filing of Agreement

This agreement shall be presented to the Court, in open court or *in camera*, in whole or in part, upon a showing of good cause, and filed in this case, at the time of the Defendant's entry of a plea of guilty pursuant hereto.

10.   Voluntariness

The Defendant acknowledges that Defendant is intentionally entering into this Plea Agreement and is pleading guilty freely and voluntarily

Deft.'s initials _J.J_

without reliance upon any discussions between the attorney for the Government and the Defendant and Defendant's attorney, and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The Defendant further acknowledges Defendant's understanding of the nature of the offense or offenses to which Defendant is pleading guilty and the elements thereof, including the penalties provided by law, and the Defendant's complete satisfaction with the representation and advice received from Defendant's undersigned counsel. The Defendant also understands that the Defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that Defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against the Defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in Defendant's defense; but, by pleading guilty, the Defendant waives or gives up those rights and there will be no trial.  The Defendant further understands that if the Defendant pleads guilty, the Court may ask the Defendant questions about the offense or offenses to which the Defendant pleaded, and if the Defendant answers those questions under oath, on the record, and in the presence of counsel (if any), the Defendant's answers may later be used against the

Deft.'s initials ____

Defendant in a prosecution for perjury or false statement. The Defendant also understands that Defendant will be adjudicated guilty of the offenses to which the Defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

11.   Factual Basis

The Defendant is pleading guilty because the Defendant is in fact guilty.  The Defendant certifies that the Defendant does hereby admit that the facts set forth below are true, and were this case to go to trial, the United States would prove those specific facts and others beyond a reasonable doubt:

The Defendant filed for Chapter 13 personal bankruptcy reorganization in the United States Bankruptcy Court in Ft. Lauderdale, Florida (the "Bankruptcy Court"), on December 31, 2010.

Soon thereafter, but no later than February of 2011, and continuing through at least in or around October of 2017, the Defendant and his co-conspirators engaged in an illegal scheme to misappropriate, launder, and spend at least $9,000,000 from DEA investigations while the Defendant was a special agent with the DEA. To carry out the illegal scheme, the Defendant conspired to commit and committed bank fraud, arranged to steal a civilian's identity in relation to the bank fraud charges to open a bank account

Deft.'s initials ___

25

under false pretenses, and defrauded the DEA and the American public of the

Defendant's honest services. As part of the scheme the Defendant received the

following bribes and kickbacks on the following approximate dates, including

some collected and spent by his wife and co-Defendant, Nathalia Gomez-

Irizarry ("GOMEZ"),

|     | Approximate Date | Approximate Value & Description |
|-----|------------------|--------------------------------|
| a. | Oct. 27, 2011 | $6,000 check to GOMEZ |
| b. | Oct.-Nov. 2013 | $43,000 in total wire transfers to GOMEZ |
| c. | Mar. 2014 | $2,500 cash payment to a car dealer in Florida for a Land Rover purchased by GOMEZ |
| d. | Jan. 2015 | $500,000 loan advance to the Defendant for the purchase of real estate in Colombia |
| e. | Jan. 21, 2015 | Use of a new sport utility vehicle |
| f. | Feb. 24, 2015 | $9,861 payment to a line of credit held by GOMEZ at a U.S. financial institution |
| g. | Aug. 14, 2015 | $1,000 cash payment to GOMEZ |
| h. | Sometime in 2015 | Television valued at $2700 gifted to the Defendant |
| i. | Throughout 2015 | Renovations to the Defendant's and GOMEZ's family home, including labor and materials |
| j. | Throughout 2015 | Rent-free living accommodations for a friend of the Defendant |
| k. | June 16, 2017 | $7,000 payment to a car dealer in Florida for purchase of a Land Rover by GOMEZ |

In return for the foregoing bribes and kickbacks, and in

furtherance of the illegal scheme, the Defendant took official actions as a DEA

special agent, including the following violations of his lawful duty,

Deft.'s initials _____

a. Filing false reports of investigation with the DEA;

b. Falsely documenting, and causing DEA special agents to falsely document the true nature and source of wire transfer instructions involved in multiple undercover DEA money laundering investigations, including in the investigation of a co-conspirator known to the DEA as a drug trafficker and money launderer in Colombia;

c. Directing cash picked up during undercover money laundering investigations to be delivered to the Defendant's co-conspirators rather than directly to associates of targeted drug trafficking organizations;

d. Concealing his control of certain bank accounts while causing DEA personnel to wire transfer over $200,000 to those accounts under false and fraudulent pretenses;

e. Discouraging DEA special agents and other law enforcement officers from investigating his co-conspirators and criminal associates;

f. Concealing communications and payments between himself and his co-conspirators and criminal associates;

Deft.'s initials  _J. I_

g.  Providing sensitive law enforcement information, without authorization, to criminal associates.

