UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CASE NO.:  20-CR-77-CEH

UNITED STATES OF AMERICA,

          Plaintiff,

vs.

JOSE ISMAEL IRIZARRY,

          Defendant.

_____/

**DEFENDANT IRIZARRY'S CORRECTED**
**MEMORANDUM IN AID OF SENTENCING**

Defendant, JOSE ISMAEL IRIZARRY ("Mr. Irizarry") respectfully submits this Memorandum in Aid of Sentencing.

On November 13, 2021, a Memorandum in Aid of Sentencing was filed at D.E. 145. Said Memorandum was improperly formatted. Therefore, counsel for Mr. Irizarry is filing this re-formatted memorandum. In all other respects, this Memorandum is the same as filed as per D.E. 145.

Mr. Irizarry pled guilty to Counts One through Nineteen of the Indictment, which charge him with conspiring to commit money laundering, in violation of 18 U.S.C. § 1956(h); honest services wire fraud, in violation of 18 U.S.C. §§ 1343 and 1346; conspiring to commit bank fraud, in violation of 18 U.S.C. § 1349; bank fraud, in violation of 18 U.S.C. § 1344; conspiring to commit aggravated identity theft, in

violation of 18 U.S.C. § 371; and aggravated identity theft, in violation of 18 U.S.C. § 1028A. The Presentence Investigation Report ("PSR") recommends a total offense level of 38. However, in their Amended Plea Agreement, the parties agreed to recommend a total offense level of 31. Both parties reserved the right to argue their respective positions regarding the imposition of a six-level enhancement under USSG § 2S1.1(b)(1)(i) based on the government's assertion that Mr. Irizarry knew or believed that the laundered funds were the proceeds of, or were intended to promote an offense involving the manufacture, importation, or distribution of a controlled substance or a listed chemical.[1] If Mr. Irizarry prevails on this point, his total offense level will be 31, which provides for a sentence of 108 to 135 months of imprisonment for an offender that falls in a Criminal History Category ("CHC") of I. For the reasons articulated below, Mr. Irizarry asks the Court to grant a variance of two levels and impose a sentence of 87 months of imprisonment (level 29), which will yield a total sentence of 108 to135 months, after having added the 24 months which run consecutively pursuant to 18 U.S.C. §1028A(b)(2), which correspond to the aggravated identity theft counts of conviction (Counts 14 –19).   A sentence of 108 months would be sufficient but not greater than necessary to achieve the objectives listed in 18 U.S.C. §3553(b).  This recommendation addresses a potential

---

[1] The inapplicability of this enhancement is discussed more fully in Mr. Irizarry's Objections to the Presentence Investigation Report, which are fully incorporated by reference herein.

sentence imposed pursuant to the USSG and does not limit the rights of the defendant to request a greater decrease in sentence in the event the government files a motion for a reduction in sentence based on substantial assistance under USSG 5K1.1.[2]

## FACTUAL DISCUSSION

Mr. Irizarry's personal history is fairly described in the PSR. He is a man who worked tirelessly to achieve his dream of becoming a federal law enforcement officer and ultimately accomplished this goal. However, greed born of his association with corrupted DEA Agents shattered Mr. Irizarry's vision for his future. He has admitted his transgressions by pleading guilty to the charges leveled against him. However, aside from the conduct giving rise to this case, Mr. Irizarry 's life was entirely devoted to his family and his work as a federal law enforcement officer. Of course, that remained true until he got involved with DEA Agents who initiated him into a surreal existence where Jose was schooled on how to operate outside of the bounds of the law with impunity. Jose accepts full responsibility for the corruption of his moral compass. He has paid a heavy price for his misdeeds. They have destroyed his life and all that he worked for – his career, his family, his dignity, and his good name. Jose is deeply repentant and tortures himself every day questioning his conduct and regretting his lack of moral fortitude. He has not slept

---

[2] USSG §5K1.1 provides, *inter alia*, "[u]pon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines".

more than a scant couple of hours since the inception of this case.   Unable to turn back time and reverse his ill-fated decisions, Mr. Irizarry did the next best thing.  He tried to make amends for his crimes by accepting responsibility for his actions and trying to right some of the wrong that he was responsible for. To this end, he has met with Prosecutors and Agents for endless hours to provide information regarding the criminal activities of others, including fellow law-enforcement agents who initiated him in a life of crime, in an attempt to ameliorate his prior actions as best he can. In short, Mr. Irizarry's actions since his arrest evidence unquestionable remorse and a determination to make amends for his actions and error in judgment in whatever ways are available to him.

