## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

**UNITED STATES OF AMERICA**,

Plaintiff,

v.

**JOSE ISMAEL IRIZARRY**,

Defendant.

**CRIMINAL CASE NO.**:  20-CR-77-CEH-TGW

## RENEWED OBJECTIONS TO THE PRESENTENCE INVESTIGATION REPORT (CORRECTED FORMAT)[1]

COMES NOW Defendant Jose Ismael Irizarry, through the undersigned counsel, and hereby files his Objections to the Presentence Investigation Report ("PSR", Docket No. 94).  On June 17, 2021, the defendant's prior counsel filed a Response to the Government's sentencing memorandum (D.E. 103).   As legal representatives retained after the commencement of the sentencing hearing, the undersigned counsel submit these objections, to be considered in conjunction with the previously filed motion.

## Paragraph 57 [Proceeds involving the distribution of a controlled substance - USSG 2S1.1(b)(1)]

The defendant objects to the application of this 6-level enhancement. Defense counsel adopts any and all objections and arguments presented by the defendant's

---

[1] On November 13, 2021, counsel submitted this improperly formatted pleading (D.E. 144). This filing is identical but corrected as to the formatting except for this footnote.

previous counsel as to this point, including those which rely on the rule of lenity to argue against the imposition of this enhancement. [2]

In addition, defense counsel presents the following. This adjustment is based on the presumption that "the laundered funds were drug proceeds from a Colombian drug trafficking organization involving cocaine." It is the defendant's position that once the funds were deposited in a DEA controlled account, the funds were the property of the federal government, specifically the DEA. Most notably, they were also comingled with funds from other DEA operations, the source of which were not necessarily drug proceeds. Once these funds were comingled into the DEA's account, the defendant's belief or understanding as to the nature of the funds changed, thus making it impossible for him to engage in the conduct that triggers this enhancement. The defendant's act of moving/diverting the funds is more akin to that of stealing property from the DEA and laundering the funds to conceal the theft.

The government's argument at the defendant's prior sentencing hearing was, in essence, that drug proceeds are always drug proceeds, irrespective of whether they are comingled with legitimate funds. However, that argument is more atone with allegations of simple money laundering. That is not the case here. Here, the language

---

[2] Attached as an Exhibit is the DOJ OIG report on Audit of the Drug Enforcement Administration's Headquarters-Based Oversight of its Supported Foreign Law Enforcement Units issued on August 26, 2021.

of the enhancement makes it a legal impossibility for it to apply in this case. Otherwise, the DEA at large would be guilty of laundering money through its money drop operations. Obviously, that is not the case. This enhancement, thus, is inapplicable to the defendant's conduct.

## Paragraph 61 [Role - USSG 3B1.3]

The defendant objects to the application of a 3-level adjustment for his role in the offense. The defendant and the government, in the plea agreement, agreed that a 2-level adjustment more accurately represents his role in directing his wife (co-defendant). Most importantly, at the defendant's first sentencing hearing, the Court sustained this objection and, in so doing, noted that "the evidence has established by a preponderance of the evidence that indeed the adjustment should be a two-level adjustment for the Defendant's role and not a three-level adjustment." Sentencing Hrg. Transcript at p. 12, lines 12-20.

## Paragraph 143 [18 USC 3553 factors]

Defendant has identified the following factors that should be considered by the Honorable Court in determining an appropriate sentence for the defendant:

1. The nature and circumstances of the offense and the history and characteristics of the defendant - Although the defendant has agreed to the

amount of laundered funds, this amount overrepresent the actual gains of the defendant. To properly illustrate this fact, it is important to provide an example of a typical currency pick-up/transfer to Colombia.

A Confidential Source would advise DEA that he/she was offered $1,000,000.00 (one million dollars) to be picked up in Chicago and that said money, had to be paid in Colombian pesos in Medellin, Colombia. DEA would organize the logistics to conduct the under-cover pick up. Once the U.S. currency was received in Chicago by the Under-cover Agent, the currency is transported to the DEA Field Office for storage and subsequent delivery to the Field's Office under cover bank. Once the currency was deposited, Chicago Agents would wire the entire amount to Miami Group 4's UC account. Once the money was received in the Miami account, the commission was taken, typically, 10% (100,000) and transferred said amount into the DEA Group's UC "expense account." The account was used by the agents to fund operations, travel, entertainment, prostitutes at times, personal expenses and pocket money for themselves. The remaining $900,000.00 would be wired out by DEA to accounts provided by the CS. The wire instructions given to DEA by the CS were known to have nothing to do with the organization that provided the one million dollars. The receiving accounts were unwitting accounts of people that purchased dollars on the black market to pay for goods or services in the United States for export to Colombia. Typically, the CS provided three wire instructions, in the amount of $420,000 to "Electronic" in Bank 1, $400,000 for "Trading" in Bank 2, and $60,000 for "Construction" at Bank 3. After these wires were sent to the respective accounts, and confirmation of funds was received by the CS, the CS would then organize the receipt of Colombian currency at the negotiated exchange rate in Colombia. The CS would then deliver the Colombian currency to the person that caused the delivery of U.S.

