1
2
3

UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
-   -   -

4
5

HONORABLE CHARLENE EDWARDS HONEYWELL
UNITED STATES DISTRICT JUDGE PRESIDING

6   UNITED STATES OF AMERICA,              )
                                           )
7                   PLAINTIFF,             )
                                           )
8                   VS.                    )8:20-cr-77-CEH-TGW
                                           )
9   JOSE ISMAEL IRIZARRY,                  )
                                           )
10                                         )
                    DEFENDANT.             )
11  _____   )

12
13
14

**SENTENCING HEARING (redacted)**
REPORTER'S TRANSCRIPT OF PROCEEDINGS
DECEMBER 9, 2021
TAMPA, FLORIDA

15
16
17
18
19

20  SHARON A. MILLER, CSR, RPR, CRR, FCRR
    IL CSR 084-2617
21  FEDERAL OFFICIAL COURT REPORTER
    801 N. FLORIDA AVENUE, SUITE 13A
22  TAMPA, FLORIDA 33602

23  Proceeding recorded by stenography,
    transcript produced by computer-aided transcription
24

25

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

```
 1   APPEARANCES OF COUNSEL:

 2   ON BEHALF OF PLAINTIFF:

 3            UNITED STATES DEPARTMENT OF JUSTICE
              CRIMINAL DIVISION
 4            BY:  MR. JOSEPH PALAZZO
                   MR. MARK A. IRISH
 5            1400 New York Avenue, Suite 10302
              Washington, DC  20001
 6            (202)445-7910
              joseph.palazoo@usdoj.gov
 7

 8   ON BEHALF OF DEFENDANT:

 9            MR. CARLOS A. PEREZ-IRIZARRY, ESQ.
              37 N. Orange Avenue,Suite 500
10            Orlando, Florida 32801
              (407-210-2400
11            Carlos@capilawpa.com

12

13            DMRA LAW LLC
              BY:  MS. MARIA A. DOMINGUEZ
14            1111 Brickell Avenue,Suite 1550
              Miami, FL 33131
15            (305)934-5209
              maria.dominguez@dmralaw.com
16

17

18

19

20

21

22

23

24

25

     UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION
```

```
 1   (Court in session at 2:03 p.m.)
 2              THE COURT:  All right.  Good afternoon.
 3              MR. PALAZZO:  Good afternoon, Your Honor.
 4              THE COURT:  We are here in the matter of United
 5   States of America versus Jose Ismael Irizarry, case
 6   8:20-cr-77.  Counsel, please identify yourselves for the
 7   Court starting first with Counsel for the United States.
 8              MR. PALAZZO:  Your Honor, my name is Joseph Palazzo.
 9   I represent the United States.
10              MR. IRISH:  Good afternoon, Your Honor.  Mark Irish.
11   I represent the United States as well.
12              MR. PALAZZO:  With us at Counsel table is Devon
13   Williams from the FBI.
14              THE COURT:  All right.  Thank you.  And Counsel for
15   the Defendant?
16              MS. DOMINGUEZ:  Yes.  Good afternoon, Your Honor.
17   My name is Maria Dominguez.  I represent the Defendant, Jose
18   Ismael Irizarry, and also my co-Counsel.
19              MR. PEREZ-IRIZARRY:  Good afternoon.  Carlos A.
20   Perez-Irizarry for the Defendant Jose Ismael Irizarry.
21              THE COURT:  Okay.  Thank you.  And we are here for
22   sentencing.  Give me just a moment to pull up the docket
23   here in the courtroom.
24              All right.  We actually began the sentencing hearing
25   several months ago, however, in light of the fact that an
```

1       amended plea agreement was filed on October 14th, 2021 at

2       Docket 130 and a report and recommendation was issued by the

3       Magistrate Judge with regard to the amended plea agreement,

4       I am going to start this sentencing as if we had not already

5       began.  And that's particularly important because the

6       Defendant does now have a new counsel.

7              Mr. Irizarry, on September 14th, 2020, you entered a

8       plea of guilty to Counts One through Nineteen of an

9       indictment.  The indictment charges you in Count One with

10      conspiracy to commit money laundering in violation of Title

11      18, United States Code, Section 1956(h).

12             Counts Two through Five charge you with honest

13      services wire fraud which is a violation of Title 18, United

14      States Code, Section 1343 and 1346.

15             Count Six charges you with conspiracy to commit bank

16      fraud which is a violation of Title 18, United States Code,

17      Section 1349.

18             Count Seven through Twelve charge you with bank

19      fraud in violation of Title 18, United States Code, Section

20      1344.

21             Count Thirteen charges you with conspiracy to commit

22      aggravated identity theft in violation of Title 18, United

23      States Code, and Section 371.

24             And Counts Fourteen through Nineteen charge you with

25      aggravated identity theft in violation of Title 18, United

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1  States Code, Section 1028A.

2          The Court has previously accepted your guilty plea

3  and adjudicated you guilty of these offenses.  Before I

4  proceed to sentencing, I'm going to ask you some questions.

5  I'm going to ask questions of your Counsel, questions of

6  Counsel for the United States.  I'm going to hear argument

7  so I'm now going to ask the clerk to place you under oath.

8  (Defendant sworn.)

9          THE DEFENDANT:  Yes.

10          COURTROOM DEPUTY CLERK:  Please state your name for

11  the record and spell your last name for the record.

12          THE DEFENDANT:  Jose Irizarry, I-R-I-Z-A, double

13  R-Y.

14          COURTROOM DEPUTY CLERK:  Thank you.  Be seated.

15          THE COURT:  Mr. Irizarry, have you had an

16  opportunity, sir, to review the amended final presentence

17  investigation report in this case with your attorney?

18          THE DEFENDANT:  Yes, Your Honor.

19          THE COURT:  Do you have any questions of me

20  regarding that report?

21          THE DEFENDANT:  No, Your Honor.

22          THE COURT:  That report contains a lot of factual

23  information designed to aid the Court in imposing a sentence

24  that is sufficient but not greater than necessary to comply

25  with the statutory purposes of sentencing.

1          Other than any objections that your attorneys have

2     already raised on your behalf, do you wish to make any

3     objections as to the facts contained in that presentence

4     investigation report?

5          THE DEFENDANT:  No, Your Honor.

6          THE COURT:  The report also contains a calculation

7     of the advisory sentencing guidelines.  Other than any

8     objections that your attorneys have filed on your behalf, do

9     you wish to make objections to the calculation of the

10    guidelines which was performed by the probation department?

11         THE DEFENDANT:  No, Your Honor.

12         THE COURT:  All right.  Thank you.  Ms. Dominguez or

13    Mr. Perez-Irizarry, do you all have any -- have you had an

14    opportunity to review and discuss the presentence

15    investigation report with your client?

16         MS. DOMINGUEZ:  Yes, Your Honor, we have.

17         THE COURT:  And do you have any objections as to the

18    facts contained in the report?

19         MS. DOMINGUEZ:  No, Your Honor.  The only objections

20    that we have are those that have been filed formally with

21    the Court.

22         THE COURT:  Okay.  And that goes to the calculation

23    of the guidelines?

24         MS. DOMINGUEZ:  Yes, Your Honor.

25         THE COURT:  So my next question is:  Do you have any

1   objections as to the calculation of the guidelines?  And if
2   so, you may come to the lectern and make your argument now
3   with regard to that calculation.
4           MS. DOMINGUEZ:  May I inquire that I keep the mask
5   on?  Is the Court able to hear me clearly?
6           THE COURT:  I am as long as you speak into the
7   microphone.
8           MS. DOMINGUEZ:  Thank you, Your Honor.
9           Your Honor, as preserved in objections that have
10  been filed with this Court, specifically objections with PSR
11  at Docket Entry 82, on February 1st, 2021, response to the
12  Government's sentencing memo at Doc. Entry 103 filed on
13  June 17th, 2021, and the renewed objections to the PSR at
14  docket entry 144 filed November 13th, 2021, we do advise the
15  Court that we have an objection to the specific offense
16  characteristics that have been added in the presentence
17  report, specifically at Paragraph 57, Page 18.  That is the
18  six level enhancement that was applied pursuant to the
19  United States Sentencing Guideline 2S1.1(b)(1), and I am
20  prepared to supplement the arguments that have been filed if
21  the Court wishes me to do that at this time.
22          THE COURT:  You may do so.
23          MS. DOMINGUEZ:  Thank you, Your Honor.  This issue
24  has been fully briefed by us, and I will avoid the need to
25  be repetitious, Your Honor.  I know that the Court has

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1    carefully considered the pleadings filed by all those

2    parties in this case and is well familiar with the legal

3    arguments that have been advanced by both parties.