It was further part of the scheme that the Defendant used his position as a DEA special agent secretly to divert funds from government control to the personal control of himself and his co-conspirators without government authorization. Central to the scheme was the Defendant omitting, falsely reporting, and mischaracterizing key information to other DEA special agents and supervisors regarding the movement of funds being investigated. The Defendant's actions enabled the Defendant, GOMEZ, and co-conspirators to use the diverted funds to purchase jewelry, luxury vehicles, a home, and make cash gifts to friends and family.

It was further part of the conspiracy that the Defendant and his co-conspirators took steps to hide the true nature of, and to conceal their participation in, certain financial transactions in the United States and Colombia that otherwise could be traceable to their unlawful activity, including drug distribution. For example, the Defendant and his co-conspirators at times utilized a bank account opened with a stolen identity to receive diverted funds and to subsequently spend or transfer such funds to friends, family, and business associates.

On or about the following dates a co-conspirator assisted the

Defendant and the DEA to pick up the following sums of cash in an undercover capacity:

|   | Approximate date | Approximate amount | Location |
|---|---|---|---|
| a. | February 10, 2011 | $19,000 | New York City |
| b. | February 15, 2011 | $30,860 | New York City |
| c. | February 18, 2011 | $5,000 | New York City |
| d. | June 20, 2011 | $76,820 | New York City |
| e. | August 1, 2011 | $932,400 | Mexico City |
| f. | October 24, 2011 | $400,000 | Houston |

Following each transaction above, the Defendant caused DEA personnel unwittingly to wire transfer a portion of these funds to certain bank accounts that were secretly controlled by the Defendant and his co-conspirators, including through straw account holders that the Defendant misrepresented to DEA personnel as being unknown money laundering targets. At the same time, co-conspirators gave the Defendant and GOMEZ favors, luxury gifts, and personal cash payments. The Defendant failed to report the receipt of these items to the DEA, the Bankruptcy Court, and the IRS. For example,

Deft.'s initials _____

29

a.  on approximately October 27, 2011, the Defendant directed DEA personnel to wire transfer approximately $55,500 of $400,000 picked up in Houston to a bank account controlled by a co-conspirator;

b.  on approximately October 27, 2011, the co-conspirator gave at least $6,000 to GOMEZ via a personal check that was deposited in a bank account controlled by the Defendant and GOMEZ; and

c.  on approximately October 30, 2011, GOMEZ paid $1,500 cash to a car dealership in Miami as a deposit for the purchase of a BMW X5 sport utility vehicle for approximately $66,925.

Between approximately October 17, 2013, and December 4, 2013, a co-conspirator arranged for approximately $1,075,000 in cash to be picked up from drug traffickers in an undercover capacity by the Defendant and the DEA. The Defendant then caused over half of the funds to be wire transferred from DEA accounts to accounts known only to the Defendant as being controlled by a co-conspirator. Similarly, unknown to the DEA except the Defendant, the co-conspirator wire transferred approximately $43,000 of the funds to GOMEZ and the Defendant during the same period.

Beginning in approximately October of 2013, the Defendant and GOMEZ used the $43,000, as well as payments from other co-conspirators, to purchase luxury goods and to pay other co-conspirators, including,

Deft.'s initials ___

a. on approximately December 6, 2013, the Defendant purchased a Tiffany diamond ring for approximately $30,000 in cash at a jewelry store in Bal Harbor, Florida. During the transaction, the Defendant falsely submitted the Social Security number of another person to the jewelry store when he was asked to give his own Social Security number for a government form that the jewelry store was required to file with the IRS and the Financial Crimes Enforcement Network.

b. on approximately December 26, 2013, GOMEZ wire transferred $11,000 to the Miami-based daughter of a corrupt Colombian government official, disguised as a commercial transaction by a Florida shell company held in the name of GOMEZ known as NGI Global Export; and

c. on approximately March 19, 2014, the Defendant and GOMEZ bought a 2014 Land Rover sport utility vehicle in part with cash delivered by GOMEZ, in part with cash delivered to the car dealer by co-conspirators, and in part through a line of credit in GOMEZ's name.