## A SENTENCE THAT IS SUFFICIENT, BUT NOT GREATER THAN NECESSARY

Title 18, United States Code, Section §3553(a) contains the factors the Court must apply in devising a reasonable sentence. Importantly, this statute contains "an overarching provision instructing district courts to impose a sentence sufficient, but not greater than necessary to accomplish the goals of sentencing under that provision." *Kimbrough v. United States*, 128 S. Ct. 558, 570 (2007). This so-called "parsimony provision" is not merely one of many factors to weigh at sentencing but places a cap above which the Court is *prohibited* from sentencing-even when a greater sentence is recommended by the sentencing guidelines. *See United States v.*

*Denardi,* 892 F.2d 269, 276-77 (3d Cir. 1989) (Becker, J., concurring in part, dissenting in part). In turn, § 3553(a)(2) provides that a sentence should be sufficient but not greater than necessary to:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

The factors courts must consider when imposing sentence, often referred to as the 3553 factors, are: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for the sentence imposed to afford adequate deterrence; (4) the need to protect the public; (5) the need to provide the defendant with educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) the pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwanted sentencing disparities; and (10) the need to provide restitution to victims. 18 U.S.C. §3553(a) (1)-(7).

"It has been uniform and consistent in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Koon v. United States*, 518 U.S. 81, 113 (1996). In fashioning a reasonable sentence, the Court has considerable discretion to weigh each of the §3553(a) factors. Unless otherwise limited by law, the Court may consider, without limitation, any "information concerning the background, character, and conduct of" the defendant. 18 U.S.C. §3661; U.S.S.G. §1B1.4. The ultimate goal is a reasonable sentence, *United States v. Talley*, 431 F.3d 784, 785 (11thCir. 2005), and one which is no greater than necessary. 18 U.S.C. §3553(a).

While the Court must accurately compute the Sentencing Guidelines range, that advisory range is not necessarily entitled to more weight than other §3553(a) factors. A sentencing court "must not presume that the Guidelines range is reasonable" but instead "must make an individualized assessment based on the facts presented." *Id*. "There are . . . many instances where the Guideline range will not yield a reasonable sentence." *United States v. Hunt*, 459 F.3d 1180, 1185 (11th Cir. 2006); *see also Nelson v. United States*, 555 U.S. 350, 352 (2009) (holding that "the Guidelines are not only *not mandatory* on sentencing courts; they are *not presumed reasonable*") (emphasis in the original). "Our cases do not allow a sentencing court to presume that a sentence within the applicable Guidelines range is reasonable."

*Nelson,* 555 U.S. 350 at 352. It is the sentencing court's duty to "make its own reasonable application of the 3553(a) factors, and to reject the advice of the Guidelines" if after due consideration the result they suggest does not comport with the sentencing court's view of an appropriate sentence. *Kimbrough*, 128 S. Ct at 577 (Scalia concurring).

## THE SECTION 3553(a) FACTORS

The Supreme Court in the case of *Pepper v. United States*, 131 S.Ct. 1229, 1239-40 (2011) wisely stated as follows:

> It has been uniform and constant in the federal judicial tradition for the   sentencing Judge to consider every convicted person as an individual and every case as a    unique study in the human failings that sometimes mitigate, sometimes magnify, the    crime    and punishment to ensue. Underlying this tradition is the principle that **"the punishment should fit the offender and not merely the crime".** (Emphasis added).

### <u>The Nature And Circumstances Of The Offense</u>

The Court is familiar with the nature and circumstances of the offense. However, it is important to note that Mr. Irizarry had never, in all his dealings, engaged in criminal acts prior to the conduct for which he was groomed for the underlying offense. It is also important to note that, to the extent the transfers were fulfilled prior to this case being prosecuted they were completed in pursuit of UC transfers including slush fund transfers. They were real UC transfers, but

unfortunately the DEA permitted this conduct due to its failure to oversee sensitive

operations known as Attorney General Exempted Operations.

## History And Characteristics Of The Defendant

Mr. Irizarry is a 46-year-old man who, until this case, had never been charged

with any crime whatsoever. Everyone speaks very highly of Jose and describes him

as having a heart of gold, devoted to his family; a kind, genuine, hardworking family

man who always aspires to become a better person and distinguish himself as an

excellent son, friend and human being, and who is sincerely and deeply remorseful

for his mistakes.

Prior to this incident, Mr. Irizarry had lived an exemplary, law-abiding life.

Most importantly, defendant Irizarry is also genuinely and sincerely remorseful for

his behavior. He and his family are paying dearly for his behavior, and he struggles

with the responsibility for the pain he has inflicted on his family, including his two

young daughters. His mistake has caused tremendous grief and the remorse is so

immense that it cannot be fully expressed in words. Mr. Irizarry is very much aware

of the stigma he and his family will now face for the rest of his life because a federal

felony conviction will affect and undermine many fundamental things in his life,

including business and financial opportunities. Notwithstanding, he is determined to

rebuild his life and attain once again respect from his family and friends, and

continue to be a kind, loving and hardworking human being.