currency in Chicago, thus completing the Black Market
Peso transaction.

In essence the above scenario was the scheme used every time DEA picked up U.S. currency and needed it repatriated to Colombia as part of an under-cover operation. The defendant should not be held accountable for the entire amount, as the example above shows that DEA always took a commission. The defendant has acknowledged that he, along with other Agents used the money DEA kept as a "commission payment" improperly and illegally. However, DEA picked up the money on the street, put the money into the banking system, and then wired it out at the direction of a CS willfully ignoring the CS activities in transferring the money to the unwitting accounts and further allowing the CS to keep his/her commission in each step of the operation.

2. <u>Mental health and substance abuse</u> - In 2005, while working as a federal law enforcement officer, the defendant was involved in a fatal shooting in the line of duty. The defendant did not address this trauma with counseling and instead self-medicated with alcohol. In 2013, the defendant endured another traumatic event when a close friend and fellow agent was killed in Colombia. The defendant continued to abuse alcohol throughout the commission of the offense which clearly affected his judgment.

3. <u>This criminal activity ended almost four years ago</u>. Since his arrest, the defendant has remained compliant with his pretrial release conditions, has remained a law-abiding citizen, and is extremely remorseful for his actions as evidenced by his letter to the Court. This is reflected in his commitment to fully cooperating with law enforcement in an effort to further investigations into the type of conduct that he is accepting responsibility for today.

4. <u>The need for the sentence imposed</u> - The defendant served as a federal law enforcement officer for nearly 18 years. His previously unblemished career should fairly be considered in defining the person that he is today.  The defendant's conviction alone provides significant punishment and deterrence, as it has cost him his career, his family, and his good name. The defendant has forever lost his career as a federal law enforcement officer as a result of this offense. Mr. Irizarry is not a danger to the community. He has remained law-abiding since his arrest and is employed full-time and has worked tirelessly to rebuild his life.

## FACTORS THAT MAY WARRANT A SENTENCE OUTSIDE OF THE ADVISORY GUIDELINE SYSTEM

**Paragraph 144** The probation office has reviewed the applicable statute, 18 U.S.C. § 553(a)(1)-(7) and has not identified any factors that may warrant a sentence outside the advisory guideline system.

The defendant objects to the Probation's Office conclusion as there are factors pursuant to 18 U.S.C. 3553, as discussed herein, as well as in the Defendant's memorandum in Aid of Sentencing, filed under separate cover, that identify and discuss those factors that that indeed warrant a downward variance.

**WHEREFORE**, Defendant Jose Ismael Irizarry respectfully requests the Court take notice of his objections to the PSR and order the report be amended accordingly.

**RESPECTFULLY SUBMITTED**.

Counsel for JOSE ISMAEL IRIZARRY

**DMRA Law LLC**
**Counsel for Defendant**
Sabadell Financial Center
1111 Brickell Avenue
Suite 1550
Miami, Florida 33131
Tel. 305-548-8666

*s/Maria A. Dominguez*
Maria A. Dominguez
Florida Bar No. 0510221
maria.dominguez@dmralaw.com

*/s/Carlos A. Perez-Irizarry*
Carlos A. Perez-Irizarry, P.A.
37 N. Orange Avenue, Suite 500
Orlando, FL 32801
FL Bar No.: 861251
Carlos@capilawpa.com
Tel. No. (407) 210-2400
Counsel for JOSE ISMAEL IRIZARRY

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I have electronically filed the foregoing with the Clerk of the Court by using CM/ECF system and that a true and correct copy of the foregoing Notice was served on all counsel of record by CM/ECF on this 16th day of November 2021.

_s/Maria A. Dominguez_

s/_Carlos A. Perez-Irizarry_