4         There are some points, however, that I believe are

5    worthy of mention.  Number one, there appears to be no case

6    directly on point that involved the particular scenario that

7    is involved in this case.

8         Number two, the Government has the burden of

9    persuasion that this enhancement applies to Mr. Irizarry.

10        Number three, the funds at issue came from a DEA

11   account which was set up to conduct money transfers.

12        Number four, the Government has alleged that drug

13   proceeds always retain their character as drug proceeds, but

14   we suggest respectfully to this Honorable Court that once

15   funds become the property of the DEA in the DEA account and

16   in essence belong to the Federal Government, the use of that

17   money, the source of which has not been fully examined in

18   this case by one with knowledge that the money belonged to

19   the Government and is under Government control necessarily

20   changes the characteristic of those funds.

21        And I say that, Judge, differentiating this scenario

22   from other cases including cases cited by the Government in

23   their sentencing memorandum where the facts suggest a sting

24   operation where the party involved in the operation is not

25   aware, the target is not aware that the funds are under

1        government control.

2               Even if we were to assume arguendo, Your Honor, that

3        the money in that account was drug proceeds at one time, and

4        an assumption that we suggest has not been proven, once the

5        funds becomes the property of the Government, they are no

6        longer drug proceeds.

7               And to simplify the issue, Your Honor, I'd like to

8        just suggest a simple scenario where drug moneys that are

9        forfeited or seized by the Government as a matter of course

10       do not maintain their realistic character in the hands of a

11       law enforcement agent or the Government.

12              When those funds are spent by the Government,

13       clearly it is not engaging in money laundering of drug

14       proceeds.  The Government employee who uses those funds

15       without authority or embezzles those funds would not be

16       charged with money laundering of drug proceeds or with

17       embezzlement or theft of Government funds.

18              Mr. Irizarry had both the belief and the knowledge

19       that the funds at issue were Government proceeds that were

20       in a DEA account controlled by the Government and owned by

21       the Government at that time; in other words, the DEA has

22       absolute control over those funds and, in fact, had a lot of

23       discretionary authority as to how those funds were spent.

24              In addition to that, your Honor, in this case, the

25       Court is aware that there -- that our clients have accepted

1    the fact that he also received money from CS, and as to that

2    issue, which has again been argued before this Court in the

3    prior sentencing hearing and, in fact, I believe this Court

4    entertained testimony from the Defendant regarding that

5    issue respectfully suggest that the Government has failed to

6    prove that that individual was a narcotic trafficker and

7    that therefore those funds were the proceeds of narcotic

8    activity.

9         Unless the Court has any questions, I will conclude

10   my argument.

11        THE COURT:  Let me ask you, you are looking at the

12   specific offense characteristics which is Paragraph 58 and

13   the six level enhancement based upon the United States

14   Sentencing Guidelines, Section 2S1.1(b)(1) of which there

15   are two components.

16        MS. DOMINGUEZ:  Yes, Your Honor.

17        THE COURT:  One being that the Defendant knew or

18   believed that any of the laundered funds were the proceeds

19   of a controlled substance offense which is argued, and two

20   being the Defendant knew or believed that any of the

21   laundered funds were intended to promote a controlled

22   substance offense.  What is your argument with regard to

23   Subsection 2?

24        MS. DOMINGUEZ:  Your Honor, I will directly address

25   that point by invitation.  May I suggest to the Court that

1    the Government has not proven the origin of the money in

2    that account?  As the Court is well aware from filings that

3    have been made in connection with the sentencing, the money

4    in that account related to its use, the agency's use of

5    confidential sources for purposes of making money transfers,

6    and the moneys were basically sold as part of a black money

7    market scenario, and the transfer of those moneys and those

8    money transfer transactions by CSs tasked with that role by

9    the DEA created commissions that were charged to the person

10   that was requesting the money transfer.

11        In other words, the CSs were providing their

12   services to that person that wanted to move money.  That

13   transfer created commissions that were charged by the CS,

14   and those commissions were used in a very discretionary way,

15   we would suggest for purposes that were not directly

16   attributed to clear law enforcement objectives as we have

17   argued in sealed pleadings that have been filed before the

18   Court.

19        And, Your Honor, I don't believe that in this case

20   there has been any evidence presented to prove the origin of

21   those moneys, in other words, the person that contracted

22   with the DEA CSs to move the money, and it is not axiomatic

23   that those moneys were from illegal sources, much less drug

24   proceeds, and so with the evidence before the Court, I do

25   believe that that prong of the enhancement also fails.

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1          THE COURT:  What about the Defendant's receipt of

2     drug proceeds in the form of bribes and kickbacks that are

3     not necessarily traced to a specific undercover money

4     laundering transaction?

5          MS. DOMINGUEZ:  Correct, Your Honor.  And that is

6     specifically the money received from the individuals that

7     was the cooperating source, that the Court is aware of his

8     name from sealed pleadings that we have filed, and there was

9     testimony presented from my client and also argument by the

10    Defendant's former lawyer that that individual was not a

11    drug trafficker.

12         In fact, I can represent to the Court that the

13    Government has possession of information that suggests that

14    the authorization for that operation involving that CS

15    relied on a lot of false information that was created to

16    justify the operation.

17         Again, I do not believe that there is any evidence

18    that that individual, that CS that paid our clients the

19    bribe is a drug trafficker.  He was operating outside the

20    bounds of the law but he was a smuggler.  He was not

21    involved in the drug trafficking trade.

22         THE COURT:  Does the factual basis for the PSI

23    contradict that?

24         MS. DOMINGUEZ:  Well, Your Honor, I believe that

25    there is a suggestion that our client engaged in the receipt

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1    of drug proceeds.  That is an issue that we have globally

2    intended to preserve by virtue of our objection to that

3    enhancement.

4         THE COURT:  Okay.  Thank you.  I think co-Counsel

5    has something for you.  Actually only one person gets to

6    make the argument.

7         MS. DOMINGUEZ:  Counsel is bringing to my attention

8    quite correctly that the plea agreement has removed from the

9    verse in facts "drug proceeds" --

10        THE COURT:  All right.  Thank you.

11        MS. DOMINGUEZ:  -- from the factual basis.

12        THE COURT:  And the other objection I think was with

13   regard to the role in the offense.  I think there's an

14   agreement reached in the plea agreement and with the United

15   States that in this case the role enhancement should be two

16   levels rather than three; is that right?

17        MS. DOMINGUEZ:  That's my understanding, Your Honor.

18        MR. PALAZZO:  Yes, Your Honor.

19        MS. DOMINGUEZ:  And I believe Your Honor ruled on

20   that particular issue during the first sentencing hearing.

21        THE COURT:  I did.  It's Paragraph 62 at Doc. 134,

22   the adjustment for role in the offense, probation scored it

23   at a level three.  I did at the prior sentencing hearing

24   determine based upon the arguments and the facts before the

25   Court that indeed a two level enhancement was more

 1    appropriate, and so I just reiterate that finding for

 2    purposes of this hearing given the argument that's

 3    previously been made by the parties, and the evidence before

 4    the Court reflects that indeed only a two level adjustment

 5    for role is appropriate, and that's Paragraph 62, so that

 6    objection is sustained.

 7            MS. DOMINGUEZ:  Thank you, Your Honor.

 8            THE COURT:  All right.  Thank you.  Mr. Palazzo,

 9    have you had an opportunity to review and discuss -- to

10    review the presentence report?

11            MR. PALAZZO:  Yes, I have, Your Honor.

12            THE COURT:  Do you have any objections as to the

13    facts contained in the report?

14            MR. PALAZZO:  As to the facts, no, Your Honor.

15            THE COURT:  Do you wish to make any objections as to

16    the probation officer's application of the guidelines other

17    than the one that I just discussed at Paragraph 62 which is

18    the adjustment for role in the offense?

19            MR. PALAZZO:  No, Your Honor, but I would like to

20    address the argument made by defense regarding Paragraph 58.

21            THE COURT:  You may now come to the lectern and

22    respond to the Defendant's objection with regard to the six

23    level enhancement at Paragraph 58.

24            MR. PALAZZO:  Thank you, Your Honor.  The

25    Government's position is the six point enhancement in

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1    2S1.1(b)(1) should, in fact, be enforced because the

2    Defendant -- the evidence before the Court allows for it to

3    be enforced in two ways.

4           THE COURT:  Make sure you speak into the microphone

5    so that we can hear you.  You can raise the lectern, if

6    you'd like, the lectern itself.

7           MR. PALAZZO:  Oh, thank you, Your Honor.  Is that

8    better?