On approximately October 10, 2014, a co-conspirator arranged a DEA undercover pick up of approximately $120,000 in bulk cash from suspected drug traffickers in Atlantic City, New Jersey. The Defendant then

Deft.'s initials _____

directed DEA personnel to wire transfer approximately $116,000 of the proceeds to a bank account known only to the Defendant as being controlled by another co-conspirator. Unreported to the DEA, the Bankruptcy Court, and the IRS, that co-conspirator subsequently paid the Defendant the diverted funds by delivering cash to the Defendant in Colombia.

On approximately January 12 and January 26, 2015, a co-conspirator arranged for the DEA to pick up bulk cash totaling approximately 1 million euros from suspected drug traffickers in the Netherlands that were then transferred to an undercover DEA bank account in the Middle District of Florida, where it was converted into U.S. dollars. From the Middle District of Florida the majority of the funds were disbursed according to directions communicated by the Defendant via interstate telephone calls, emails, texts, and chats, for at least ten wire transfers that took place throughout January and February of 2015, including the following financial transactions:

a. on approximately January 21, 2015, the Defendant caused DEA personnel in Tampa, Florida, to wire transfer $141,641.05 of the currency picked up in the Netherlands to a co-conspirator in Florida;

b. on approximately January 21, 2015, the Defendant and two co-conspirators used the $141,641.05 at a Florida car dealership to purchase a 2015 Land Rover for use by the Defendant and the co-

Deft.'s initials ___J. I___

conspirators;

c. on approximately February 18, 2015, without disclosing

involvement by the co-conspirators, the Defendant caused DEA

personnel in Tampa, Florida, to wire transfer approximately $30,000

of the currency picked up in the Netherlands to a bank account in

Spain on behalf of a co-conspirator based in Colombia;

d. on approximately February 19, 2015, the Defendant caused DEA

personnel in Tampa, Florida, to wire transfer approximately $50,000

of the currency picked up in the Netherlands to a domestic bank

account controlled by a co-conspirator in Florida; and

e. on approximately February 24, 2015, the co-conspirator in Florida

made a $9,861 payment to a line of credit held by GOMEZ for the

aforementioned purchase of a 2014 Land Rover by GOMEZ and the

Defendant.

On approximately February 26 and March 5, 2015, the

Defendant caused DEA agents in Tampa, Florida, to unwittingly file official

investigative reports that contained material falsehoods and omissions, and

concealed the true nature, location, source, ownership, and control of the

funds picked up in the Netherlands. For example, the Defendant knew that

the $30,000 wired to Spain on February 18, 2015, was on behalf of a co-

Deft.'s initials ___J. I___

33

conspirator in Colombia, and the Defendant intentionally withheld that information from DEA colleagues in Tampa, Florida. This willful, material omission caused multiple false reports to be filed at DEA offices in Tampa, Florida, at DEA Headquarters in Alexandria, Virginia, and at the United States Embassy in Madrid, Spain.

On approximately March 19, 2015, the Defendant and his co-conspirators used the name, passport, Social Security number, and forged signature of an individual known herein as Victim 1, to open a bank account in a Federally insured bank in the name of Victim 1 without Victim 1's knowledge or consent. As part of the transaction, the Defendant's email address was falsely provided to the bank as Victim 1's purported contact information.

Beginning on approximately March 27, 2015, Victim 1's account was used by the Defendant and his co-conspirators to steal over $11,000 from Victim 1, as well as to conceal the diversion of funds away from DEA undercover money laundering investigations on at least the following five occasions:

| APPROXIMATE DATE | AMOUNT |
|---|---|
| 03/27/15 | $48,500.00 |
| 05/12/15 | $55,000.00 |
| 03/09/16 | $44,343.00 |
| 04/15/16 | $35,500.00 |
| 08/23/16 | $23,200.00 |

Deft.'s initials _I. I_

34

The diverted DEA funds were used for personal expenses and business pursuits by the Defendant, GOMEZ, and the Defendant's co-conspirators. For example,

a.   the Defendant and his co-conspirators used forged checks to transfer approximately $126,000 of the diverted funds from Victim 1's account to a co-conspirator located in the Middle District of Florida. The co-conspirator then delivered these funds in cash to the Defendant in Colombia; and

b.   the Defendant and his co-conspirators used forged checks to transfer approximately $179,000 from Victim 1's account to another co-conspirator. The co-conspirator then paid these funds to the Defendant at least in part by depositing cash into a bank account belonging to GOMEZ's mother.