The PSR reflects defendant's strong family ties. There is no doubt that he has strong family support that will be instrumental during his rehabilitation process and subsequent re-integration into the community. This familial support system strongly supports the imposition of a 108-month sentence. *See U.S. v. Sayad*, 589 F.3d 1110 (10th Cir. 2009) (where defendant convicted of interstate delivery of 11 kilograms of cocaine and guidelines called for 57 months, a sentence of probation is reasonable in part because, unlike in most cases, there is a strong family support which will aid in his rehabilitation); *U.S. v. Wachowiak*, 412 F.Supp.2d 958 (E.D. Wisc., 2006) aff'd 496 F.3d 744 (7th Cir., 2007) (in possession of porn case, where guidelines called for 120-151 months, a below guideline sentence of 70 months imposed in part because "the guidelines failed to account for the strong family support defendant enjoyed, which would aid in his rehabilitation and re-integration into the community is proper. Because defendant's family and friends have not shunned him despite of them learning of his crime, he will likely not feel compelled to remain secretive if tempted to re-offend. Rather, he will seek help and support"); *U.S. v. Smith*, (4th Cir. April 22, 2008) 2008 WL 1816564 (unpub.) (in child porn case where guidelines called for 78-97 months, a sentence of 24 months was not an abuse of discretion where the district court noted among other things, that defendant had "strong family ties.").

**The Need For The Sentence To Reflect The Seriousness Of The Offense, To Promote Respect For The Law, And To Provide Just Punishment**

The offenses of conviction were serious.  However, they were tempered, but by no means excused, by the fact that this was a conduct entrenched in a culture where oversight was lacking and where law enforcement colleagues were flouting the law, thereby desensitizing Jose to the implications of violating the law.

As to this factor, the defendant submits that prolonged incarceration is not necessary to serve the purposes of reflecting the seriousness of the offense, promotion of respect for the law and provision of just punishment for the offense at issue. A 108-month sentence is sufficient punishment to achieve these essential objectives. Mr. Irizarry has accepted full responsibility for his actions, which, as explained above, have affected every aspect of his life. He is a reformed individual who is on a firm path to redemption and a sentence of 108 months certainly "reflects the seriousness of the offense, promotes respect for the law, [and] provides just punishment for the offense." 18 U.S.C. §3553(a).

**The Need To Afford Adequate Deterrence To Others**

The Court should give some, but limited, weight to this sentencing factor. This factor incorporates the concept of general deterrence, or "sending a message" to others that this kind of behavior is unacceptable and will be punished.  In applying this factor, the Court must balance the need to impose a sentence that is severe

enough to deter others with the need to not unduly punish Mr. Irizarry. General deterrence looks to what punishment is necessary to persuade others not to commit similar crimes. It allows for punishment that is disproportionately greater than what is necessary to punish and deter the specific offender. For that reason, if this factor is given too much weight, it can undercut respect for the law by sending the message that the unlucky individual who gets prosecuted will be overly punished whereas the offender who does not get caught will not be punished at all.

Here, we submit that severe institutional incarceration is not necessary to send the appropriate deterrent message to others. Mr. Irizarry will likely lose his livelihood should he be confined to an institution. For these reasons, the Court should give limited weight to this sentencing factor.

## The Need To Protect The Public

This sentencing factor incorporates the concept of direct deterrence, that is, the need to prevent future crimes by Mr. Irizarry. The Court should give this factor no weight. There is every reason to believe that Mr. Irizarry will be a law-biding citizen in the future and really no reason to believe to the contrary.

## The Need To Provide The Defendant With Educational Or Vocational Training Or Medical Care

Mr. Irizarry has a college education is not in need of medical care other than mental counseling and alcohol addiction treatment. Consideration of this factor, given Mr. Irizarry' health issues, supports a non-custodial sentence.

## The Kinds Of Sentences Available

Title 18, United States Code, permits the Court to impose several different kinds of sentences, ranging from probation and home detention to a period of incarceration. As noted in the Presentence Report, Mr. Irizarry does not have the ability to pay a fine. Forfeiture is agreed in this case and he Jose will comply with his forfeiture obligations.

## The Sentencing Guidelines Range And The Pertinent Policy Statements Of The Sentencing Commission

The Sentencing Guidelines are primarily intended to foster uniformity in sentencing but should not be applied as a cookie cutter and without regard to the individual nuances of each case, as highlighted in the §3553 factors discussed above.

Based on the defendant's history and characteristics, there is no doubt that defendant Irizarry is unlikely to re-offend and poses no danger whatsoever to the community. Mr. Irizarry has learned his lesson and is suffering dearly the consequences of his error. His entire family has been devastated, he is financially broken, and is facing a term of imprisonment. All of his prior achievements have vanished because of his wrongdoing. He has truly hit "rock bottom" and is committed to rebuild his life and the respect he once enjoyed from this family and his community. He is a man who is already rehabilitated. In view of this, it is respectfully submitted that punishment in the form of a sentence of severe

imprisonment is not necessary. A downward variance is proper under these circumstances.