9           THE COURT:  Yes.

10          MR. PALAZZO:  I apologize.  As the Court has already

11   pointed out, there are two avenues for the enhancement to be

12   applied.  One, if the Defendant knew or believed that any of

13   the laundered funds were the proceeds of an offense

14   involving the manufacture, importation or distribution of a

15   controlled substance.  And, in fact, you've heard a lot

16   about that today already, and the legal argument by defense

17   failed.

18          They are correct in that there doesn't seem to be a

19   case precisely on point.  This is a unique Defendant.  This

20   is a unique set of counts and circumstances; however, in the

21   Government's papers we did go to the Eleventh Circuit and to

22   the Magluta case because it basically does seem like the

23   closest as we're going to get.

24          In there, yes, it was a sting case, but it should be

25   applied here or at least guide the Court here because the

1    crux of the matter really had to do, again, with what

2    happened to funds that are contraband once the Government

3    touches them, takes possession of them, somehow intervenes

4    in the transaction.

5            And in an undercover sting, the case in Magluta, the

6    Court didn't rule out that it was ever possible, but said,

7    quote, "it seems to us that laundered money does not become

8    less laundered because the Government helped the process

9    along or chose not to stop it."  I think that's very

10   applicable here.  We have an agent of the DEA who certainly

11   helped move the transaction along.

12           I'd also like to point out to the Court that there's

13   another avenue that it can reach the enhancement, and that

14   is the other prong which allows for its application when the

15   laundered funds were intended to promote an offense

16   involving the manufacturer, importation or distribution of a

17   controlled substance offense.

18           As a threshold matter, and this is also in somewhat

19   direct contradiction to Defense Counsel's presentation

20   today, but as a threshold matter, I'd like the Court to

21   consider exactly who the co-conspirators of the Defendant

22   were.  And I point to the facts in the plea agreement --

23           THE COURT:  Let me just pull those up.  I'm looking

24   at the amended plea agreement at Doc. 130.

25           MR. PALAZZO:  Yes, Your Honor.  The facts that the

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1   Defendant admits to is that his co-conspirators, pleural,

2   were involved in drug distribution.  On Page 27, Paragraph B

3   and I quote, "The defendant falsely documented the true

4   nature and source of wire instructions including

5   investigation of a co-conspirator known to the DEA as a drug

6   trafficker."

7       The following page on 28, the last full paragraph,

8   "the defendant and his co-conspirators," pleural, "took

9   steps to hide the true nature and to conceal their

10  participation in certain financial transactions in the

11  United States and Colombia that otherwise could be traceable

12  to their unlawful activities, including drug distribution."

13      Now, besides those direct references to his

14  co-conspirators, pleural, being associated with drug

15  trafficking, I would like to just remind the Court of a

16  recent, in fact this summer, the Eleventh Circuit in United

17  States versus Mathews reaffirmed the District Court's

18  ability to make reasonable inferences from the evidence at

19  sentencing.  And in Mathews, they cited another Eleventh

20  Circuit court case, United States versus Philidor,

21  P-H-I-L-I-D-O-R, from 2013 and emphasized that at sentencing

22  a District Court can make inferences based on common sense

23  and ordinary human experience.

24      And so as we go through some of the other facts in

25  the plea agreement that are before the Court today, I ask

1    the Court to make a reasonable inference that, again,

2    co-conspirators of the Defendant were associated with drug

3    trafficking.

4            On Page 30, for example, we get an example of just

5    how the co-conspirator's scheme worked.  And there are many

6    other examples after this case.  But right here, the last

7    full paragraph, between approximately October 17th, 2013 and

8    December 4th, 2013, a co-conspirator arranged for

9    approximately $1,000,000 in cash to be picked up from drug

10   traffickers in an undercover capacity by the Defendant and

11   the DEA.  Then the facts go on to talk about what happened

12   to those funds.

13           And before we move on to what happened to those

14   funds, I'd just like to point out what this fact pattern

15   means.  A co-conspirator arranged for the pickup of drug

16   dollars for drug traffickers.  That co-conspirator by his

17   very nature or her very nature is associated with the drug

18   organization.  That's the very reason that the

19   co-conspirator is a confidential source of information for

20   the DEA.  The very fact that the co-conspirator has access

21   to drug organizations and markets the rest of the conspiracy

22   and is able to corrupt the DEA's attempts at interdiction is

23   because of the very nature of who the co-conspirator is and

24   who his relationships are.  If he didn't have the ability to

25   arrange pickups for the DEA by his relationship with drug

 1    organizations, then he wouldn't be a source for the DEA.

 2         And I implore the Court to use -- to make the

 3    reasonable inference here that not just on page 27 and 28

 4    where there was a direct admission about his co-conspirators

 5    being part of drug trafficking, but the other at least five

 6    or six other examples throughout the fact pattern where a

 7    co-conspirator arranged for an undercover pickup is even

 8    more proof that the Defendant was well aware that the money

 9    he was handling was, in fact, derivative of drug proceeds.

10    Not only was it derivative of drug proceeds but, Your Honor,

11    later in the conspiracy when the funds are then diverted

12    from DEA hands back to the co-conspirators, again, we have

13    the promotion of drug trafficking activity regardless of

14    whether or not the Court agrees that the DEA touching those

15    funds has cut them off from being drug proceeds.

16         Arguendo, if the Court does believe that, it doesn't

17    really matter, because even clean funds being diverted to a

18    drug organization and to associates of a drug organization,

19    that is laundering in support of drug distribution and that

20    allows the Court to apply the enhancement under the second

21    prong of 2S1.1.

22         Your Honor, the Court also touched -- I'll be very

23    brief because it's in the papers, but along the same line of

24    reasoning, I asked the Court, again, to make the reasonable

25    inference that when these co-conspirators are providing

1     kickbacks, whether in cash or in kind, since they are

2     members of drug organizations, the Court can make the

3     reasonable inference that they are then paying the Defendant

4     with proceeds.  And there is no dollar threshold for the

5     application of the enhancement.

6          If the Court can reasonably infer that at least one

7     of those dollars was a drug dollar or intended to promote

8     drug activity, then the Court can apply the enhancement and

9     the Government feels that it should and that the record

10    before the Court does indeed reflect that.

11         For those reasons, we urge the Court to apply the

12    six level enhancement.

13         MS. DOMINGUEZ:  Your Honor, would you allow me brief

14    opportunity to rebut?

15         THE COURT:  Yes.

16         MS. DOMINGUEZ:  I'd like to start off by talking a

17    little about the Magluta decision because the Government did

18    bring it up, again, Your Honor, to avoid being repetitive,

19    but it is a point worth making.  As we have already

20    discussed in our pleading, there is a significant difference

21    between this case and this scenario and the Magluta case

22    where it was a sting that explored the Defendant's

23    subjective belief.

24         Your Honor, if DEA money is used in a sting

25    operation where a Defendant believes that it's drug proceeds

1    where there is clean money of the DEA or whether it's dirty

2    money seized by the DEA in an operation, that does not

3    exculpate a Defendant.  It doesn't shield him from criminal

4    responsibility and it certainly doesn't shield him from the

5    application of this enhancement.

6           This is a completely different scenario.  This was

7    not a situation where there's a sting operation where the

8    Defendant is being duped by law enforcement agencies to

9    believe that clean money is drug money, or that drug money

10   that has been interrupted in its course and is being paid, I

11   believe in those cases with legal fees, is clean money.  So

12   I believe that the fact that it is a sting operation really

13   discredits the use of that case as binding precedence for

14   the scenario involving Mr. Yabrudi who was a DEA agent who

15   knew full well that this was Government money and, in fact,

16   was not under mistaken belief that the money was drug

17   proceeds.

18          Your Honor, with respect to addressing the promotion

19   angle that the Government also discussed, I don't understand

20   the argument, Your Honor, that money that is given to the

21   CSs, CSs that worked for the DEA, that that is somehow

22   promotion of illegal activity unless the DEA has CSs on its

23   payroll that were working for the DEA and getting

24   compensated to violate the law.  These are people that are

25   presumably working hand in hand with the DEA to get the DEA

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1    business done.  I have to say that I believe there's a

2    factual flaw in the promotion argument.

3          And lastly, Your Honor, there has been no evidence

4    presented before this Court other than factual allegations

5    that are found in the plea agreement, and I believe that the

6    Government backtracked from the assertion that my client was

7    aware that it was drug proceeds, not giving up the point,

8    but allowing the Government, the Defendant to argue that he

9    did.

10          Now, that DEA account, Your Honor, had money from

11    multiple sources, but there's been no testimony before this

12    Court that the funding sources for those moneys that were

13    deposited in the DEA account were from drug transactions.

14    In fact, there were many, many, many money transfers that

15    were made by CSs for the purpose of creating commissions

16    that could then be used discretionarily by the agency that

17    has nothing to do with drug proceeds.