Beginning in approximately January of 2015, the Defendant utilized funds diverted from active DEA investigations, including through Victim 1's account, to buy himself and GOMEZ a home in Cartagena, Colombia, for approximately $767,000. As part of the transaction, the Defendant received $500,000 from a co-conspirator in Colombia. The $500,000 was transferred to the Defendant through the delivery of at least 50 cash payments to persons designated by the Defendant, including but not

Deft.'s initials  J.I

35

limited to the following,

|   | Approximate Date | Approximate Value & Description |
|---|---|---|
| a. | Jan. 13, 2015 | $41,000 cash payments to holder of the Defendant's real estate debt |
| b. | Jan. 14, 2015 | $41,000 cash payments to holder of the Defendant's real estate debt |
| c. | Feb. 27-Mar. 2, 2015 | $64,000 cash payments to holder of the Defendant's real estate debt |
| d. | Mar. 9, 2015 | $20,000 cash payments to GOMEZ's mother |
| e. | Mar. 24-25 2015 | $22,000 cash payments to GOMEZ's mother |
| f. | Jun. 4-10, 2015 | $47,000 cash payments to holder of the Defendant's real estate debt |

In approximately June of 2017, the Defendant and GOMEZ purchased a 2017 Land Rover sport utility vehicle for $134,582.48. As part of the transaction, the Defendant received $7,000 from a co-conspirator that was paid directly to the Land Rover dealer on behalf of the Defendant and GOMEZ.

In approximately December of 2017, the Defendant and GOMEZ signed a contract to sell their home in Cartagena, Colombia, and used a portion of the proceeds to purchase a home in Parkland, Florida. As part of the transaction, on or about January 30, 2018, the Defendant and GOMEZ wire transferred $71,000 from an account in Colombia to a bank account in the United States, knowing that the funds were traceable to some unlawful source. The Defendant and GOMEZ subsequently caused at least

Deft.'s initials _J.I_

three additional wire transfers from Colombia to the United States in support of the Parkland home purchase, including a total of $400,925 traceable to some unlawful source.

On approximately August 12, 2019, the Defendant and GOMEZ sold their home in Parkland and transferred at least $366,000 of the proceeds of the sale to a family member of the Defendant.

On approximately December 18, 2019, the Defendant and GOMEZ transferred about $286,000 from the bank account of the Defendant's family member to a mortgage company in Puerto Rico as payment towards the purchase of real property by the Defendant and GOMEZ at 611 Camino Carraizo St., Sabanera Dev., Dorado, Puerto Rico.

12.   Entire Agreement

This Plea Agreement constitutes the entire agreement between the Government and the Defendant with respect to the aforementioned guilty pleas and no other promises, agreements, or representations exist or have been made to the Defendant or the Defendant's attorney with regard to such guilty pleas.

Deft.'s initials ___J. I.___

13.   <u>Certification</u>

The Defendant and the Defendant's counsel certify that this Plea

Agreement has been read in its entirety by (or has been read to) the Defendant

and that the Defendant fully understands its terms.


DATED this ___14th___ day of October, 2021.


                                        DEBORAH L. CONNOR
                                        Chief
                                        Money Laundering and Asset
                                          Recovery Section

                                   By:  _____
_____       Joseph Palazzo, Trial Attorney
Jose Ismael Irizarry                    Mark A. Irish, Trial Attorney
Defendant                               U.S. Department of Justice
                                        1400 New York Avenue, N.W.
                                        10th Floor
_____       Washington, D.C. 20005
Maria A. Dominguez-Victoriano
Carlos A. Perez-Irizarry
Attorneys for Jose Ismael Irizarry

38

Deft.'s initials ___J. I___