The Court is required to accurately compute an advisory Sentencing Guidelines range but may give that range whatever weight the Court deems appropriate.

The Sentencing Commission has recognized that the advisory Guideline range does not reflect an appropriate sentence where the defendant's conduct represented aberrant behavior. *See* U.S.S.G. §5K2.20 (Aberrant Behavior). The Guidelines acknowledge that a downward departure may be appropriate in cases where there was a single criminal occurrence that was committed without significant planning, was of limited duration, and represented a marked deviation by the defendant from an otherwise law-biding life. *Id.* Those factors exist here. Although application of this departure is of no moment in this case owing to the application of a §5G1.1 guideline the Court can, and should, apply the same factors in assessing whether a sentence outside the advisory Guideline range (a so-called "variance") is warranted by application of the §3553 factors.

## The Need To Avoid Unwarranted Sentencing Disparities

Discussing the importance of avoiding sentencing disparities, the U.S. Sentencing Commission has stated that: "Similar treatment for similar offenders is

the hallmark of fair sentencing."[3] Here, however, there is no risk of disparate sentencing, as the parties have agreed to request sentences within the applicable guideline range for the defendant's offenses. Thus, a sentence of 108 months, which is at the low end of Mr. Irizarry's applicable offense level, would not yield any sentencing disparities and is wholly appropriate in light of Mr. Irizarry's offender profile and the 3553 factors.

## The Need To Provide Restitution To Victims

There is no restitution required in this case. The defendant is, however, committed to satisfying his forfeiture obligation.

## Voluntary Surrender is appropriate if the Court Orders Incarceration

Should the Court impose a term of imprisonment, it should permit Mr. Irizarry to voluntarily surrender. The defendant has complied with all of his conditions of pretrial release. Title 18, U.S.C. §1343(a) gives the Court discretion to release a person awaiting execution of sentence if the Court finds by clear and convincing evidence that the person is neither likely to flee nor pose a danger to any person or the community. There is clear and convincing evidence that Mr. Irizarry will neither flee nor pose a danger to the community.

The Court should exercise its discretion to permit Mr. Irizarry to surrender. Being remanded into custody has adverse consequences for a defendant's Bureau of

---

[3]   Available at: https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-projects-andsurveys/miscellaneous/15-year-study/chap3.pdf.

Prisons security level and, therefore, his designation. Bureau of Prisons Program Statement 5100.08 provides for "the subtraction of three points from the Security Point Total … when the judgment indicates the inmate was allowed to voluntarily surrender." Ch. 4, p 5. In other words, the Bureau of Prisons draws  a  positive inference from the Court's determination that the defendant is sufficiently trustworthy to surrender voluntarily. This inference can help a defendant serve a sentence in a lower security facility.

## CONCLUSION

Balancing all of the §3553 factors, a sentence of 108 months is one which is sufficient but not greater than necessary to achieve the goals of federal sentencing.

Defendant therefore respectfully argues that based on his background and specific circumstances of the case, incarceration is not necessary to protect the public. There is frankly no need to "warehouse" this man for a prolonged period of time exceeding 108 months.

**WHEREFORE**, it is respectfully requested that the Court impose a sentence of 108 months and waive any payment of a fine owing to the Defendant's inability to pay.  It is further requested that the Court permit Mr. Irizarry to self-surrender should a period of incarceration be imposed.

It is further requested that should a period of incarceration be imposed, that the Court recommend to the BOP that defendant be designated at a BOP facility in Florida or Alabama.

Respectfully submitted,

Counsel for JOSE ISMAEL IRIZARRY

**DMRA Law LLC**
**Counsel for Defendant**
Sabadell Financial Center
1111 Brickell Avenue
Suite 1550
Miami, Florida 33131
Tel. 305-548-8666

*s/Maria A. Dominguez*
Maria A. Dominguez
Florida Bar No. 0510221
maria.dominguez@dmralaw.com

*/s/Carlos A. Perez-Irizarry*
Carlos A. Perez-Irizarry, P.A.
37 N. Orange Avenue, Suite 500
Orlando, FL 32801
FL Bar No.: 861251
Carlos@capilawpa.com
Tel. No. (407) 210-2400
Counsel for JOSE ISMAEL IRIZARRY

16

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I have electronically filed the foregoing with the Clerk of the

Court by using CM/ECF system and that a true and correct copy of the foregoing Notice was

served on all counsel of record by CM/ECF on this 14th day of November 2021.


/s/Maria A Dominguez

/s/Carlos A. Perez-Irizarry