18          In fact, as we have represented to the Court in our

19    sealed pleading, there were many of those transactions that

20    lacked a clear law enforcement purpose because the person

21    that was transferring the money was not necessarily someone

22    who was engaged in illegal activity, much less drug

23    trafficking activity.  And so I think, and I respectfully

24    suggest to this Court, that in this evidentiary vacuum and

25    considering the Government's burden and also considering the

1    rule of lenity that we have argued in our pleadings that it

2    would be inappropriate to assess a six level enhancement

3    which so disproportionately the sentencing exposure for the

4    charged conduct.

5              THE COURT:  Okay.  Thank you.  Mr. Palazzo, did you

6    wish to say something else, sir?

7              MR. PALAZZO:  A brief reply, if warranted, Your

8    Honor.

9              THE COURT:  All right.

10             MR. PALAZZO:  Just very briefly that I believe the

11   facts that are in the plea agreement directly in front of

12   Your Honor were just distorted a little bit.  As to the

13   promotion prong, the cooperating sources who were

14   co-conspirators of the defendant.  In the facts, money was

15   diverted unwittingly to those co-conspirators.  We have that

16   in the facts several times, and I think this is a very

17   important factor for the Court to know.  Thank you, Your

18   Honor.

19             THE COURT:  All right.  Thank you.

20             All right.  With regard to this issue, I have, of

21   course, reviewed all of the submissions in this case, those

22   from -- on behalf of the Defendant, prior counsel as well as

23   those from current counsel, reviewed the Eleventh Circuit's

24   decisions, all of them which you cited, but the one that's

25   been referenced here is United States of America versus

1    Magluta, M-A-G-L-U-T-A, at 418 F.3d 1166, a decision out of

2    the Eleventh Circuit from 2005.  And I agree with both

3    Counsel, that there is no case law directly on point.  I

4    agree that Magluta is not of precedential value because it

5    is not directly on point.  It does, however, contain

6    language which suggests that payment of funds -- let me just

7    rephrase that.  The Eleventh Circuit in Magluta stops short

8    of finding that tainted funds would always remain tainted in

9    different circumstances.  I mean, they didn't specifically

10   make that finding, but their discussion is something that

11   the Court found to be helpful as there is no case law which

12   supports the Defendant's argument that drug proceeds ceased

13   to be proceeds once they are intercepted by law enforcement.

14        In fact, Defendant argues that because he knew that

15   the funds were transferred into accounts that were

16   Government-controlled that the enhancement doesn't apply,

17   and that goes to the first part of the enhancement, that the

18   Defendant knew or believed that any of the laundered funds

19   were the proceeds of a controlled substance offense.

20        And, again, I tend to agree with the Eleventh

21   Circuit discussion, if you will, in Magluta and don't agree

22   with the Defendant's argument that because the funds were

23   transferred into accounts that were Government-controlled,

24   then they no longer would be considered laundered funds.

25        Even if the Eleventh Circuit were to conclude, as

1    Defendants argued, that in this case because this Defendant

2    knew that the funds were transferred into accounts that were

3    Government controlled, the second prong of the sentencing

4    guidelines provision applies here which is that the

5    Defendant knew or believed that any of the laundered funds

6    were intended to promote a controlled substance offense

7    which is a promotion argument that's been discussed.

8        In looking at the facts in the case, and those are

9    the facts that are set forth in the amended presentence

10   investigation report as well as the amended plea agreement,

11   for example, when I look at the -- just by way of example,

12   on page 30, between approximately October 17, 2013 and

13   December 4, 2013, a co-conspirator arranged for

14   approximately $1,000,075,000 in cash to be picked up from

15   drug traffickers in an undercover capacity.  This seems to

16   be contrary to the Defendant's argument, because here it

17   appears, and I think an inference can be made, that the

18   co-conspirators were actually picking up money from the drug

19   traffickers, albeit in an undercover capacity.

20       And then, of course, as I discussed and asked about

21   earlier, there's also the issue of the laundering by the

22   Defendant and the receipt of drug proceeds by the Defendant

23   in the form of bribes and kickbacks, such as the loan that

24   has been discussed in this case, the use of a new sport

25   utility vehicle, rent-free living for a friend, renovations

1    to the Defendant's home.  All of those are facts that

2    support Section 2 or part 2 of the enhancement, and,

3    therefore, the Court is going to overrule the Defendant's

4    objection to the six level enhancement because the Court is

5    of the opinion that the Government has established by a

6    preponderance of the evidence, the evidence being the facts

7    contained in the factual basis for the plea agreement and

8    the facts in the presentence investigation report, that this

9    enhancement applies.

10        Even if Subsection 1 of the enhancement doesn't

11   apply, Subsection 2 applies, but the Court agrees that

12   although there is no case law on point about the proceeds,

13   once they are transferred into accounts that were

14   Government-controlled, there is no case law one way or the

15   other, and so I found the discussion in Magluta to be

16   helpful where the Magluta court concluded that, or not

17   concluded, but discussed in their opinion that tainted funds

18   remained tainted in circumstances analogous to this case,

19   again, clearly not factually identical to the facts before

20   this Court.  This is a unique case, unique facts and a

21   unique Defendant; therefore, the Court overrules the

22   objections raised by the Defendant with regard to the six

23   level enhancement -- let me just go back to the PSR -- at

24   paragraph 58.

25        There being no further objections to the facts

1    contained in the presentence investigation report, the Court

2    adopts those facts as its findings of fact and based upon

3    them determines that the Total Offense Level is level 37 and

4    that is, again, with the two level enhancement for role

5    which is Doc. 61 -- no, it's not.  In this case it's Doc.

6    62.  That should be two levels, and so that changes the

7    adjusted offense level to 40, and then the Total Offense

8    Level becomes 37, Criminal History Category I for a Total

9    Offense Level 37, Criminal History Category I, the advisory

10   guidelines range for incarceration is 210 to 262 months

11   imprisonment which applies to Counts One through Thirteen,

12   and then two years consecutive to all other counts as to

13   Counts Fourteen through Nineteen, and, of course, that's by

14   statute.  The 24 months must run consecutive to all other

15   counts.

16         With regard to supervised release, as to Counts One

17   through Five and Thirteen, supervised release is one to

18   three years.  As to Count Six through Twelve, the supervised

19   release is two to five years, and as to Count Fourteen

20   through Nineteen, the supervised release is one year.

21         With regard to restitution, there's a request for

22   $11,235.43.

23         Counsel, are there any issues or any objections with

24   regard to the amount of restitution sought in this case?

25         MS. DOMINGUEZ:  We have no objection, Your Honor.

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1          THE COURT:  Counsel for the United States?

2          MR. PALAZZO:  No objection, Your Honor.

3          THE COURT:  All right.  The range for the fine,

4     Madam Probation Officer, that changes?

5          PROBATION OFFICER:  Yes, Your Honor.  It is now

6     40,000 to $25,000,000.

7          THE COURT:  Okay.  Given the change in the offense

8     level, the range for the fine is $40,000 to $25,000,000, and

9     with regard to special assessment, the total is $1900.

10    That's $100 for each count.

11         Mr. Palazzo, is the victim or victims representative

12    present in the courtroom?

13         MR. PALAZZO:  No, Your Honor.

14         THE COURT:  All right.  Mr. Irizarry, do you wish to

15    make a statement before I impose sentence?  I have reviewed

16    your written statement that's a part of the presentence

17    investigation report, but if you'd like to say anything

18    further at this time you may.

19         Let me explain to you what will happen.  After you

20    have finished, I'll give your attorney an opportunity to

21    make argument.  Counsel for the United States will have an

22    opportunity to make argument.  I know that the United States

23    has a motion pending.  I'm also going to hear argument on

24    that.  After the United States makes argument on their

25    motion, Ms. Dominguez, you'll be given an opportunity for

1    further argument.  I have read your memorandum with regard

2    to what you believe is appropriate, so that's how we will

3    proceed going forward.

4           But at this time, I just wanted to see if

5    Mr. Irizarry wished to say anything further.

6           You may come to the lectern.

7           THE DEFENDANT:  Thank you, Your Honor, for the

8    opportunity.  I'd like to say that I --

9           THE COURT:  Make sure you speak into the microphone

10   so I can hear you.

11          THE DEFENDANT:  I would like to say that I stand

12   before you today with mixed emotions, mixed emotions because

13   today was the end of a four-year mental battle that I've had

14   with myself with the anxiety, fear, regret, sadness, mental

15   battles brought on because of my actions.

16          Unfortunately that battle starts today for my

17   family, actually for my twin girls who have no way of

18   understanding what their father, why their father is leaving

19   them, something that I will never forgive myself for.  I

20   have taken the time to try to express to them that the

21   reason I'm leaving is because of my actions and nothing to

22   do with them and that I'll be back as soon as God lets me.

23          Twenty years ago when I became a federal agent, I

24   did it with a sense of pride, duty.  I took my job very

25   seriously.  Unfortunately there came a time when I started

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1    making decisions, decisions that went against the person I

2    was, decisions that were against how my mother raised me,

3    decisions that hurt my wife and decisions that embarrassed

4    my country, and I have nobody else to blame for that but

5    myself.

6          No matter what was going on in my life or where I

7    worked, I should have known better and I didn't.  I failed.

8    I wish that I could go back in time and change these actions

9    but I can't obviously, but what I can do is focus on this

10   present moment making sure that I live with virtue, empathy

11   and unconditional love towards others, make it a point to

12   make myself an agent of positive change to whoever I

13   encounter, and this, Your Honor, I'll do for the rest of my

14   life no matter where I am.  That's my life mission.

15         I know today that you will sentence me for my

16   actions and I ask for your mercy, but I would like to say

17   that I'm very grateful for being here today and I'm very

18   grateful because I have an opportunity to redeem myself.  I

19   do not take that lightly, and I will not be judged by my

20   past mistakes but from what I do going forward no matter

21   where I am, no matter how long I'm there.

22         So, Your Honor, I accept whatever sentence you

23   impose on me today with a grateful heart because I know it's

24   God's will.  Thank you for your time.

25         THE COURT:  Okay.  Thank you.

1          Ms. Dominguez, do you know of any reason why the

2    Court should not impose sentence today?

3          MS. DOMINGUEZ:  I do not, Your Honor.

4          THE COURT:  You may come to the lectern and make

5    your argument with regard to mitigation in sentence.

6          MS. DOMINGUEZ:  Your Honor, we have various

7    arguments to make.  Some fall under the ambits of Section

8    3553 sentencing factors.  We also have an allocution for the

9    Court.  That allocution makes reference to certain

10   confidential materials that have been filed under seal, so

11   I'd like to know the Court's pleasure in how to proceed.

12   Should we first address the 3553 factors?

13         THE COURT:  Yes.  We're addressing the 3553(a)

14   factors at this time.  When the United States comes forward,

15   I'll allow them to make their argument on their sealed

16   motions.  We'll proceed with the headsets.  I'll indicate my

17   findings again with regard to the basis for proceeding with

18   the headsets and then I'll hear any additional argument you

19   may have with regard to the sealed matters.

20         MS. DOMINGUEZ:  Thank you, Your Honor.

21         THE COURT:  Right now I want to hear the 3553.

22         MS. DOMINGUEZ:  May I have the Court's indulgence

23   for one moment?

24         THE COURT:  Yes.

25   (Brief pause.)

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1          MS. DOMINGUEZ:  Your Honor, I will try for the Court

2     to hear me as clearly as possible with the microphone with

3     the mask on.

4          THE COURT:  Okay.  Is this 3553(a)?  You don't need

5     the headsets for the 3553(a) factors.  The headsets are for

6     the sealed matters.

7          MS. DOMINGUEZ:  Okay.  All right.  Your Honor, as

8     this Court is aware, there's a mandate, a statutory mandate

9     for federal sentencing judges such as Your Honor and that is

10    to impose a sentence that is reflective of the seriousness

11    of the offense but not harsher than necessary.

12          In its wisdom, the legislature has determined that

13    every case is different and every defendant comes before the

14    court situated differently, the product of a life of

15    decisions and events.

16          In this case, Your Honor, I think the Court can see

17    that Mr. Irizarry is deeply repentant for his conduct.  I

18    think that we need to avoid the cynicism that some of us

19    develop after being in the system so long and seeing so many

20    cases and so many defendants.  Of course I'm not suggesting

21    that Your Honor is in that category with all due respect,

22    but rehabilitation exists more than simply in theory.  I

23    think my client is a vision of a man who is repentant, who

24    will never violate the law again, and who will try for the

25    rest of his natural life to make amends for his conduct.

1          He has lost everything.  He accepts responsibility

2     for that.  He's lost his career in law enforcement.  He's

3     lost his good name.  He's lost the respect of friends and

4     family, and most importantly he has to struggle with the

5     responsibility for the pain that he is inflicting on the two

6     people he loves most in this life who are his two young

7     daughters.

8          Your Honor, Mr. Irizarry before my co-Counsel and I

9     represented him elected to plead guilty.  The facts, he pled

10    guilty to everything, Your Honor.  I'm sure it's not the

11    typical plea agreement that Your Honor is used to seeing

12    where a Defendant accepts responsibility for everything.

13    The money laundering count that he's accepted responsibility

14    for provide that $9,000,000 was laundered.  He's accepted

15    responsibility for that because that's the amount that was

16    moved through the account.

17         But, Your Honor, if you are going to consider in

18    light of 3553 and what is a fair sentence, the amount that

19    he benefited from or that actually he accepted way less than

20    a million dollars, Your Honor, maybe 6, $700,000, and so in

21    light of 3553 and without backpedaling from the acceptance

22    of responsibility for the 9,000,000, and in the interest of

23    a balanced and reasonable sentence that is suggested by the

24    statutory mandate, Your Honor, I would say that the

25    $9,000,000 results in an exceedingly harsh sentence and that

1    there are mitigating factors concerning the circumstances of

2    this case that this Court can reasonably consider to fashion

3    a fair sentence.

4         Because, Your Honor, what my client did was wrong

5    and I'm not here to justify it.  In fact, if I tried to

6    justify it, he'd probably jump from his chair and challenge

7    me on that.  He's very clear on his acceptance of

8    responsibility.  But I think that in fairness, Judge, a

9    sentence of 210 months for someone who's not involved in

10   violence, someone who hasn't killed anybody, I think under

11   the facts of this case, it's exceedingly severe.  And I know

12   that Your Honor takes very seriously the statutory mandate

13   and the responsibility that it is to have the life of a

14   human being in your hands, and I'm sure that Your Honor will

15   consider all of the pertinent facts and circumstances to

16   fashion what it believes is a fair sentence.

17        I also would like to say, Your Honor, in terms of

18   3553, this dovetails a little bit into my allocution, that

19   when Jose joined the DEA, leaving his former position as an

20   Air Marshal where he had an unblemished record, he didn't do

21   so with the intent of violating the law or standing before

22   the Court here today.  He had an honest and a deep abiding

23   desire to serve his country.  As a new and eager agent, he

24   was confronted with a system that operated outside of rules,

25   regulations and procedures, a world where rules didn't

1    apply, where agents were taught that they could operate with

2    impunity.  The agency became involved with money transfers

3    done at their request with bad guys, with sources who charge

4    the commission for the services they were providing to third

5    parties.  Those commissions became a funding source for the

6    DEA.

7         I would like to tell the Court that they became a

8    funding source for legitimate law enforcement operations,

9    but, in fact, that was not the case, Your Honor.  Those

10   commissions were used for personal travel expenses.  They

11   were used for adult entertainment.  They were used to buy

12   personal equipment, computers, cellphones, for agents and

13   their family, for sources.  In fact, they were used for

14   activities that had no law enforcement purpose whatsoever.

15        The CSs became a funding source for the DEA.  The

16   CSs and the agents became pals.  They worked together.  They

17   socialized together.  In fact, one of the CSs is a Godparent

18   to my client's children.

19        In connection with that activity, Your Honor, rules

20   were broken and reports were falsified and this commission

21   money was literally used between the sources, the agents and

22   other law enforcement personnel for purposes unrelated to

23   the agency's mission.

24        So, Your Honor, I don't say this to mar the

25   reputation of all of the respected law enforcement agents

1    that honorably serve their country, and I was an AUSA for 25

2    years.  I worked with many of them and I was proud to work

3    with them because they were exceptional people, but the

4    people that are breaking the law at the DEA are not among

5    that esteemed group, and so I reiterate my client's words to

6    this Court, that he takes responsibility for this action.

7    But as his lawyer, as his advocate, and putting this conduct

8    into context, I would like to suggest to this Court without

9    detracting from his acceptance of responsibility, that my

10   client when he joined the DEA was schooled in how to be

11   corrupt, was schooled in how to break the law.  That was the

12   way it was done when he got there, and he was corrupted.

13        In this alternate universe, Your Honor, it became

14   easier and less suspect to accept money and gifts from these

15   sources, particularly when they did not ask for anything in

16   return.

17        These facts provide relevant conduct for a decision

18   which should fairly be considered when fashioning a fair

19   sentence.  His most severe punishment, Your Honor, is the

20   one that he has inflicted on himself.  Every day since this

21   case began, the thoughts that enter his mind and haunt his

22   nights and have deprived him from a good night's sleep in

23   four years.  He has struggled with his weakness.  It's a

24   weakness that allowed him to succumb to the allure of easy

25   money and to participate in the conduct that destroyed his

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1    life and now threatens to deprive him of his freedom.

2         He mostly struggles with the pain that he has

3    inflicted on his family and particularly his daughters who

4    are too small to really understand what's going on here and

5    why their dad is going to be gone and who break out in tears

6    every time that he leaves the house to be sentenced.

7         As my client Jose would like to alter the fateful --

8    fateful decisions that he made, he cannot, Your Honor, turn

9    back the hands of time.  If he could do so, Your Honor, he

10   would do so in an instant, and he would pay any price to do

11   that because his repentance is real and his repentance is

12   deep.

13        Now all that he can do is commit himself to being

14   the best person that he can be and to put his repentance to

15   work by contributing positively to society and helping his

16   fellow man, because as important as this proceeding today is

17   to my client, Your Honor, his peace with God, the peace that

18   he has made with God is more important of all of that for

19   him.

20        Jose is truly a changed man.  He is stronger.  He is

21   wiser and he is more resilient than the man that engaged in

22   this shameful conduct.  He is decidedly committed to his

23   moral and religious principles that he has renewed.  He is

24   at peace with God and he's ready to accept this Court's

25   sentencing recommendation.

1        In closing, Your Honor, I would like to just

2   reiterate to this Court that Jose was not a leader.  He was

3   not a mastermind in this corrupt scenario that developed

4   within the agency.  He did engage in the conduct.  He is the

5   only one at this point that has been held accountable for

6   that.  That's not an excuse, Your Honor.  He's ready to

7   accept responsibility, but I offer that to the Court to put

8   my client's conduct into perspective.

9        I assume, Your Honor, then we will at some future

10  point address the sealed motion?

11       THE COURT:  Yes.

12       MS. DOMINGUEZ:  Yes, Your Honor.

13       THE COURT:  Mr. Palazzo.  You know what?  Bring your

14  headsets, Counsel.  Put on your headsets because we're going

15  to hear the sealed motion first, and I am ordering that this

16  portion of the sentencing hearing be sealed based upon the

17  information provided by the Court.

18       I have determined that the information that's

19  contained in the sealed motion is information that

20  ostensibly relates to an ongoing criminal investigation and

21  the related documents which would make public information

22  related to it unwarranted as well as run the risk of danger

23  to not only this defendant but others involved, and so

24  considering the case law with regard to sealing judicial

25  records and judicial proceedings, because of the nature of

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1   the motion that the Court has already sealed as well as its

2   order including the danger to cooperators in the case as

3   well as the Defendant, further public exposure is

4   unwarranted and is the reason why the Courts are allowed to

5   seal proceedings.

6          And so you all may now go to your headsets.  Make

7   sure you have them on.

8          Mr. Palazzo, why don't you come forward because

9   there are a number of individuals behind you.  Sometimes

10  people can hear you because they are talking loudly.  So go

11  over to the jury box.  And then when Counsel are speaking,

12  come forward so that I can hear you.

13  (Whereupon the following proceedings are sealed.)

14                  SEALED PROCEEDINGS



15

16

17

18

19

20

21

22

23

24

25

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION



RECORD UNSEALED

(Proceedings resumed in open court.)

          THE COURT:  All right.  Having concluded the sealed

provision which again I have sealed based upon the nature of

the information, the sensitive nature, cooperators' ongoing

investigations and threats of harm and danger to those

persons discussed and addressed in the motions before the

Court, I'm now reopening the proceedings so that we can

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1      continue this sentencing hearing and further argument under

2      3553(a) from the United States.

3              I've heard Defendant's argument regarding 3553(a)

4      factors.  I'll now hear from the United States as to the

5      3553(a) factors, and your argument with regard to a

6      reasonable sentence.

7              MR. PALAZZO:  Thank you, Your Honor.  I'm not happy

8      to be here today.  This is not a particularly proud moment

9      for the Government to be here on the other side of one of

10     their own, and the circumstances of the counts speak for

11     themselves.

12             I do echo some of the same sentiments of Defense

13     Counsel.  I made some of the same observations of the

14     Defendant, that he is a loving husband and loyal father and

15     that he has given every indication that he wants to be on

16     the road to recovery.  I think that is a fair assessment and

17     it should be factored in by the Court, as I know it will be.

18             But the Government is seeking a guideline sentence

19     and has taken that into consideration and, therefore, will

20     ask for the lowest end of that guideline, you know, as

21     calculated after everything that's been filed.  So the

22     Government has taken that into consideration and urges the

23     Court to sentence Mr. Irizarry at the lowest end of the

24     guideline.

25             But a guideline sentence is still appropriate, and I

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1    would hope that the Court doesn't lose sight of it.  I think

2    the most important factor here, 3553(a)(2)(A) would be the

3    seriousness of this offense.  I think it supercedes a lot

4    about what you've heard today about the Defendant wanting to

5    repent for his action.

6         I want to draw the Court's attention again to the

7    facts.  One of the facts, yes, the Defendant has 20 years of

8    Federal service, but he joined the Drug Enforcement

9    Administration, I think it's in the PSR, in 2009.  I think

10   he went to the academy and he graduated in either late 2009

11   or early 2010, and, Your Honor, the facts reflect that from

12   the very beginning of his career, Mr. Irizarry made

13   decisions to do the wrong thing.  This is not a recent

14   occurrence over a long and tenuous career.  This is from the

15   very beginning.

16        On page 29, paragraph A through F outline

17   transactions in the first year or second year of his

18   Government service, fresh out of the academy, really, where

19   undercover money laundering picks up in New York City,

20   Mexico City and Houston that were indeed corrupted by the

21   defendant and his co-conspirators.  And you'll see back on

22   page 26, paragraph A in the chart, there's a $6,000 kickback

23   on October 27th, one year into his Government service, Your

24   Honor.

25        The actions by the Defendant were early and often

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1    throughout his DEA career, and I think the Court should take

2    that into consideration today in making a guideline

3    sentence.  We heard from the Defendant.  He is college

4    educated.  He is articulate.  He is supported by a very

5    obviously loving family.  He deliberately decided to do

6    these things.  He took an oath of office.  The oath of

7    office didn't say that he had to abide by it only when he

8    had very tight and strict oversight or very close

9    supervision.  His oath implied that he would do the right

10   thing and defend the Constitution when people were looking

11   and when people weren't looking, and he chose to violate

12   that oath.  And we think that a guideline sentence would

13   properly reflect the seriousness of the offense and would

14   promote respect for the law, especially among the

15   law-abiding agent communities that overwhelmingly outnumber

16   the Defendant.  And of course we would like a guideline

17   factor to adequately deter future similar situations, Your

18   Honor.

19          For those reasons, we ask the Court to sentence the

20   Defendant at the lowest end of the guidelines.

21          MR. PEREZ-IRIZARRY:  Your Honor, may I address the

22   Court briefly?

23          THE COURT:  Yes.

24          MR. PEREZ-IRIZARRY:  Your Honor, what I'm about to

25   say should not be taken by the Court as either excusing or

1    justifying Mr. Irizarry's behavior.  To the contrary,

2    Mr. Irizarry has accepted his guilt, his responsibility and

3    came to this Court from the court record of a transcript of

4    a change of plea hearing of what he elocuted to this

5    Honorable Court.

6         3553 factors, one is not more important than the

7    other.  They need to be taken into account, to the totality

8    of the circumstances of what each factor provides for the

9    Court to fashion an appropriate sentence addressing the

10   individual defendant human being in front of the Court.

11        The Supreme Court of the United States ruled that

12   the guidelines are now advisory and the Court has to do what

13   this Court has done.  No question about it that the Court

14   after obtaining the advisory guideline sentence, but the

15   Court has the authority of the Supreme Court to sentence the

16   Defendant to a sentence other than what the advisory

17   guidelines suggests based upon the particular and individual

18   circumstances.

19        Let me address something that we haven't brought up

20   with you.  As part of the submissions by the defense

21   regarding the sentencing procedures, we readopted a first

22   report filed by Mr. Irizarry's prior Counsel regarding the

23   Office of Inspector General from the DOJ.  We then filed one

24   which was issued in August of 2021.  Coincidentally, they

25   relate to the same things.  The first pertain to the field

1    operations, the use of the Attorney General accepted

2    organization's account and the second most important one in

3    August of 2021.  When taken together, what do they show?

4    What do they say?  The DEA as an institution failed to

5    properly oversee field agents and DEA headquarters failed to

6    properly account and hold accountable those field agents.

7         The reports also made reference to DEA's failure to

8    comply with operational mandates, to advise Congress of the

9    use of these accounts, how they are overseen by DEA and the

10   fact that for a number of years DEA as an agency has failed

11   to do this.

12        Through these accounts they actually paid and funded

13   the activities of foreign law enforcement agencies.  They

14   actually paid foreign government officials, part of this law

15   enforcement operations, to work with them.  I wonder, Your

16   Honor, that if DEA was to be a private entity defined as a

17   U. S. person pursuant to the Florida Corrupt Practices Act,

18   DEA would be actually the subject of a civil action or

19   investigation pursuant to the Florida Corrupt Practices Act.

20        Mr. Irizarry did what he did.  No question about it.

21   I'm not minimizing his involvement or participation, nor am

22   I excusing it, but he is not the leader.  He's not the

23   mastermind.  He's not the mastermind.  He was not the

24   leader.  This identity was in existence at the time that he

25   joined DEA, and I wonder why is he the only one here facing

1    the music?  He's facing the music voluntarily.  What are the

2    others?  What is going to be done to actually make sure that

3    the 99.9 percent of law enforcement officers who do their

4    job the right way should not feel embarrassed by this type

5    of activities.  For 28 years I was a federal prosecutor and

6    I worked with outstanding federal agents, agents that if

7    they were to tell me the sky is falling, I'm running.

8         We need to be respectful of those officers, those

9    agents who do the right thing day in and day out, including

10   state, local and municipal law enforcement officers.  I am

11   not here to jump on the bandwagon of criticizing law

12   enforcement and changing law enforcement.  When they do the

13   job right, nothing needs to be changed.  But for those who

14   are not held accountable and for agencies who are not held

15   accountable, they need to be held accountable by OPR, by the

16   Office of Inspection, by the United States Department of

17   Justice, Office of Public Corruption in order to be able to

18   do what's in this.

19        Mr. Irizarry, and just to conclude, Your Honor, was

20   in DEA from 2000 to 2009.  Before that he was in the Border

21   Patrol and then joined from the Border Patrol the Department

22   of Homeland Security Air Marshal Program shortly after

23   9/11/2001.

24        I know that these proceedings are emotional to all

25   parties, to the Government, to the defense and to the

 1    Defendant.  And the most difficult job in the criminal

 2    justice system I don't want to have which is what Your Honor

 3    does, sentencing people, because each side elocutes and

 4    advocates for his client, their client, but ultimately it is

 5    you.

 6          Just to correct the dates, he started in 2009.  This

 7    conduct had already started before he joined in.  Your

 8    Honor, I thank you.

 9          MS. DOMINGUEZ:  Court's indulgence for just one

10    moment.

11          MR. PEREZ-IRIZARRY:  Thank you, Your Honor.

12          THE COURT:  All right.  Thank you.  Mr. Palazzo.

13          MR. PALAZZO:  Nothing further, Your Honor.

14          THE COURT:  All right.  Mr. Irizarry, the Court has

15    reviewed all of the information provided in this case,

16    listened to argument of Counsel, listened to your statement,

17    reviewed your statement, reviewed letters to the Court from

18    your friends and family.  I am going to grant the motion at

19    Doc. 150 and depart downward from the guidelines, and this

20    is a motion of the United States for a downward departure at

21    Doc. 150, and I'm departing downward five levels which takes

22    you from a level 37 to a level 32, sentencing guidelines

23    range 121 to 151.

24          I'm going to deny the request for a variance and

25    impose a guideline sentence in this case, and I do so

1    because I am of the opinion that the sentence of 145 months

2    is a sentence that is sufficient but not greater than

3    necessary to comply with the statutory purposes of

4    sentencing.

5         I understand all of the arguments made here, but I

6    think, Mr. Irizarry, you utilized the trust bestowed upon

7    DEA agents to investigate money laundering activity of drug

8    organizations in that position in Miami and in Colombia.

9    You had access to drug dollars and you were afforded special

10   privileges that you corrupted to hide your criminal

11   activity.  This is a breach of the public trust.  And you

12   did so at risk to yourself and your friends.

13        There was also an innocent unwitting victim harmed

14   and that's the identity theft count based upon opening a

15   bank account that was used in this criminal scheme, and

16   while I appreciate your remorse, and I certainly agree that

17   you have shown remorse, that you immediately accepted

18   responsibility for your actions, but I think that in this

19   case the sentence that's reflected by my ruling is one that

20   is sufficient.

21        I have no doubt but that you are a loving father to

22   your minor children, but in this case when I look at the

23   3553(a) factors, particularly the need for this sentence to

24   reflect the seriousness of your offensive behavior, to

25   promote respect for the law and to provide just punishment

1    and adequate deterrence, a sentence of 145 months is

2    sufficient.

3         And I say this to provide deterrence, because I

4    agree and believe based upon everything I've read, since you

5    were not the only corrupt DEA agent, and I am hopeful that

6    further investigations into the agency and other agencies

7    that have been complicit in this type of activity will

8    commence, if it has not already commenced, because it has to

9    stop.  It is a misuse of the public's trust and a misuse of

10   public funds.  And you were the one who got caught, but

11   obviously and apparently to this Court there are others, and

12   so I am hopeful that the United States will also pursue

13   those others.

14        But I'm hopeful that my sentence today, this

15   sentence here will at least serve as some type of deterrent

16   to those others who may be considering the allure of easy

17   money.

18        There being no reason for the Court to withhold the

19   imposition of sentence, pursuant to Title 18, United States

20   Code, Sections 3551 and 3553, it is the judgment of the

21   Court that the Defendant, Jose Ismael Irizarry, is hereby

22   committed to the custody of the Bureau of Prisons to be

23   imprisoned for a total term of 145 months.  This term

24   consists of a 121-month term as to Counts One through Twelve

25   and a 60-month term as to Count Thirteen, all such terms to

1    run concurrently with each other.  In addition it includes a

2    term of 24 months as to Counts Fourteen through Nineteen to

3    be served consecutive to the term of imprisonment in Counts

4    One through Thirteen and, of course, that's mandated by

5    statute.  The 24 months must run consecutive.  So the

6    sentences for Count Fourteen through Nineteen run concurrent

7    to the sentence for the other counts -- run consecutive to

8    the sentence for the other counts but concurrent with each

9    other, so it's one 24-month term sentence for Counts

10   Fourteen through Nineteen.

11        Upon release from imprisonment, Mr. Irizarry, you

12   shall serve a three-year term of supervised release.  This

13   consists of three years as to each of Count One through

14   Thirteen and one year each as to Counts Fourteen through

15   Nineteen, all to be served concurrently.  While on

16   supervised release, you shall comply with the mandatory and

17   standard conditions adopted by the Court in the Middle

18   District of Florida.

19        In addition, you shall comply with the following

20   special conditions:  One, you shall participate in a

21   substance abuse program outpatient and/or inpatient and

22   follow the Probation Officer's instructions regarding the

23   implementation of this Court directive.

24        Further, you shall contribute to the cost of these

25   services not to exceed an amount determined reasonable by

1    the Probation Office's sliding scale for substance abuse

2    treatment services.  During and upon the completion of this

3    program, you are directed to submit to random drug testing.

4         In addition, you shall participate in a mental

5    health treatment program outpatient and/or inpatient and

6    follow the probation officer's instructions regarding the

7    implementation of this Court directive.

8         Further, you shall contribute to the cost of these

9    services not to exceed an amount determined reasonable by

10   the Probation Office's sliding scale for mental health

11   treatment services.

12        Third, you shall submit to a search of your person,

13   residence, place of business, any storage units under your

14   control, computer or vehicle conducted by the United States

15   Probation Officer at a reasonable time and in a reasonable

16   manner based upon reasonable suspicion of contraband or

17   evidence of a violation of a condition of release.  You

18   shall inform any other residents that the premises may be

19   subject to a search pursuant to this condition.  Failure to

20   submit to a search may be grounds for revocation.

21        Four, you shall provide the probation officer access

22   to any requested financial information.  And all of these

23   conditions are supported by the facts and the provisions in

24   the presentence investigation report.

25        In addition, having been convicted of a qualifying

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1   felony, you must cooperate in the collection of DNA as

2   directed by the probation officer.  You must refrain from

3   the unlawful use of any controlled substance.  You must

4   submit to one drug test within 15 days of placement on

5   supervision and at least two periodic drug tests thereafter

6   as directed by the probation officer.  You must submit to

7   random drug testing not to exceed 104 tests per year.

8          And you are required to pay restitution.  You shall

9   pay restitution in the amount of 11,235.43 to J.O.M.  This

10  restitution -- and, again, the information -- more

11  information is provided in the presentence investigation

12  report.  This restitution obligation shall be payable to the

13  Clerk, United States District Court, for distribution to the

14  victim.

15         While in the Bureau of Prisons custody, you shall

16  either, one, pay at least $25 quarterly if you have a

17  non-UNICOR job, or, two, pay at least 50 percent of your

18  monthly earnings if you have a UNICOR job.

19         Upon release from custody, you will be required to

20  make monthly payments in the amount of $200 per month.  At

21  any time during the course of post-release supervision, the

22  victim, the Government, or you, the Defendant, may notify

23  the Court of a material change in your ability to pay and

24  the Court may adjust the payment schedule accordingly.

25         The Court finds, Mr. Irizarry that you do not have

1   the ability to pay interest and, therefore, I waive the

2   interest requirement for the restitution.  Based upon your

3   financial status, I'm also waiving the imposition of a fine.

4        Are there any forfeiture matters?  I think there

5   are.  Let's see.  Yes.  A preliminary order of forfeiture

6   was entered on June 23rd, 2021 at Docket 107.  Preliminary

7   order of forfeiture required forfeiture of the following:

8   One Tiffany diamond ring, one Lamborghini, and the

9   preliminary order of forfeiture will be included into and

10  made a part of the criminal judgment in this case.  I don't

11  see that a final order has been entered at this time.  No.

12       My understanding is that there was no objection to

13  the forfeiture provision; is that correct?

14       MS. DOMINGUEZ:  There is not, Your Honor.  I would

15  like to also advise the Court that the ring has already been

16  turned over to the Government and the Lamborghini is not in

17  his custody but he waives any right to it.

18       THE COURT:  In addition, Mr. Irizarry, you are

19  ordered to pay to the United States special assessments

20  totaling $1900.  Again, these special assessment is $100 per

21  each count.  There are 19 counts, so that's $1900, and it is

22  due immediately.

23       After considering the advisory sentencing guidelines

24  and all of the factors identified in Title 18, United States

25  Code, Sections 3553(a)(1)-(7), the Court finds that the

1    sentence imposed is sufficient but not greater than

2    necessary to comply with the statutory purposes of

3    sentencing.

4         You entered into a plea agreement, Mr. Irizarry,

5    which the Court has accepted, and I've accepted the plea

6    agreement because I am satisfied that the agreement

7    adequately reflects the seriousness of your actual offensive

8    behavior, and that accepting the plea agreement will not

9    undermine the statutory purposes of sentencing.

10        The Court having pronounced sentence, does Counsel

11   for the Defendant or Government have any objections?

12        MR. PALAZZO:  Nothing from the Government, Your

13   Honor.

14        MR. PEREZ-IRIZARRY:  No objections, Your Honor.

15        THE COURT:  Finally, Mr. Irizarry, to the extent

16   permitted by your plea agreement, you have a right to appeal

17   from the judgment and sentence within 14 days from the entry

18   of the judgment.  Failure to appeal within the 14-day period

19   shall be a waiver of your right to appeal.  The Government

20   may file an appeal from this sentence.

21        You are also advised that you are entitled to

22   assistance of Counsel in taking an appeal, and if you are

23   unable to afford a lawyer, one will be provided for you.

24        If you are unable to afford the filing fee, the

25   Clerk of the Court will be directed to accept the notice of

1    appeal without such fee.

2              Counsel, are there any requests regarding this case?

3              MR. PALAZZO:  Yes, Your Honor.  Just for the record,

4    I know the Court has the standard language, but I just do

5    want to note for the record that the plea agreement does

6    impose some limitations on the Defendant's right to appeal.

7              MS. DOMINGUEZ:  We're aware of those and discussed

8    it with our client.

9              THE COURT:  And then requests?  I know that I

10   believe your client was requesting placement in Alabama and

11   Florida.

12             MS. DOMINGUEZ:  Your Honor, we would be requesting a

13   recommendation for placement at Montgomery Federal Detention

14   Center.

15             THE COURT:  Okay.

16             MS. DOMINGUEZ:  We would also be asking the Court to

17   recommend that the Defendant be allowed to participate in

18   the drug course for drug/alcoholism issue.

19             THE COURT:  RDAP?

20             MS. DOMINGUEZ:  Within the RDAP, yes.

21             THE COURT:  RDAP.

22             MS. DOMINGUEZ:  Yes.

23             THE COURT:  What I'll state is I'll put RDAP or

24   alternatively some other alcohol and drug treatment program.

25             MS. DOMINGUEZ:  Yes, Your Honor.  And, finally, we

1    would ask if the Defendant be allowed to voluntarily

2    surrender to the institution to which he was designated, and

3    I believe that the Government is not opposing that request.

4    Of course we understand it's up to the Court.

5           THE COURT:  With regard to the location, is there an

6    alternative choice, first and a second choice?  I know

7    Montgomery is the first.

8           MR. PEREZ-IRIZARRY:  It would be Eglin Air Force

9    Base.  They have similar programs.

10          THE COURT:  Eglin Air Force.  Okay.  Mr. Palazzo.

11          MR. PALAZZO:  No objections to any of those

12   requests, Your Honor.

13          THE COURT:  All right.  With regard to the request

14   to voluntarily surrender, I understand that the parties did

15   agree upon that.  I have reviewed the presentence report

16   provided by pretrial services which reflects that

17   Mr. Irizarry has complied with all conditions of release and

18   has reported as instructed.  No concerns have been noted

19   during the home visits and his passport, of course, has been

20   previously surrendered.  No additional criminal activity or

21   criminal arrests have been indicated and no contact with law

22   enforcement.

23          Nothing about this case makes the Court believe that

24   the Defendant is a flight risk or a danger to the community

25   and so I will grant the parties request that the Defendant

1    be allowed to voluntarily report to the facility as

2    designated by the Bureau of Prisons.  And you must report,

3    Mr. Irizarry, by January 7th, 2022 at 2:00 p.m.  And that

4    would be to the facility that is provided to you from the

5    Bureau of Prisons.  That should be adequate time to get the

6    report from them.

7         I will include on the judgment that you be housed as

8    your first choice Montgomery Federal Detention center,

9    second choice Eglin Air Force Base and that you be allowed

10   to participate in the RDAP program.

11        Is there anything further, Counsel?

12        MR. PALAZZO:  Nothing from the Government.

13        MS. DOMINGUEZ:  Nothing from the Defense, Your

14   Honor.

15        MR. PEREZ-IRIZARRY:  Your Honor, just quickly

16   regarding the surrendering to the facility, how would the

17   Court like us to handle that in the event that the

18   destination is not provided prior to that date?

19        THE COURT:  Then you will need to file a motion with

20   me to extend the surrender date.

21        MR. PEREZ-IRIZARRY:  Thank you.

22        THE COURT:  Hopefully it will be.  I don't know,

23   perhaps the holidays may slow them down, but it should be,

24   but if not, just file a motion to extend the date for

25   voluntary surrender.  And then at the conclusion of this

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1    proceeding, Mr. Irizarry, you need to go to the 4th floor to

2    the United States Marshal's office for processing and

3    further instructions.

4           If there's nothing further, Counsel, that concludes

5    this proceeding.  We are adjourned.

6  (Case recalled)

7           THE COURT:  The clerk has looked and did not see

8    Eglin Air Force base listed with the BOP.  Is there some

9    other name?

10          MR. PEREZ-IRIZARRY:  Pensacola, Your Honor.

11          THE COURT:  Pensacola.  Okay.  Pensacola is the

12   request.  There was another sealed motion, while I have you

13   all here.  This was at Doc. 133.  It was the informative

14   motion filed by the Defendants, and I'm granting that to the

15   extent that the Court has taken notice of that motion.  I

16   have reviewed it as well.

17          MS. DOMINGUEZ:  Thank you, Your Honor.

18          THE COURT:  We are adjourned.

19  (Court adjourned at 4:12 p.m.)

20

21

22

23

24

25

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION

1

2  UNITED STATES DISTRICT COURT  )

3                             )

4  MIDDLE DISTRICT OF FLORIDA    )

5

6        I, SHARON A. MILLER, Official Court Reporter for the

7  United States District Court, Middle District of Florida, do

8  hereby certify that pursuant to Section 753, Title 28,

9  United States Code that the foregoing is a true and correct

10  transcript of the stenographic notes taken by computer-aided

11  transcription taken in the above-entitled cause by the

12  undersigned and that the transcript format is in conformance

13  with the regulations of the Judicial conference of the

14  United States.

15  /S/Sharon A. Miller, CSR, RPR, CRR, FCRR

16  Official Court Reporter

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT ~ MDFL ~ TAMPA DIVISION